IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, INC., | ) | Case No. 06-11202 (KJC) |
| et al.,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Re: Docket No. 9 |

### INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION PRIORITY CLAIMS OF CERTAIN CRITICAL VENDORS AND ADMINISTRATIVE CLAIMHOLDERS AND GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "Motion")[2] of Dura Automotive Systems, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order subject to the terms and conditions set forth herein: (a) authorizing payment in the ordinary course of the Debtors' businesses and in the Debtors' sole discretion of: (i) the prepetition claims of certain parties who supply goods or services critical to the continued operation of the Debtors' businesses (collectively, the "Critical Vendors") and (ii) the prepetition claims of suppliers and vendors entitled to administrative

---

[1] The Debtors in these proceedings are: Adwest Electronics Inc., Atwood Automotive, Inc., Atwood Mobile Products, Inc., Automotive Aviation Partners, LLC, Creation Group Holdings, Inc., Creation Group Transportation, Inc., Creation Group, Inc., Creation Windows, Inc., Creation Windows, LLC, Dura Aircraft Operating Company, LLC, Dura Automotive Canada ULC, Dura Automotive Systems (Canada), Ltd., Dura Automotive Systems Cable Operations, Inc., Dura Automotive Systems of Indiana, Inc., Dura Automotive Systems, Inc., Dura Brake Systems, L.L.C., Dura Cables North LLC, Dura Cables South LLC, Dura Canada LP, Dura Fremont L.L.C., Dura Gladwin L.L.C., Dura Global Technologies, Inc., Dura G.P., Dura Holdings Canada LP, Dura Holdings ULC, Dura Mancelona L.L.C., Dura Ontario, Inc., Dura Operating Canada LP, Dura Operating Corp., Dura Services L.L.C., Dura Shifter L.L.C., Dura Spicebright, Inc., Kemberly, Inc., Kemberly, LLC, Mark 1 Molded Plastics of Tennessee, Inc., Patent Licensing Clearinghouse L.L.C., Spec-Temp, Inc., Trident Automotive Canada Co., Trident Automotive, L.L.C., Trident Automotive, L.P., Trident Automotive Limited, and Universal Tool & Stamping Company, Inc.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

expense priority under section 503(b)(9) of the Bankruptcy Code (the "Priority Vendors"); and (b) approving a procedure to address those vendors who repudiate and refuse to honor their postpetition contractual obligations to the Debtors under the terms of the proposed Order relating to this Motion; the Court having reviewed the Motion and the First Day Affidavit and having considered the statements of counsel and the evidence adduced with respect to the Motion at a Hearing before the Court on the Motion (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) notice of the Motion and the hearing was sufficient under the circumstances; and (d) the payment of the Critical Vendor Claims and the Priority Vendor Claims on the terms and conditions set forth herein is necessary and appropriate (i) to prevent serious disruptions to the Debtors' business operations that would cause potentially immediate and irreparable damage to the Debtors' operations, value and ability to reorganize and (ii) to preserve the going-concern value of the Debtors' businesses and the Debtors' estates for the benefit of all stakeholders and, thus, will facilitate the reorganization of the Debtors' businesses; and the Court having determined that the legal and factual bases set forth in the Motion, the First Day Affidavit, and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

The Motion is granted on an interim basis; and it is further

ORDERED, that the Court will conduct a final hearing on the relief requested in the Motion on November 20, 2006 at 1:00 p.m. Eastern Time (the "Final Hearing Date") and any objections or responses to the Motion shall be filed on or by five business days prior to the Final Hearing Date and served on the parties required by Del. Bank. L.R. 2002-1(b); and it is further

K&E 11450837.5

ORDERED, that the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay the prepetition claims of Critical Vendors upon such terms and in the manner provided in this Order; and it is further

ORDERED, that the Debtors' payment of prepetition claims owed to Critical Vendors shall not exceed, in the aggregate, $9,250,000 during the interim period from the date of this Order until the date that a final order is entered in this matter, unless otherwise ordered by the Court; and it is further

