IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DURA AUTOMOTIVE SYSTEMS, | : | Bankr. Case No. 06-11202 (KJC) |
| INC., et al., | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| | : | Objections Due: 5/22/07 4:00 p.m. |
| | : | Extended by Agreement |
| | : | Hearing Date: 5/30/07 11:00 a.m. |
| | : | |

## UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE REVISED KEY MANAGEMENT INCENTIVE PLAN (Docket No: 1105)

Kelly Beaudin Stapleton, the United States Trustee for Region 3 ("UST"), by and through her undersigned counsel, hereby files this objection (the "Objection") to the Debtors' Motion for Entry of an Order Authorizing the Revised Key Management Incentive Plan (the "Motion" )(Docket No: 1105) and in support thereof states as follows:

### INTRODUCTION

1. This Court has jurisdiction to hear the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight of cases commenced pursuant to title 11 of the United States Bankruptcy Code. This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

1

3. Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the above-referenced Objection.

## PRELIMINARY STATEMENT

4. The UST objects to the Motion because the Revised KMIP[1] violates Section 503(c)(1) & (3). With respect to the payments made to the Tier I KMIP Participants, the revised KMIP metrics transform the original KMIP into an attempt to re-label a key employee retention plan as a management incentive plan. Moreover, the alleged incentive-based metrics established under the revised KMIP act as a disincentive as the Tier I KMIP Participants are rewarded for failing to meet their projections. Accordingly, the UST requests that the Court enter an order denying the Motion.

5. The UST does not object to the Motion to the extent the Debtors seek authorization to make payments to the Tier II KMIP Participants. At the hearing held before this Court on April 25, 2007 (the "Hearing"), the Court ruled that the original KMIP was justified under Section 503(c)(3) as the original KMIP contained "sufficiently identifiable guidelines, basis on which to judge performance." Furthermore, based on the Court's comments at the Hearing regarding the aggregate amount sought by the Debtors under the original KMIP, the UST raises no objection herein to the aggregate amount sought by the Debtors under the revised KMIP.

6. However, in light of clear congressional intent under the BAPCPA to limit payments to the Debtors' senior management in bankruptcy cases, the UST objects to the Motion to the extent that the Debtors have not and cannot demonstrate that the executive payments proposed to be made to the Tier I KMIP Participants under the revised KMIP metrics are appropriate under Section 503(c)

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2

of the Bankruptcy Code.

7. Finally, the UST objects to the Debtors continued assertion that 11 U.S.C. 503(c)(3) simply subjects the proposed KMIP payments to review under the "business judgement rule" to the extent this question was not resolved by the statements made by the Court at the Hearing and to the extent the Debtors are still pursuing that argument.

## BACKGROUND

8. On October 30, 2006 (the Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Reorganization Cases"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has yet been appointed in these Reorganization Cases.

9. The Debtors and their non-debtor affiliates are leading independent designers and manufacturers of driver control systems, seating control systems, glass systems, engineered assemblies, structural door modules, and exterior trim systems for the global automotive industry. The Debtors sell their products to every major North American, Asian and European automotive original equipment manufacturer (the "OEMs"). The Debtors also are a leading supplier of door and window systems, engineered components and gas appliances to the recreational and specialty vehicle industries.

10. On November 8, 2006, the UST appointed an Official Committee of Unsecured Creditors the "Committee") pursuant to Section 1102 of the Bankruptcy Code.

11. On or about February 1, 2007, the Debtors filed the Original KMIP Motion. On or

about February 22, 2007, this Court entered an order allowing certain of the interim payments requested in the Original Motion to certain of the Debtors' employees who were not insiders or members of senior management (the "Stipulated Order").

12.    On or about April 5, 2007, the Debtors filed the Second KMIP Motion. The Second KMIP Motion was approved by this Court at the Hearing.

13.    Under the original KMIP, the Debtors requested authority to make bonus payments for approximately 55 employees who allegedly are involved in implementing the 50 Cubed Plan and the 510 Program. The original KMIP was tied to the Debtors' major restructuring initiatives implemented pre-petition, the 50-Cubed Plan and the 510 Program. The maximum amount allegedly payable under the original KMIP is approximately $6.8 million.

14.    Under the revised KMIP, the Debtors now are requesting that this Court approve payments to senior management identified as the Tier I KMIP Participants based on the following milestones: (1) the delivery of a five-year business plan (25% of the bonus); (2) the filing of a chapter 11 plan of reorganization (25% of the bonus); and (3) the earlier of (a) December 31, 2007, and (b) the confirmation of a chapter 11 plan of reorganization, subject to a schedule of trailing 2007 EBITDA[2] (50% of the bonus - subject to the EBITDA targets). Thus, 50% of the payments due under the revised KMIP ((1) and (2) above) are payable for the performance of "non-incentive" based tasks which, as fiduciaries, the Debtors' senior management are required to perform (the

---

[2] Under the revised KMIP: if the actual EBITDA is at least 80% and less than 85% of the forecast EBITDA, Tier I Participants will receive the 50% payment less $250,000; if the actual EBITDA is at least 85% and less than 90% of the forecast EBITDA, Tier I Participants will receive the 50% payment; if the actual EBITDA is at least 90% and less than 95% of the forecast EBITDA, Tier I Participants will receive the 50% payment plus $250,000; if the actual EBITDA is at least 95% and less than 100% of the forecast EBITDA, Tier I Participants will receive the 50% payment plus $500,000; if the actual EBITDA is at least 100% and less than 105% of the forecast EBITDA, Tier I Participants will receive the 50% payment plus 750,000; if the actual EBITDA is at least 105% and less than 110% of the forecast EBITDA, Tier I Participants will receive the 50% payment plus 1,000,000; and if the actual EBITDA is greater than or equal to 110% of the forecast EBITDA, Tier I Participants will receive the 50% payment plus $1,250,000;

"Retention Based Payments"). The remaining 50% of the bonus payments are payable subject to the achievement by the Debtors of certain EBITDA targets which essentially reward the Tier I KMIP Participants for failing to meet their projections by up to 20% (the "Final Bonus Payments").

