UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .      Case No. 06-11202(KJC)
                              .
                              .
                              .
DURA AUTOMOTIVE SYSTEMS, .
INC.,                         .      824 Market Street
                              .      Wilmington, Delaware 19801
                              .
                              .
          Debtors.            .      December 13, 2007
. . . . . . . . . . . . ..            1:35 p.m.


TRANSCRIPT OF TELEPHONIC HEARING
BEFORE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis
                          By:  ROGER HIGGINS, ESQ.
                               JOY LYU MONAHAN, ESQ.
                          Aon Center
                          200 East Randolph Drive
                          Chicago, IL 60601

For the Debtors:          Baker & McKenzie, LLP
                          By:  LAURIE BABICH, ESQ.
                          2300 Trammell Crow Center
                          2001 Ross Center
                          Dallas, TX 75201

For the Debtors:          Baker & McKenzie, LLP
                          By:  BRIAN ARBETTER, ESQ.
                          One Prudential Plaza
                          130 East Randolph Drive
                          Chicago, IL 60601

Audio Operator:           Judy Fisher

Proceedings recorded by electronic sound recording, transcript
             produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311   Fax No. (609) 587-3599**

APPEARANCES (cont.)

For the Debtors:                Dura Automotive Systems, Inc.
                               By:  THERESA SKOTAK, ESQ.
                                    LAWRENCE DENTON, ESQ.

For the Debtors:                Miller Buckfire & Co., LLC
                               By:  BRANDON GREGORIO, ESQ.
                               250 Park Avenue, 19th Floor
                               New York, NY 10177

For the Debtors:                Richards, Layton & Finger, P.A.
                               By:  DANIEL DeFRANCESCHI, ESQ.
                               One Rodney Square
                               920 N. King Street, P.O. Box 551
                               Wilmington, DE 19899

For the Debtors:                Togut, Segal & Segal, LLP
                               By:  NEIL BERGER, ESQ.
                               One Penn Plaza
                               New York, NY 10119

For the Debtors:                AlixPartners, LLC
                               By:  LAURA J. EISELE, ESQ.

For the Debtors:                Foley & Lardner
                               By:  JOHN A. SIMON, ESQ.
                               One Detroit Center
                               500 Woodward Avenue, Suite 2700
                               Detroit, MI 48226-3489

For the Official               Young, Conaway, Stargatt & Taylor
Committee of Unsecured         By:  BLAKE CLEARY, ESQ.
Creditors:                     The Brandywine Building
                               1000 West St., 17th Floor
                               Wilmington, DE 19899

For the Official               Kramer, Levin, Naftalis & Frankel LLP
Committee of Unsecured         By:  THOMAS MAYER, ESQ.
Creditors:                          DOUGLAS H. MANNAL, ESQ.
                               1177 Avenue of the Americas
                               New York, NY 10036

For the Second Lien            Bracewell & Giuliani
Committee:                     By:  DAVID ALBALAH, ESQ.
                                    KURT MAYR, ESQ.
                               225 Asylum Street
                               Hartford, CT 06103


**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (cont.):

| | |
|---|---|
| For the Second Lien<br>Committee: | Potter, Anderson & Corroon LLP<br>By:  TERRI BROWN-EDWARDS, ESQ.<br>Hercules Plaza<br>1313 North Market Street<br>Wilmington, DE 19801 |
| For Assessment<br>Technologies: | Assessment Technologies, Ltd.<br>By:  JOHN LAMMERT, ESQ. |
| For Dow Jones News: | Dow Jones News Wires<br>By:  PEG BRICKLEY, ESQ. |
| For Fagan: | William D. Sullivan, LLC<br>By:  ELIHU ALLISON, ESQ.<br>4 East 8th Street, Suite 400<br>Wilmington, DE 19801 |
| For JP Morgan Chase: | Landis, Rath & Cobb, LLP<br>By:  RICHARD S. COBB, ESQ.<br>919 Market Street, Suite 600<br>Wilmington, DE 19801 |
| For Goldman Sachs: | Pachulski, Stang, Ziehl & Jones<br>By:  CURTIS HEHN, ESQ.<br>919 North Market Street<br>P.O. Box 8705, 17th Floor<br>Wilmington, DE 19899 |
| For AlixPartners: | Sheldon S. Toll, PLLC<br>By:  SHELDON TOLL, ESQ. |
| For Deloitte & Touche: | Deloitte & Touche, LLP<br>By:  IRENE CANNON-GEARY, ESQ. |
| For Warren H. Smith: | Warren H. Smith & Associates, PC<br>By:  WARREN H. SMITH, ESQ. |
| For the Trustee: | United States Trustee Department<br>By:  WILLIAM HARRINGTON, ESQ.<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19899-0035 |

1          THE COURT:  Good afternoon all.

2          MR. HIGGINS:  Roger Higgins for the debtors.

3          THE COURT:  You may proceed.

4          MR. HIGGINS:  Your Honor, on the agenda all matters

5   prior to matter 12 which is the first of the fee applications

6   has either been continued or you have entered an order with the

7   exception of the Ernst & Young issue.