ORDERED, that after the date hereof, the Debtors shall determine who is a Critical Vendor by considering, among other things, whether failure to pay the creditor's prepetition claims will have a material impact on the Debtors' business; and it is further

ORDERED, that (a) the Debtors are authorized, but not required, in the exercise of their business judgment, to pay claims of any creditors or claimants entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code (the "Priority Vendor Claims") in the ordinary course of the Debtors' businesses and on such terms and conditions as the Debtors deem appropriate, in an amount not to exceed, in the aggregate, $9,250,000 during the interim period from the date of this Order until the date that a final order is entered in this matter, unless otherwise ordered by the Court; (b) nothing in this paragraph shall be construed as requiring the Debtors to make a payment to a particular creditor or claimant; and (c) payment of any Priority Vendor Claims shall not count against the Critical Vendor Cap; and it is further

ORDERED, that the Debtors shall maintain a matrix beginning on the Commencement Date summarizing (a) the name of each Critical or Priority Vendor (each a "Critical/Priority Vendor") (b) the amount each Critical/Priority Vendor was paid on account of its claim

("Critical/Priority Vendor Claims"), and (c) the goods and/or services provided by each Critical/Priority Vendor; and it is further

ORDERED, that the Debtors shall undertake all appropriate efforts to cause Critical/Priority Vendors to enter into an agreement with the Debtors substantially similar to Exhibit B to the Motion, including, the following terms:

(a) The amount of such Critical/Priority Vendor's estimated prepetition trade claims, accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Critical/Priority Vendor and the Debtors (but such amount shall be used only for the purposes of this Order and shall not be deemed a Claim allowed by the Court and the rights of all interested persons to object to such Claim shall be fully preserved until further Order of the Court);

(b) The Critical/Priority Vendor's agreement to be bound by the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs), which were most favorable to the Debtors and in effect between such Critical/Priority Vendor and the Debtors on a historical basis for the period within one-hundred twenty (120) days of the Commencement Date or such other trade terms as agreed by the Debtors and such Critical/Priority Vendor or such other trade terms, practices and programs that are at least as favorable as those that were in effect prepetition in the Debtors' sole discretion ("Customary Trade Terms");

(c) The Critical/Priority Vendor's agreement to provide goods and services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay in accordance with such terms;

(d) The Critical/Priority Vendor's agreement not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Critical/Priority Vendor by the Debtors arising from agreements entered into prior to the Commencement Date, and that, to the extent that the Critical/Priority Vendor has previously obtained such a Lien, the Critical/Priority Vendor shall immediately take all necessary actions to remove such Lien;

(e) The Critical/Priority Vendor's acknowledgment that it has reviewed the terms and provisions of this Order and consents to be bound hereby;

(f) The Critical/Priority Vendor's agreement that it will not separately assert or otherwise seek payment for reclamation claims outside of the terms of this Order unless the Critical/Priority Vendor's participation in the trade payment program authorized by this Order is terminated; provided that such claims, if thereafter raised by the Critical/Priority Vendor as permitted by this Order, shall be treated as though raised on the date of this Order; and

(g) If either the trade payment program or the Critical/Priority Vendor's participation therein terminates, or a Critical/Priority Vendor who has received payment of a prepetition claim later refuses to continue to supply goods to the Debtors on Customary Trade Terms, subject to defenses, any payments received by the Critical/Priority Vendor on account of such Critical/Priority Vendor's prepetition claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Critical/Priority Vendor and that such Critical/Priority Vendor shall immediately repay to the Debtors any payments made to it on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

An agreement executed between the Debtors and a Critical/Priority Vendor as set forth in this paragraph is referred to herein as a "Trade Agreement." The Order is intended to authorize, but shall not require, the Debtors to enter into Trade Agreements, it being the express intention of this Court that the Debtors shall enter into Trade Agreements only when the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so; and it is further