## GROUNDS/BASIS FOR RELIEF

15. In light of clear congressional intent under the BAPCPA to limit unchecked retention and bonus payments to debtors' senior management in Chapter 11 cases, the UST objects to the Motion because the Debtors have not demonstrated in the Motion that the executive payments proposed therein are appropriate under Section 503(c) of the Bankruptcy Code.

16. Section 503(b)(1)(A)(I) provides in relevant part that after notice and a hearing, the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case shall be allowed as an administrative expenses.

17. The UST does not dispute that the payment of "wages, salaries, and commissions for services rendered after the commencement of the case" to Debtors' employees are valid administrative expense claims for "the actual, necessary costs and expenses of preserving the estate." See 11 U.S.C. § 503(b). However, newly enacted Section 503(c) imposes certain limitations on such payments as Section 503(c) provides that "[n]otwithstanding subsection (b), there shall neither be allowed, nor paid . . ." certain transfers to insiders and members of Debtors' management unless certain conditions are met.

The KMIP Violates Section 503(c)(1) of the Bankruptcy Code

18. In large part, the revised KMIP metrics transform the original KMIP into a key employee retention plan -- a management incentive plan that is performance based in name only

and is factually a creatively titled key employee retention plan. With respect to the Retention Based Payments, the Tier I KMIP Participants appear to be entitled to these payments for simply remaining employed by the company and completing tasks which they are required to perform. Indeed, as the Debtors noted at the Hearing, the first task the delivery of the business plan is substantially complete and was substantially complete at the time the revised KMIP metrics were agreed to by the parties. The second milestone simply requires **the filing** of a chapter 11 plan of reorganization, a task which the Debtors are required to perform as part of their duties as chapter 11 debtors.

19.     Under Section 503(c)(1) of the Bankruptcy Code, the Debtor must "based on evidence in the record" demonstrate all three of the required elements set forth in Section 503(c)(1). Section 503(c)(1) provides, in pertinent part, as follows:

> (1) a transfer made to, or an obligation incurred for the benefit of, <u>an insider of the debtor</u> for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court <u>based on evidence in the record</u> that:
>
> (A) The transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B) The services provided by the individual are essential to the survival of the business; and
>
> (C) either (I) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to <u>non-management employees</u> for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such <u>nonmanagement employees</u> during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or

6

obligation is incurred (emphasis added).

20. The Debtors have not and cannot satisfy all of the elements of Section 503(c)(1) and thus, the Debtors' request as it applies to the Retention Based Payments should be denied.

Final Payment Not Justified by Facts and Circumstances

21. With respect to the Final Bonus Payment, the alleged incentive-based metrics established under the revised KMIP act as a disincentive as the Tier I KMIP Participants are rewarded for failing to meet their projections. Thus, the Debtors should not be authorized to make such payments as these payments are not justified by the facts and circumstances and not consistent with the Debtors' prior practices.

22. The revised KMIP metrics are inconsistent with prior practices employed by the Debtors. Jack Edwards, the chairman of the Debtors' compensation committee, testified that he could not recall an instance where the Debtors had ever authorized a bonus program where the threshold for a 100% payout was lower that the figure established in the Debtors' operating plan. See the transcript of the deposition of Jack Edwards dated on April 14, 2007 at pages 36 to38 (which was entered into evidence by the Debtors at the Hearing).

23. With respect to the Final Bonus Payment, the revised KMIP metrics authorize a 100% payout if the Debtors achieve 85% of their EBITDA target. Indeed, the Tier I KMIP Participants will receive an additional $750,000 if they simply meet the figures established in the Debtors' business plan/operating budget.

24. For the Final Bonus Payment to be authorized under the facts and circumstances of the case, the Debtors must "based on evidence in the record" demonstrate the required elements set forth in Section 503(c)(3).

25.     Section 503(c)(3) provides, in pertinent part, as follows:

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

26.     Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation as an "officer," a "director", or a "person in control." Based on the limited information provided in the KMIP and the Motion, certain of the Participants, if not all, are insiders, officers or mangers of the Debtors.

27.     Accordingly, the Debtors must demonstrate that the proposed bonuses are "justified by the facts and circumstances of the case" and are necessary to preserve the value of the estate. They have not met this burden and the Motion should, accordingly, be denied.

WHEREFORE the UST requests that this Court issue an order denying the motion or granting other relief consistent with this objection.

Respectfully submitted,

**KELLY BEAUDIN STAPLETON**
**UNITED STATES TRUSTEE**

BY: /s/ William K. Harrington
William K. Harrington, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)

Date: May 23, 2007