8          And we have submitted, and I believe it's on its way

9   over to chambers now, an amended affidavit that shows --

10   highlights the issue of Ernst & Young being disinterested.

11          THE COURT:  It has reached me and I have read it.  Is

12   there an order in the binder, form of order in the binder?

13          MR. HIGGINS:  There should have been a form of order

14   in the binder, yes, Your Honor.

15          THE COURT:  Okay.

16          MR. HIGGINS:  If there is not, we can -- we can have

17   one delivered posthaste.

18          THE COURT:  There is a form of order, but it is two-

19   sided.  So if you would send over a form of order printed on

20   just a single side I will be happy to signed it.

21          MR. HIGGINS:  Yes, Your Honor.  And in fact as I'm

22   thinking about this, I suspect that that may be the case for

23   each of the other orders that we have.  Obviously we have sent

24   you over a binder.  Normally I usually hand up or we hand up

25   orders which we are obviously not doing today since this is a

1  telephonic hearing.

2          So we'll make sure that all those orders are sent

3  over to you as -- as you indicate that you want to enter them.

4          THE COURT:  On the fee applications.

5          MR. HIGGINS:  On the fee applications, yes, Your

6  Honor.

7          THE COURT:  Very well.

8          MR. ALLISON:  Your Honor, this is Elihu Allison

9  asking whether I might be heard on agenda item number one very

10 briefly?

11         THE COURT:  Go ahead.

12         MR. ALLISON:  I appreciate the Court allowing me to

13 sign up for this conference call at the last moment.  I noticed

14 that the status conference for today's lift stay motion has

15 been continued by the Court out until February the 12th and I

16 hadn't received any indication of the status of related

17 matters.

18         I did notice that a status report was filed on

19 November 30th regarding the related insurance adversary

20 proceeding.  And I do recall the Court on October 9th stating

21 that it would rule on the lift stay motion by an outside time

22 frame of its disposition of the summary judgment motions in the

23 related insurance adversary proceeding.

24         And I just didn't know where matters stood and -- and

25 why this status conference was continued until February instead

1  of the January 24th hearing.

2         THE COURT:  I carried all of the related matters

3  including the adversary arguments on the dispositive motion or

4  motions in the adversary over to the same date.  And this --

5  because this was related to the adversary and vice versa, I

6  carried them over to the same date.

7         The reason I did so was that given the press of

8  business which I guess includes a lot having to do with Dura at

9  the moment but with respect to other matters, I did not feel I

10  could give the matters appropriate consideration by today's

11  date and so therefore made a decision that I would consider

12  them in February.

13         MR. ALLISON:  Well thank you for apprising me, Your

14  Honor.  I -- I do apologize if I've appeared to be impertinent

15  although that was certainly not my intent.  But I was -- I was

16  seeking some clarification and I do appreciate the Court

17  providing that.

18         THE COURT:  Well I'm sure that your client is asking

19  you the same question you asked me, so I consider it to be fair

20  game.

21         MR. ALLISON:  Thank you very much, Your Honor.

22         THE COURT:  You're welcome.

23         MR. HIGGINS:  Your Honor, Roger Higgins for the

24  debtors.  I believe that brings us to agenda item number 12

25  which is the first of the fee applications.  And I think I can

1 say this safely for all of the fee applications.  There have

2 been no objections with AlixPartners.

3      The US Trustee has a standing objection there which,

4 as I understand it, has been -- the US Trustee has agreed to

5 deal with that at the final fee hearing.

6      I thought we might go through each of these and if

7 you had any questions, Your Honor, I believe that counsel for

8 each -- each of the professionals is on the line, we can

9 endeavor to answer the questions.

10      THE COURT:  Okay.

11      MR. HIGGINS:  So the first one would be the interim

12 application for Assessment Technologies, Ltd. or ATL.

13      THE COURT:  All right.  Do -- do me this favor, Mr.

14 Higgins.  As we go through this because the -- the index that

15 came with the fee applications is numbered and ordered

16 differently than that which appears on the hearing agenda, if

17 you would -- if you would as we get down the agenda item refer

18 me to the number, the applicable number, on the fee application

19 index, it would be helpful to me.

20      MR. HIGGINS:  Your Honor, I will do that as soon as I

21 find the fee application index.  I will be happy to do that,

22 Your Honor.

23      THE COURT:  All right.  Thank you.

24      MR. HIGGINS:  So in any case, this is item number 12

25 on the -- on the agenda.  Bear with me just one moment.

1          MR. SMITH:  Your Honor, this is Warren Smith the fee

2     auditor.