ORDERED, that the Debtors may, in the exercise of their reasonable business judgment, make the payments authorized in the preceding paragraphs on account of prepetition Critical/Priority Vendor Claims either (a) after goods are delivered or services are rendered postpetition, or (b) before requested service of the postpetition goods if necessary; provided, however, that (x) the Debtors shall have issued purchase orders (or computer equivalents

thereof), and (y) the Critical/Priority Vendor shall have confirmed shipment will occur not later than the next business day after the aforementioned payment has been made and further agrees that postpetition goods are being shipped in accordance with Customary Trade Terms; and it is further

ORDERED, that the Debtors may, in their discretion, declare a Trade Agreement with an individual Critical/Priority Vendor to have terminated, together with the other benefits to the Critical/Priority Vendor as contained in this Order, on the date the Debtors deliver notice to the Critical/Priority Vendor that the Critical/Priority Vendor has not complied with the terms and provisions of the Trade Agreement or has failed to continue to provide Customary Trade Terms; provided, however, that the Trade Agreement may be reinstated if:

    (a)    Such determination is subsequently reversed by the Court for good cause shown that the determination was materially incorrect after notice and a hearing following a motion from the Critical/Priority Vendor; or

    (b)    The underlying default under the Trade Agreement was fully cured by the Critical/Priority Vendor not later than five business days after the date when the initial default occurred; or

    (c)    The Debtors, in their discretion, reach an agreement with the Critical/Priority Vendor; and it is further

ORDERED, that all Trade Agreements shall be deemed to have terminated, together with the other benefits to Critical/Priority Vendors as contained in this Order, upon entry of an order converting the Debtors' Reorganization Cases to cases under chapter 7 of the Bankruptcy Code; and it is further

ORDERED, that if a Trade Agreement is terminated as set forth in either of the two previous paragraphs, or a Critical/Priority Vendor who has received payment of a prepetition claim later refuses to continue to supply goods to the Debtors on Customary Trade Terms during the pendency of the Reorganization Cases, the Debtors may, in their discretion, declare that

6

K&E 11450837.5

provisional payments made to the Critical/Priority Vendor on account of prepetition Critical/Priority Vendor Claims be deemed to have been in payment of then outstanding postpetition Trade Claims without further order of the Court or action by any person or entity. A Critical/Priority Vendor shall then immediately repay to the Debtors any payments made to it on account of its prepetition Critical/Priority Vendor Claims to the extent that prepetition Critical/Priority Vendor Claim payments exceed the postpetition Critical/Priority Claims then outstanding without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise, it being the express intention of this Court to return the creditors to the status quo in effect as of the date of entry of this Order with respect to all prepetition claims if a Trade Agreement is terminated; and it is further

ORDERED, that approval of the Debtors' proposed procedures for addressing certain Non-Conforming Suppliers shall be reserved for the Final Hearing Date; and it is further

ORDERED, that all banks and other financial institutions on which checks were drawn or electronic payment requests made in payment of the Critical/Priority Vendor Claims approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment; provided, however, that sufficient funds are available in the Debtors' bank accounts to cover such payments; provided, further, that all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order; and it is further

ORDERED, that the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED, that notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed

on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral; and it is further

ORDERED, that notwithstanding the possible applicability of Rules 6004(g), 7062, and 9014 of the Bankruptcy Rules, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order; and it is further

ORDERED, that in the event that the Debtors make payments to Critical Vendors or Priority Vendors pursuant to this Order, they shall report the same to the U.S. Trustee on a weekly basis; and it is further

ORDERED, that this Court requests the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada and the Federal Court of Canada and any judicial, regulatory or administrative tribunal or other court constituted pursuant to the Parliament of Canada or the legislature of any province and any court or any judicial, regulatory or administrative body of any other nation or state to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

Dated: Oct 31, 2006
Wilmington, Delaware

_____
United States Bankruptcy Judge

K&E 11450837.5