3          THE COURT:  Yes.  Good afternoon.

4          MR. SMITH:  Good afternoon.  Your Honor, if we are

5     dealing with the fee application of Assessment Technologies,

6     Ltd., it was my understanding that there was a -- an objection

7     or a response by the US Trustee to this application.

8          THE COURT:  That's correct and debtor's counsel

9     indicated I think that they're -- oh, he -- he mentioned Alix.

10    Yes, the agenda indicates that there were informal comments.

11         MR. SMITH:  Okay, Your Honor.

12         THE COURT:  And that the application as it relates to

13    expenses is continued, but as it relates to fees is going

14    forward.

15         MR. HARRINGTON:  Your Honor, this is William

16    Harrington from the Office of the United States Trustee.

17    That's our -- that's our understanding and we had agreed with

18    the debtors with respect to a form of order which provides that

19    our objection with respect to the expense portion of the

20    application, the disputed portion, is reserved to the final --

21    the application or such later date as is agreed between the

22    parties.

23         And that with respect to the fee portion we did not

24    have a continuing objection.

25         THE COURT:  Okay.  Mr. Higgins, to save you a little

1  trouble, there was a separate binder submitted for this

2  particular application.  So you won't find it on the index, I

3  don't think, on the fee application index.

4          MR. HIGGINS:  Yes, Your Honor, and unfortunately I do

5  not have, and my apologies, do not have that separate binder

6  with me.  I just have the fee applications and the order of the

7  agenda.

8          THE COURT:  Okay.  I have -- I have the binder.

9          MR. HIGGINS:  Okay.

10          THE COURT:  Let me ask Mr. Smith if he had any

11  comment beyond that which was contained in his report.

12          MR. SMITH:  Regarding ATL, Your Honor?

13          THE COURT:  Yes.

14          MR. SMITH:  No, we did not.

15          THE COURT:  Okay.  All right.  Well I'm prepared to

16  sign an order based upon the arrangement that's been made with

17  the US Trustee's Office to be submitted under certification.

18          MR. HIGGINS:  All right.  Your Honor, that brings us

19  to the second interim fee application request for Kirkland &

20  Ellis.  There was -- I don't believe there's any objections

21  there.  There was a small reduction that the debtors agreed to

22  take based on the fee auditor's report.

23          THE COURT:  Okay.  And just so that I confirm the

24  numbers, the fees to be approved are $3,112,476, expenses are

25  $154,630.87.

**J&J COURT TRANSCRIBERS, INC.**

1        MR. HIGGINS:  Yes, Your Honor.

2        THE COURT:  All right.  I have no questions with

3 respect to that application.

4        MR. HIGGINS:  All right.  Thank you, Your Honor.

5 That brings us to Baker & McKenzie which is number 14 on the

6 agenda.

7        MS. BABICH:  Your Honor, Laurie Babich with Baker &

8 McKenzie.

9        THE COURT:  Good afternoon.

10        MS. BABICH:  Good afternoon.  Your Honor, we haven't

11 had any objections to the fee application.  We did make some

12 voluntary reductions after discussing matters with the US

13 Trustee and those are reflected on the chart which I believe

14 has been provided to you.  Those are not included in the fee

15 application.

16        We've also agreed with the fee auditor to make the

17 fee auditor's requested reduction.

18        THE COURT:  All right.  So that would leave fees of

19 $1,393,613.42, expenses of $40,761.80.

20        MS. BABICH:  Yes, Your Honor.

21        THE COURT:  All right.  I have no question -- no

22 further question with respect to that.

23        MR. HIGGINS:  Your Honor, that brings us to

24 AlixPartners, number 15 on the agenda.

25        THE COURT:  Yes.

1           MR. HIGGINS:  The US Trustee has a -- an informal

2    objection here and I would defer to counsel for AlixPartners

3    and the US Trustee on this matter.

4           THE COURT:  All right.

5           MS. EISELE:  Your Honor, Laura Eisele with

6    AlixPartners on the phone.

7           THE COURT:  Good afternoon.

8           MS. EISELE:  We did have two objections to our fee

9    application.  One was in connection with the fee auditor.  We

10   have agreed to the reduction that the fee auditor recommended

11   and those are reflected in the order that counsel for the

12   debtor has prepared for Your Honor.

13          We also received an objection from the United States

14   Trustee very similar to the objections that were received on

15   our first interim fee application.  And pursuant to discussions

16   with the United States Trustee we have agreed that those

17   objections will be preserved and deferred until the hearing on

18   the final fee application.

19          THE COURT:  All right.  So the -- any comment from

20   others?

21          MR. HARRINGTON:  Your Honor, again William Harrington

22   from the United States Trustee.  I just want to confirm that

23   that's our agreement.

24          THE COURT:  All right.  So the interim award to

25   AlixPartners is $9,062,677.62 with an expense reimbursement of

1  $574,685.68, is that correct?

2           MS. EISELE:  That is correct, Your Honor.  Actually I

3  believe it's 78 cents.

4           MR. HARRINGTON:  For the expenses?

5           MS. EISELE:  Correct.

6           MR. HARRINGTON:  Well I had calculated 68 cents.

7           MS. EISELE:  Okay.  Then that's what it should be.

8           THE COURT:  Very well.

9           MS. EISELE:  I apologize.

10          THE COURT:  Okay.  Thank you.

11          MR. HARRINGTON:  And I think there was an error in

12  the draft order of ten cents.  Not worth arguing about.

13          THE COURT:  Okay.  Next.

14          MS. EISELE:  We'll go with 68.

15          THE COURT:  All right.

16          MR. HIGGINS:  All right.  Your Honor, I believe that

17  brings us to item number 16 which is the Richards, Layton &

18  Finger second interim fee application.

19          THE COURT:  Yes.

20          MR. HIGGINS:  And I believe Mr. DeFranceschi is on

21  the line.

22          MR. DeFRANCESCHI:  Yes, Your Honor, I am.  And we

23  agreed with the fee auditor's final report regarding our fee

24  application which would have recommended approval of fees

25  totaling $125,051 and expenses of $9,276.37 for the March 1

**J&J COURT TRANSCRIBERS, INC.**

1  through June 30th period.

2          THE COURT:  All right.  I'm prepared to --

3          MR. DeFRANCESCHI:  And there were no other objections

4  to my knowledge.

5          THE COURT:  I don't have any other questions.  I'm

6  prepared to make that award.

7          MR. DeFRANCESCHI:  Thank you, Your Honor.  And, Your

8  Honor, going off agenda slightly, it's my understanding and

9  we'll certainly send a new form of order over, but I think that

10  yesterday we had sent over the form of order for Assessment

11  Technologies, but we will -- the appropriate form of order, but

12  we'll certainly make sure that we send over whatever orders

13  need to be sent over.  We'll coordinate with the courtroom

14  deputy on that after the hearing.

15          THE COURT:  All right.  Thank you.

16          MR. DeFRANCESCHI:  Thank you.

17          MR. HIGGINS:  Your Honor, that brings us to the item

18  number 17 which is the fee application for the Unsecured

19  Creditors Committee Professionals and I yield the podium to

20  counsel for the Committee.

21          THE COURT:  All right.

22          MR. CLEARY:  Good afternoon, Your Honor.  Blake

23  Cleary at Young, Conaway, Stargatt & Taylor.  I guess we'll

24  take them in order that they appear in the agenda.  Also my co-

25  counsel's on the line from Kramer, Levin when that item comes

1  up next.

2            With respect to the Young Conaway interim fee

3  request, there was a -- a auditor report filed by Warren Smith.

4  And so I guess with Your Honor's permission I would -- I would

5  let the Court hear from Warren Smith and then I'm prepared to

6  respond to Mr. Smith's issue with the Young Conaway fee

7  application.

8            THE COURT:  All right.

9            MR. SMITH:  Your Honor, yes, we did make recommended

10  reductions of -- we recommended reductions of fees in the

11  amount of $3,424.  And we recommended an expense reduction of

12  $9.60.

13            I can go into more detail, Your Honor, but the final

14  report is kind of self explanatory I believe.

15            THE COURT:  All right.  Let me hear from counsel.

16            MR. CLEARY:  Okay.  Thank you, Your Honor.  I guess

17  the first point is there was a $9.60 reduction which we agreed

18  to.  But the real crux of the matter was there was an objection

19  to the fee application with respect to the time spent reviewing

20  the debtor's professional fee applications.

21            And by way of background, Young Conaway performed

22  these services at the request of the Committee.  There was two

23  purposes in conducting this review, but as Your Honor has

24  reviewed in preparation for this hearing, the filings were

25  voluminous.  I suspect they were approximately 20 inches in

1 height spanning five months and eight professionals.  So I

2 think there was a significant amount of work to do.

3        But the purpose of the review was, again, was twofold

4 and I think the first is fairly straightforward.  It was to

5 review the fee applications for reasonableness consistent with

6 the Committee's fiduciary duties to all creditors.

7        And I think Committee professionals are in a unique

8 position to add the level of review in addition to that added

9 by Mr. Smith's firm which is important as well.

10        But with the working knowledge of the case I think

11 it's helpful and I think it's something that Mr. Smith's firm

12 can't do is evaluate certain time entries and evaluate them for

13 reasonableness with an understanding of what's going on in the

14 case.  And the hope is, again, to assist the Court in

15 determining reasonableness too.  So the Committee and certainly

16 we think that's an appropriate task for Committee professionals

17 to perform.

18        But second, as you know these are very complex cases

19 with multiple moving parts, numerous tasks.  And so the other

20 purpose that Young Conaway was asked to perform was to review

21 the activities of the debtor's professionals and report those

22 in relatively real time to the Committee members so they had a

23 better understanding of what the Committee professionals were

24 doing so if there were any issues or items that required any

25 followup or inquiry, then the Committee members would be able

1  to know about them and instruct their professionals to garner

2  further information to determine whether additional information

3  was necessary.

4          But it's certainly to understand what was going on in

5  the case and where the case was moving.  And so there's that

6  level of review and, again, there were reports that were done

7  on a periodic basis to the Committee with respect to that

8  information.

9          And so at issue, Your Honor, is the request to reduce

10 the fees by a nominal amount, the $3,424, which we believe is

11 inappropriate.  We think the tasks performed were important,

12 reasonable, and necessary to allow the Committee to perform its

13 duties.

14         Again at issue the total hours spent during this

15 period of time were 19.6 hours at a cost to the estate of

16 $6,848, that equals approximate blended rate of $349.  And the

17 request by the fee auditor is to reduce it by -- by half.  I

18 guess an arbitrary cutting it in half of those fees.

19         So, Your Honor, for those reasons, Young Conaway

20 would respectfully request that the Court approve the fees in

21 the amounts requested and that's 6,848.

22         THE COURT:  How many hours were spent at the rate of

23 $450?

24         MR. CLEARY:  I'm sorry?

25         THE COURT:  How many of the hours were spent at the

1  $450 an hour rate?

2          MR. CLEARY:  I think there is an attachment, Your

3  Honor, that -- if I'm -- if Mr. Smith's items summarizes, I

4  would say one, two, three, four, five ... give me a minute to

5  add them up, Your Honor.

6          MR. MAYER:  Your Honor, this is Tom Mayer from Kramer

7  Levin.  I don't know whether this is appropriate or not, but at

8  some point if it is appropriate I would like to speak briefly

9  in support of -- of the Young Conaway application on this

10  floor.

11          THE COURT:  All right.  Let me just get the math

12  straightened out.

13                         (Pause)

14          MR. CLEARY:  If my math is done quickly, I think it's

15  approximately eight hours out of the 19.6.

16          THE COURT:  Explain to me why the applications had to

17  be reviewed twice because it looks -- that's what it looks like

18  the time entries reflect.

19          MR. CLEARY:  Well I think there was -- Your Honor,

20  what I did -- and, again, as Your Honor knows, these were

21  significant fee applications.  What I would do on a very

22  cursory level would go through and highlight various matters

23  that I thought should show up on the report and then Erin

24  Edwards would do a further review of that for further

25  additional details to add -- add to her report and her summary

**J&J COURT TRANSCRIBERS, INC.**

1 of the monthly fee apps.

2          THE COURT:  All right.  Let me hear from anyone else

3 who cares to be heard in connection with this application.

4          MR. MAYER:  Your Honor, this is Tom Mayer from Kramer

5 Levin.  And obviously this is not our application, but we are

6 Committee counsel as well.

7          I understand Mr. Smith's scrutiny of these items

8 because there are already several levels of review of fee

9 applications.  We do have the US Trustee, we do have Mr. Smith

10 as the fee auditor.

11          So I can well understand the scrutiny that these

12 items were subjected to and I also understand Your Honor's

13 comments and the concern that there not be review for the sake

14 of review because that's not the business that we're in.

15          I think it would be very unfortunate if the -- this

16 proceeding ended with a determination that it is never within

17 the purview of Committee counsel to spend time looking at the

18 debtor's fee apps to determine what the debtor was doing.

19 Because some portion of Committee counsel's job is to

20 investigate the conduct and assets and financial condition and

21 operation of the debtor's businesses.

22          And the debtor's counsel's fee applications contain

23 information that is relevant to figuring out what is going on.

24 Now obviously this can't be an employment process for lawyers

25 and clearly any effort that is spent in looking at these time

1 entries has to be not only efficient, but also fairly minimal

2 because they are being scrutinized by other parties.

3          But some portion of this is just -- in fact all of it

4 is really information gathering about what's going on and I

5 think that's appropriate.  I think it would be -- it would be

6 unfortunate if the Court were to rule that it's not compensable

7 looking at debtor's account as to what's going on in the case

8 because I think that that will impose a cost on -- on Committee

9 representation and I would hope that we can avoid that result.

10          MR. SMITH:  Your Honor, if I could speak?

11          THE COURT:  Go ahead.

12          MR. SMITH:  Your Honor, I believe that the Court can

13 uphold my recommendation without making the ruling that is

14 feared -- most feared by Committee counsel.

15          I agree that it's appropriate for Committee counsel

16 to investigate what debtor's counsel is doing.  That's -- I

17 agree with that.  The Court will note though that my

18 recommendation is just for a reduction of one-half of these

19 charges.  And there's kind of two bases for that.

20          There were two reasons given for this -- the time

21 entries here.  One was that they were just reviewing the fee

22 applications as the US Trustee was reviewing them or as I was

23 reviewing them to see that the fees and expenses were

24 reasonable and necessary.

25          The second reason given was that they were reviewing

1   them to see what debtor's counsel was up to.  It can be argued

2   that my reduction of one-half of these charges is kind of

3   arbitrary in that I think that one reason is valid, reviewing

4   the fees to see what debtor's counsel's up to.

5           One is not so -- not so defensible.  But again, Your

6   Honor, I think that the Court can uphold this recommendation

7   without necessarily holding that all review of debtor's

8   counsel's fees by Committee counsel is inappropriate.

9           THE COURT:  Well let me say this.  I agree completely

10   with what Mr. Mayer has said in terms of how the Court should

11   approach looking at this time.

12           And I also specifically agree that in addition to

13   using the fee applications to track what the debtor's doing to

14   make sure that the Committee's aware of all the things that it

15   should be aware of, and to just to review them for

16   reasonableness are both legitimate exercises to be undertaken.

17           But with the time that's been objected to here

18   reflects is that it's been reviewed twice.  Not that there were

19   just two functions performed, but that it was reviewed by two

20   different lawyers whose time, as I see from the entries, strike

21   me as being mostly duplicative.  So I'm going to sustain the

22   fee auditor's recommendation for that reason.

23           And in terms of the amounts, you know, if I look at

24   the time that was spent by each lawyer and I were to eliminate

25   one or the other, it comes out to about what the fee auditor

1  has recommended.

2          So whether that was intended or not, I don't think

3  it's as arbitrary as it might otherwise appear.  Anything else

4  on that application?  I otherwise had no other questions.  If

5  not, let's move to the next one.

6          MR. MAYER:  Your Honor, I believe the next

7  application is the Kramer 11 application.  And we have -- the

8  fee auditor has gone over our application and we have

9  recommended cuts in fees of $1,853 and cuts in expenses of

10  $774.  And we have agreed to both of those reductions leaving

11  an application seeking approval of $843,272.25 -- for the

12  reporter that's 843272.25 -- and expenses totaling $40,023.76 -

13  - that's 40023.76 for the period between March 1 and June 30 of

14  this year.

15          We've accepted the fee auditor's requested

16  reductions.  We don't believe there were any other objections

17  and I stand ready to answer, with the help of my colleague Mr.

18  Mannal who is joining on this call, any questions the Court may

19  have.

20          THE COURT:  I have no questions.

21          MR. MAYER:  Thank you, Your Honor.

22          THE COURT:  Next.

23          MR. MAYER:  I believe the next item on the agenda is

24  an application for -- on behalf of Chanin.

25          THE COURT:  That's correct.

1           MR. MAYER:  I don't believe there are any objections
2  to the Chanin application, Your Honor.  And if you have
3  questions, again, we will do our best to -- to respond.
4           The interim fee being sought is $600,000 representing
5  their monthly fee for the period and the interim expense being
6  sought is $28,170.42.
7           THE COURT:  All right.  I had as expenses $29,235.23,
8  am I wrong?
9           MR. SMITH:  Your Honor -- Your Honor, I'm sorry, this
10 is Warren Smith, the fee examiner.  We had recommended a
11 reduction in expenses $1,064.81.
12          THE COURT:  Very well.
13          MR. SMITH:  And that's the amount cited by counsel
14 the --
15          THE COURT:  Okay.
16          MR. SMITH:  -- the $28,170.42 is net of our
17 reduction.
18          THE COURT:  I don't know.  I missed that.  I went
19 through these applications yesterday and I will tell you it was
20 a tedious process so forgive me for getting that one off a
21 little bit.  But I have no other questions.
22          Let's continue.
23          MR. MAYER:  Thank you, Your Honor.  I believe that's
24 it for the Committee professionals, Your Honor, thank you.
25          MR. HIGGINS:  Your Honor, there is a --

1              THE COURT:  How about the Committee members?

2              MR. HIGGINS:  -- a member of the Official Committee,

3   Thompson IG, LLC that -- where there is a certificate of no

4   objection.

5              MR. MAYER:  For expenses.  I beg your pardon.

6              MR. HIGGINS:  For expenses.

7              MR. MAYER:  That is correct.  Thank you, Mr. Higgins,

8   I should not have -- I should not have passed over one of my

9   creditor members who was seeking reimbursement of expenses.

10             THE COURT:  It was Thompson IG, Johnson Electric, and

11  PVGC, all of which I was okay with as was I think the fee

12  auditor.

13             MR. SMITH:  Yes, Your Honor, that's correct.

14             THE COURT:  All right.  I'll approve those amounts.

15             MR. MAYER:  Thank you, Your Honor.

16             MR. HIGGINS:  Your Honor, that brings us -- this is

17  Roger Higgins for the debtors -- that brings us to item number

18  19 which is the second interim fee application for Togut, Segal

19  & Segal and I would yield to counsel.

20             THE COURT:  Is anyone present?

21             MR. HIGGINS:  It doesn't sound like there is, Your

22  Honor, but I would offer --

23             THE COURT:  Mr. Berger?  Mr. Berger is signed up for

24  the telephone call in.  Are you on the line, sir?  I hear no

25  response.

1        MR. HIGGINS:  I do not, Your Honor.  Unfortunately I

2   have not conferred with Mr. Berger about his fee application so

3   I really can't say as to whether they're prepared.  They agree

4   with the fee auditor's recommendation there which I understand

5   has a $1,351.50 recommended reduction.

6        THE COURT:  Mr. Smith, can you shed any light on

7   that?

8        MR. SMITH:  No, we have not had recent contact with

9   Mr. Berger.

10        MR. MAYER:  Your Honor, what I would propose to do is

11   that we -- we reach out to Mr. Berger and if there are no

12   issues that we would submit the -- this order under certificate

13   of counsel.  If there is, we could make appropriate

14   arrangements.

15        THE COURT:  Very well.

16        MR. HIGGINS:  Your Honor, that brings us to item

17   number 20, this is the Deloitte & Touche interim fee

18   application.  I would yield to counsel for Deloitte & Touche.

19        MS. CANNON-GEARY:  Your Honor, this is Irene

20   Cannon-Geary of Deloitte & Touche USA, LLP, the debtor's

21   independent auditors and I'm also appearing today on behalf of

22   Deloitte Tax, LLP, the debtor's service -- tax service

23   providers.

24        There were no reductions recommended by the fee

25   auditor with respect to the Deloitte & Touche, LLP second

1 interim fee application.  And we agree with the amounts

2 recommended by the fee auditor of nine thousand -- $999,595.50

3 for fees for services and $62,737.75 in expenses for Deloitte &

4 Touche, LLP.

5           THE COURT:  Okay.  And with respect to Tax?

6           MS. CANNON-GEARY:  And with respect to Tax which is a

7 separate docket item, I believe it's docket item number 22, the

8 amounts -- again there was a discussion with the fee auditor

9 and it was recommended that Deloitte Tax, LLP accept a $20

10 reduction in the amount of its expenses which we did.

11           And the totals that are sought there are $306,518 in

12 fees and $11,179.98 which is the revised figure for expenses.

13 And, again, those are the amounts recommended by the fee

14 auditor.

15           And we stand ready to answer any questions Your Honor

16 may have.

17           THE COURT:  I do not have any questions.

18           MS. CANNON-GEARY:  Thank you, Your Honor.

19           MR. HIGGINS:  Your Honor, Roger Higgins for the

20 debtor.  That brings us to item number 21 which is the interim

21 fee application for Ernst & Young, LLP.

22           MR. SIMON:  Good afternoon, Your Honor, this is John

23 Simon of Foley & Lardner for Ernst & Young, LLP.

24           THE COURT:  Good afternoon.

25           MR. SIMON:  We received no objections, Your Honor, to

1  the application.  We agree with the fee auditor's recommended

2  amounts and the reduction that he recommended.

3          The amounts of fees that the fee auditor recommended

4  were $898,764 and the amount of expenses that the fee auditor

5  recommended were $15,403.

6          THE COURT:  I have no questions with respect to that

7  application.

8          MR. SIMON:  Thank you, Your Honor.

9          MR. HIGGINS:  Your Honor, we've already dealt with

10  item number 22, that brings us to item number 23 which is the

11  Miller Buckfire second interim fee application.  And I don't

12  know whether counsel for Miller Buckfire is on the line, sounds

13  like he is not or she is not.

14          I note -- I note that there was a recommended

15  reduction of $3,149.34.  I would defer to Mr. Smith as to

16  whether he has any further insight into that matter.

17          MR. SMITH:  Your Honor, that is correct as far as the

18  recommended reduction goes.

19          THE COURT:  Let me ask.  Mr. Gregorio is on the sign

20  in sheet.  Mr. Gregorio, are you on the line?  I hear no

21  response.

22          MR. GREGORIO:  Yes.  Hello.  I'm Mr. Gregorio from

23  Miller Buckfire here.

24          THE COURT:  Oh, okay.

25          MR. GREGORIO:  We've reviewed the response from the

1  fee auditor and we are fine with the requested expense

2  reduction.

3        THE COURT:  Very well.  I have no questions with

4  respect to that application.

5        MR. HIGGINS:  All right.  Your Honor, I believe that

6  that now concludes the -- that concludes items up for the

7  agenda today.

8        THE COURT:  Well I think it's actually, aside from

9  the time of year, quite appropriate that we had this exercise

10  at this time because the interim fees being sought and awarded

11  exceed $20 million and the expenses exceed $1 million.

12        And I think that comes in timely conjunction with the

13  confirmation struggle.  Can someone bring me up to date on

14  that?

15        MR. HIGGINS:  Your Honor, this is Roger Higgins for

16  the debtors.  As you're aware and as I believe all constituents

17  are aware, the debtors have continued the confirmation hearing

18  at this point without a specific date for this plan to be --

19  confirmation to be heard.

20        Quite frankly, Your Honor, as we've said in the -- in

21  our press releases and have communicated to the Court prior to

22  this, the debtors have been facing what can only be termed as

23  challenging credit markets.

24        We have not -- we do not -- did not have an exit

25  facility -- fully committed exit facility with which we could

1 go forward, hence the debtors elected to continue the

2 confirmation hearing.

3       We are now currently exploring all of our options and

4 at this point job one will be securing an extension to the DIP

5 facility.  As Your Honor is aware we have a hearing set for --

6 now for December 27th at 1:30 p.m.  We expect to be filing as

7 early as we can a motion to approve an extension of the DIP.

8 We are in communication and negotiating with the DIP arrangers

9 and the DIP lenders as we speak and we are going to endeavor to

10 file that motion as early as possible.

11       THE COURT:  I have some discomfort, although there

12 may be good reason for it from the debtor's or other parties

13 standpoint, in continuing the confirmation hearing without a

14 further date.

15       MR. HIGGINS:  Your Honor, we were planning to, quite

16 frankly, address that in -- early in the new year.  I think

17 that clearly one of the options on the table is to go forward

18 with the plan as it currently exists while making a fresh

19 effort to secure the required exit financing.

20       And, Your Honor, I would respectfully submit that at

21 this point it would be too early to take that option off the

22 table.  And thus would request to continue it until the new

23 year at which time the debtors in conjunction with their other

24 constituencies, the Committee, and others, we could determine

25 what the best course of action should be.

1          THE COURT:  All right.  Well let's handle it this way

2  then.  Let's add a status future to the hearing now set for the

3  27th on the debtor's expected DIP extension request.

4          MR. HIGGINS:  Your Honor, we would be happy to do

5  that and we shall report on the status of affairs at the

6  hearing on the 27th.

7          THE COURT:  All right.

8          MR. MAYER:  Your Honor, this is Tom Mayer.  If I may

9  request a friendly amendment?

10          THE COURT:  Go ahead.

11          MR. MAYER:  I would like to see a degree of

12  flexibility such that whatever report is rendered might be

13  rendered in camera.  One of the benefits of this particular

14  call is that there is nobody on it other than the professionals

15  and other restricted parties.

16          MR. HIGGINS:  Your Honor, Roger Higgins.  I welcome

17  Mr. Mayer's suggestion, quite frankly, and developments could

18  be very, you know, not -- not those that we would wish to make

19  public at the time and would ask for the freedom to request an

20  in camera status update as circumstances dictate.

21          THE COURT:  What --

22          MR. MAYER:  I realize this is a bit of a departure

23  from form for me, Your Honor, but I think there are times when

24  that's appropriate.

25          THE COURT:  Well let me -- let's handle it this way.

**J&J COURT TRANSCRIBERS, INC.**

1  Let me ask the debtor to submit -- and as far as I'm concerned

2  it can be a, you know, a joint report if the parties wish, a

3  written status report to chambers in confidence on say the 26th

4  so that I have a chance to digest that and make some

5  preliminary determination about how to address any request that

6  may come on the 27th to keep certain matters confidential.

7           MR. DeFRANCESCHI:  Your Honor, Dan DeFranceschi.

8  Just to clarify, what time would you like it on the 26th and do

9  we need to -- I assume we'd just -- we wouldn't file anything

10 including any kind of a cover sheet or anything like that?

11          THE COURT:  No.

12          MR. DeFRANCESCHI:  Just send a report to chambers?

13          THE COURT:  That's fine.  Any time, oh, by the close

14 of business on the 26th.

15          MR. DeFRANCESCHI:  Should we pick 4:00 just so that

16 we're safe?

17          THE COURT:  That's fine.

18          MR. HIGGINS:  Your Honor, this is Roger Higgins.

19 We'll be happy to do that and we'll work with counsel for the

20 Committee in developing that report.

21          THE COURT:  All right.  Anything further for today?

22          MR. HIGGINS:  No, Your Honor.  I think -- I believe

23 that's all.

24          THE COURT:  All right.  Well I wish you the best in

25 your struggles.  That concludes this hearing.  Court is

1  adjourned.

2           ATTORNEYS:  Thank you, Your Honor.

3

4                      *  *  *  *  *

5

6                 **C E R T I F I C A T I O N**

7           I, JANET D. PERSONS, court approved transcriber,

8  certify that the foregoing is a correct transcript from the

9  official electronic sound recording of the proceedings in the

10 above-entitled matter, and to the best of my ability.

11

12 /s/ Janet D. Persons              DATE:  December 18, 2007

13 JANET D. PERSONS

14 J&J COURT TRANSCRIBERS, INC.

15

16

17

18

19

20

21

22

23

24

25

                   **J&J COURT TRANSCRIBERS, INC.**