## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **DURA AUTOMOTIVE SYSTEMS, INC.,** | ) Case No. 06-11202 (KJC) |
| *et al.,* | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Re: Docket Nos. 2671 and 2681 |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN REPLACEMENT AND ADDITIONAL POSTPETITION TERM LOAN FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE (III) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") dated January 25, 2008 as amended on January 28, 2008, of Dura Operating Corp. ("Dura") and its affiliated debtors, as debtors and debtors in possession (each individually a "Debtor" and, collectively, the "Debtors"), for entry of an order seeking, among other things:

(a)    a final order authorizing them to enter into (i) certain amendments (together, the "Revolver DIP Amendment") to the Debtors' postpetition revolving secured financing facility (the "Revolver DIP Facility") and (ii) the Replacement Intercreditor Agreement (as defined below); [1]

(b)    this Court's authorization on a final basis, pursuant to sections 363 and 364 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

---

[1]    On January 30, 2008, concurrently with the entry of the Interim Order (as defined below), the Court entered that certain Final Order Approving Revolver DIP Amendment and Replacement Intercreditor Agreement (the "Final Revolver DIP Amendment Order")

10609623 3

"Bankruptcy Rules"), for the Debtors, among other things, to obtain replacement and additional postpetition term loan financing of up to an aggregate amount of $170,000,000 (the "Replacement Term DIP Borrowing Amount"), including a synthetic letter of credit subfacility (the "Synthetic Letter of Credit Facility") of up to $20,000,000 (together, the "Replacement Term DIP Facility"), pursuant to that certain Senior Secured Superpriority Debtor in Possession Term Loan and Guaranty Agreement, dated as of January 30, 2008 (as the same may be amended, supplemented or otherwise modified from time to time, the "Replacement Term DIP Credit Agreement"),[2] by and among Dura Automotive Systems, Inc., a Delaware corporation (the "Parent"), Dura (the "Borrower"), each domestic subsidiary of the Parent listed as a "Guarantor" on the signature pages to the Replacement Term DIP Credit Agreement (together with the Parent, each a "Guarantor" and collectively, the "Guarantors"), the issuing banks party thereto, (the "Issuing Banks") and Ableco Finance LLC ("Ableco"), as (w) lender together with its successors and assigns and other lenders from time to time parties thereto and the Issuing Banks (collectively, the "Replacement Term DIP Lenders"), (x) collateral agent (in such capacity, the "Collateral Agent"), (y) administrative agent for the Replacement Term DIP Lenders (in such capacity, the "Administrative Agent" and together with the Collateral Agent, each an "Agent" and collectively, the "Agents") and (z) as sole bookrunner, lead arranger, syndication agent and documentation agent, on the terms and subject to conditions set forth therein subject only to (x) the Carve-Out (as defined below) and (y) subject to the terms of the Replacement Intercreditor Agreement (as defined below), the Existing DIP Order (as defined below), (i) to grant to the Collateral Agent and the Replacement Term DIP Lenders superpriority administrative expense

---

[2]    Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the (i) Replacement Term DIP Credit Agreement; (ii) the Existing DIP Order (as defined herein), (iii) the Interim DIP Order (as defined herein) or (iv) the Motion, as applicable. A copy of the Replacement Term DIP Credit Agreement is annexed hereto as Exhibit A.

RLF1-3248501-1
RLF1-3255412-1

claims pursuant to section 364(c)(1) of the Bankruptcy Code, with priority in payment with respect to all Obligations of the Debtors to the Agents and the Replacement Term DIP Lenders over any and all administrative expenses of the kinds specified in, among others, sections 503(b) and 507(b) of the Bankruptcy Code and (ii) to grant to the Collateral Agent for the benefit of the Agents, and the Replacement Term DIP Lenders senior security interests in and liens upon substantially all now owned or hereafter acquired assets and property of the estate (as defined in the Bankruptcy Code), real and personal, of the Debtors, including all proceeds of avoidance actions, but excluding the avoidance actions and such other assets as the Agents, in their sole discretion, determine to be immaterial (the "Collateral") whereby the security interests in and liens on the Collateral shall be first priority in all of the Fixed Asset Collateral (including, without limitation, 100% of the capital stock of all first-tier foreign subsidiaries) and second priority in all Current Asset Collateral (as each term is defined in that certain Replacement Intercreditor Agreement dated January 30, 2008 by and among the Agents and the Revolver Administrative Agent and Revolver Collateral Agent, (the "Replacement Intercreditor Agreement")) pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code; and

(c)     the Court's scheduling of a hearing to consider entry of a final order authorizing on a final basis, among other things, the Replacement Term DIP Facility (the "Final Hearing"); and

(d)     the Court's finding that notice of the Final Hearing given to the following parties: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the Second Lien Group; (d) counsel to the administrative agents for the Existing Revolver DIP Facility, Existing Term DIP Facility (as defined in the Interim Order), and Replacement Term DIP Facility; (e) parties who have requested to be served under Fed.R.Bankr.P. 2002(i); and (f) the

10609623 3

- 3 -

Canadian Information Officer (collectively, the "Notice Parties") was good and sufficient under the particular circumstances and no other or further notice is or shall be required;

And due and sufficient notice of the Motion under the circumstances having been given; and the preliminary hearing on the Motion having been held before this Court on January 29, 2008 (the " (the "Preliminary Hearing"); and upon the entire record made at the Preliminary Hearing, the Court having entered the interim order (the "Interim Order") on January 30, 2008 granting the Motion on an interim basis; and the Final Hearing on the Motion having been held before this Court on February 21, 2008, and this Court having found good and sufficient cause appearing therefor;

THE COURT HEREBY FINDS THAT:

A.      Commencement of Cases. On October 30, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. The Official Committee of Unsecured Creditors (the "Creditors Committee") was appointed in these Chapter 11 cases pursuant to Section 1102 of the Bankruptcy Code on November 8, 2006.

B.      Jurisdiction: Venue. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure. Venue of the Chapter 11 Cases

RLF1-3248501-1
RLF1-3255412-1

and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Effectiveness of Existing DIP Order and Interim Order.

(a)    Prepetition Second Priority Credit Agreement.    The rights, including adequate protection rights, of the Prepetition Second Priority Collateral Agent, Prepetition Second Priority Administrative Agent and Prepetition Second Priority Lenders under the Existing DIP Order are in no way diminished or otherwise affected by the Replacement Term DIP Facility, the Interim Order or this Final Order.

(b)    Existing Revolver DIP Lenders.    The Existing Revolver DIP Facility, the Existing Revolver DIP Liens, the Existing Revolver DIP Superpriority Claims, and the rights of the Existing Revolver DIP Agent and Existing Revolver DIP Lenders remain subject in all respects to the Existing DIP Order and the Replacement Intercreditor Agreement and are in no way diminished or otherwise affected by the Replacement Term DIP Facility.

(c)    Termination of Existing Term DIP Facility.    Pursuant to paragraph 4 of the Interim Order, all obligations of the Debtors under the Existing Term DIP Facility (as defined in the Interim Order) have been paid in full in cash (other than contingent indemnity obligations not yet due and owing) and the Existing Term DIP Facility terminated, and the Existing Term DIP Liens and Existing Term DIP Superpriority Claims (as each is defined in the Interim Order) have been released, extinguished, discharged, fully satisfied, and are of no further force and effect.

(d)    Nothing contained herein shall affect the Challenge Deadline (as defined in the Existing DIP Order) set forth in the Existing DIP Order.

D.    Existing DIP Order.    Without prejudice to the rights of any other party, the Debtors acknowledge, admit and confirm that:

10609623 3                                                - 5 -

(a)     On November 21, 2006, the Bankruptcy Court entered a final order, (i) authorizing the Debtors to obtain postpetition financing pursuant to sections 363 and 364 of Bankruptcy Code, (ii) granting liens and superpriority claims to the postpetition lenders pursuant to section 364 of the Bankruptcy Code, (iii) authorizing the use of cash collateral pursuant to section 363 of the Bankruptcy Code, (iv) providing adequate protection to the prepetition lenders pursuant to sections 361, 362, 363 and 364 of Bankruptcy Code and (v) directing repayment of certain prepetition indebtedness (as subsequently amended, supplemented, or modified on October 4, 2007, December 28, 2007, January 4, 2008, and January 30, 2008, the "Existing DIP Order").

(b)     The Existing DIP Order approved, among other things, a postpetition revolving financing facility of up to an aggregate amount of $115,000,000 (the "Existing Revolver DIP Facility") by (i) authorizing the Debtors to enter into that certain Senior Secured Superpriority Debtor in Possession Revolving Credit and Guaranty Agreement, dated as of November 30, 2006 (as the same has been and may be amended, supplemented or otherwise modified from time to time, the "Existing Revolver DIP Credit Agreement"), by and among Dura, as borrower, and Parent and certain subsidiaries, as guarantors, the lenders and letter of credit issuers from time to time parties thereto (collectively, the "Existing Revolver DIP Lenders"), and General Electric Capital Corporation, as Administrative Agent for the Existing Revolver DIP Lenders (in such capacity, the "Existing Revolver DIP Agent"), subject to the terms and conditions set forth therein, (ii) granting to the Existing Revolver DIP Agent and Existing Revolver DIP Lenders' senior security interests in and liens upon all of the Debtors' currently owned and after acquired property to secure the Debtors' Obligations under the Existing Revolver DIP Credit Agreement, pursuant to section 364(c) of the Bankruptcy Code,

10609623 3                                      - 6 -

and granting security interests and liens senior and superior to the security interests and liens securing the Prepetition Second Priority Indebtedness pursuant to section 364(d) of the Bankruptcy Code (collectively, the "Existing Revolver DIP Liens"), and (iii) granting to the Existing Revolver DIP Lenders superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, with priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code except subject to the terms of that certain Intercreditor Agreement dated as of November 30, 2006 by and among various Debtors, the Existing Revolver DIP Agent, and the Existing Term DIP Agent (as defined below) (the "Existing Intercreditor Agreement") (collectively, the "Existing Revolver DIP Superpriority Claims").

      E.     Exigent Circumstances. In view of the facts that the (i) Existing Term DIP Facility (as defined in the Interim Order) was terminated by the Existing Term DIP Lenders on January 30, 2008 in accordance with the Interim Order, leaving the Debtors without an adequate source to fund their working capital needs and other obligations, and thereby jeopardizing their business enterprise and reorganization effort, and (ii) pursuant to the Revolver DIP Amendment, the Debtors paid down in full in cash the outstanding balance of the Existing Revolver DIP Facility on January 30, 2008 and the aggregate commitments under such Facility were reduced to $90,000,000, an immediate need for financing exists.

      F.     Cash Collateral. For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined by section 363 of the Bankruptcy Code and including any and all prepetition cash collateral, and subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Collateral (as defined in the Existing DIP Order), in which the Existing Revolver DIP Lenders, Prepetition Secured Priority

10609623 3

- 7 -

Lenders or the Replacement Term DIP Lenders have any lien or security interest, as such liens or security interests (including, without limitation, any adequate protection liens or security interests) existed on the Petition Date or arise thereafter pursuant to the Existing DIP Order, this Final Order, any other order of the Court, applicable law or otherwise.

G.    Adequate Protection to the Prepetition Second Priority Lenders.    The adequate protection (as described in the Existing DIP Order) provided to the Prepetition Second Priority Lenders against any decline in the value of such parties' interest in the Prepetition Second Priority Lenders Collateral from and after the Petition Date, including, without limitation, any decline resulting from the granting to the Existing Revolver DIP Lenders, the Existing Term DIP Lenders (as defined in the Interim Order) and the Replacement Term DIP Lenders of senior, priming liens pursuant to the provisions of the Existing DIP Order and the Interim Order, and/or the use of Cash Collateral, is consistent with and authorized by the Bankruptcy Code and shall continue and not be in any way diminished or otherwise affected by the liens granted to the Agent pursuant to the Replacement Term DIP Facility.

H.    Consent by Prepetition Second Priority Lenders.    The Prepetition Second Priority Lenders have consented to the Debtors' granting the Replacement Term DIP Liens and Superpriority Claim to the Agent and Replacement Term DIP Lenders.    The Prepetition Second Priority Lenders acknowledge that their interests are adequately protected by the Adequate Protection Liens and Adequate Protection Claims and other adequate protection granted by the Existing DIP Order which shall continue and not be in any way diminished or affected hereby.

I.    No Alternative Sources of Funding.    Given the Debtors' current financial condition and capital structure, the Debtors have attempted but are unable to obtain unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code or pursuant to sections 364(a),

(b) or (c)(1) of the Bankruptcy Code, or secured credit pursuant to sections 364(c)(2) and (3) only, to refinance the Existing Term DIP Facility. Replacement postpetition financing is not otherwise available without the Debtors (i) granting, pursuant to section 364(c)(l) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and  (ii) securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code. Under the circumstances, no other source of such financing exists on terms more favorable than those offered by the Replacement Term DIP Lenders.

J.      Section 364(e); Good Faith. The Replacement Term DIP Facility has been negotiated in good faith and at arm's-length among the Debtors and the Replacement Term DIP Lenders. Any credit extended and loans made to the Debtors pursuant to this Final Order shall be deemed to have been extended, issued, made, used or provided, as the case may be, by the Replacement Term DIP Lenders in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code, and the Replacement Term DIP Lenders shall be entitled to all of the protections afforded thereby.

K.      Fair and Reasonable Terms. Based on the record before this Court, it appears that the terms of this Final Order, including, without limitation, the terms of the Replacement Term DIP Facility, and the provision of adequate protection, as contemplated hereunder, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

RLF1-3248501-1
RLF1-3255412-1

L.       Good Cause Shown. Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will permit the Debtors to continue to meet payroll and other operating expenses, obtain needed supplies and retain customer, employee and supplier confidence by demonstrating an ability to continue to maintain normal operations. The Replacement Term DIP Facility authorized hereunder thus is critical to avoid irreparable harm to, and in the best interests of, the Debtors' estates.

M.       Adequate Notice. On or about January 30, 2008, the Debtors served a notice of (i) entry of the Interim Order and (ii) the Final Hearing, together with a copy of the Interim Order, upon the following parties: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the administrative agent for the Debtors' prepetition first lien secured lenders; (d) counsel to the Second Lien Group; (e) counsel to the administrative agents for the Existing Revolver DIP Facility, Existing Term DIP Facility, and Replacement Term DIP Facility; (f) parties who have requested to be served under Fed.R.Bankr.P. 2002(i); and (g) the Canadian Information Officer. Given the nature of the relief sought in the Motion, such notice of the Motion, entry of the Interim Order, and the Final Hearing constitutes good, sufficient and adequate notice pursuant to Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(c) of the Bankruptcy Code, and no further notice of the Motion or this Final Order is necessary or required.

N.       Immediate Entry of Final Order. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The permission granted herein to enter into the Replacement Term DIP Facility and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as

10609623 3                                                           - 10 -

its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Preliminary and Final Hearings, and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED that:

1.    Motion Granted.    The Motion is granted, subject to the terms and conditions set forth in this Final Order.[3] Any objections to the relief sought in the Motion that have not previously been resolved or withdrawn are hereby overruled on their merits. This Final Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry. The term of this Final Order and the Replacement Term DIP Facility authorized hereunder shall expire, and the credit and loans extended, made, issued, used, or provided pursuant to this Final Order and the Replacement Term DIP Facility will mature and, together with all interest thereon and any other Obligations accruing thereunder, will become due and payable (unless such loans and other Obligations become due and payable earlier pursuant to the terms of the Replacement Term DIP Facility and this Final Order by way of acceleration or otherwise) on the Maturity Date (as such term is defined in the Replacement Term DIP Credit Agreement).

---

[3]    Concurrently with the entry of the Interim Order, the Court entered the Final Revolver DIP Amendment Order approving, among other things, entry into the Replacement Intercreditor Agreement on a final basis, which order remains in full force and effect.

10609623 3                                    - 11 -

       2.    <u>Authorization</u>.  The Debtors are expressly authorized and empowered, on a final basis, to:

       (a)    borrow money, obtain letters of credit under the Synthetic Letter of Credit Facility, incur Replacement Term DIP Indebtedness (as defined below) in a principal amount at any time outstanding not to exceed the Replacement Term DIP Borrowing Amount, reimbursement obligations and other obligations, grant liens, make deposits, provide guaranties and indemnities and perform their obligations pursuant to the provisions of this Final Order, the Replacement Term DIP Facility and the Replacement Term DIP Credit Documents (as defined below);

       (b)    to the extent not previously having done so, execute, deliver and enter into the Replacement Term DIP Facility, as well as all such other financing statements, notices, schedules, other security agreements, control agreements, pledge agreements (including foreign pledge agreements), intellectual property security agreements, deeds of trust, mortgages, instruments, guaranties, subordination agreements, acceptance agreements and other documents as may be reasonably appropriate, necessary or required to by the Replacement Term DIP Lenders (collectively with the Replacement Term DIP Facility, Replacement Term DIP Credit Agreement, Replacement Intercreditor Agreement, the "<u>Replacement Term DIP Credit Documents</u>") to (i) evidence their Obligations to the Replacement Term DIP Lenders arising under or in connection with this Final Order or the Replacement Term DIP Facility, (ii) consummate the terms and provisions of this Final Order or Replacement Term DIP Facility, or (iii) evidence the Replacement Term DIP Facility or the perfection of the liens and security interests granted to Collateral Agent for the benefit of the Replacement Term DIP Lenders

10609623 3               - 12 -

pursuant to this Final Order or the Replacement Term DIP Facility, in all cases subject to the terms of the Replacement Intercreditor Agreement;

(c)    to the extent not previously having done so, enter into the Replacement Intercreditor Agreement on a final basis;

(d)    to the extent not previously having done so, pay off and terminate the Existing Term DIP Facility pursuant to the terms of paragraph 4 of the Interim Order;

(e)    to the extent not previously having done so, pay down in full in cash the Existing Revolver DIP Facility pursuant to the terms of paragraph 4 of the Interim Order; and

(f)    to the extent not previously having done so, pay a one percent (1%) fee to the Issuing Bank on account of the issuance of Synthetic Letters of Credit under the Synthetic Letter of Credit Facility.

Upon execution and delivery by the Debtors, the Replacement Term DIP Credit Documents shall be binding on and enforceable against the Debtors, their estates, and their successors and assigns. The Debtors are further authorized to execute and deliver any non-material amendments or modifications to the Replacement Term DIP Facility or any of the Replacement Term DIP Credit Documents as may be agreed upon in writing by the Debtors and the Replacement Term DIP Lenders, without the need of further notice, hearing or order of this Court, provided however, that notice of any (i) increase in the aggregate of the Replacement Term DIP Facility' lending commitments, (ii) increase in the applicable interest rates, other than increases as a result of the imposition of the Default Rate of Interest and increases as described in the Motion or (iii) extensions of the maturity of the obligations under the Replacement Term DIP Facility, shall be provided to the U.S. Trustee, counsel to the Creditors' Committee, counsel

RLF1-3248501-1
RLF1-3255412-1

to the Prepetition Second Priority Agents and counsel to the Second Lien Committee, each of which shall have five (5) days from the date of such notice within which to object in writing to such amendment, modification or supplement, and upon any such timely written objection, such amendment, modification or supplement shall only be permitted pursuant to an order of this Court. For purposes of this Final Order, the term "Replacement Term DIP Indebtedness" shall mean all amounts owing under the Replacement Term DIP Facility and other Replacement Term DIP Credit Documents (including, without limitation, all Obligations, as that term is defined in the Replacement Term DIP Facility) and shall include the principal of, interest on, fees and other charges owing in respect of, such amounts (including, without limitation, all reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the Replacement Term DIP Credit Documents), and any obligations, contingent or otherwise, in respect of letters of credit, if any.

3.    Borrowing. Subject to the terms and conditions of this Final Order and the Replacement Term DIP Credit Documents, including without limitation, the covenants and Closing Budget as specified in the Replacement Term DIP Facility, and the continued provision of adequate protection as described in the Existing DIP Order, the Replacement Term DIP Lenders may make loans and advances and other financial accommodations to the Debtors and the Debtors may continue to use the Replacement Term DIP Lenders' Cash Collateral; provided, however, that the Debtors shall only be permitted to use Cash Collateral and incur Replacement Term DIP Indebtedness and use the proceeds of the Replacement Term DIP Indebtedness in accordance with the covenants, formulae, Budget and other terms and conditions set forth in the Replacement Term DIP Facility and this Final Order. Notwithstanding the foregoing, if the Replacement Term Lenders in their sole discretion advance funds or make other financial

10609623 3                                    - 14 -

accommodations in excess of any covenants, formulae, Closing Budgets or other terms and conditions (or any other limitations in the Replacement Term DIP Credit Documents), such advances and other financial accommodations (and any other indebtedness in excess of such amount) shall constitute Replacement Term DIP Indebtedness entitled to the benefits of the Replacement Term DIP Credit Documents and this Final Order; provided that such advances and other financial accommodations shall not exceed $170,000,000. Neither the Collateral Agent nor any of the Replacement Term DIP Lenders shall have any obligation with respect to the proceeds of the Replacement Term DIP Facility, the Replacement Term DIP Collateral, or the use of Cash Collateral, nor shall any of them be obligated to ensure or monitor the Debtors' compliance with any such covenants, formulae, Closing Budgets or other terms and conditions or be obligated to pay (directly or indirectly from the Replacement Term DIP Collateral (as defined below)) any expenses incurred or authorized to be incurred pursuant to the Replacement Term DIP Credit Documents. The Replacement Term DIP Lenders' consent to any Closing Budget shall not be construed as a commitment to continue to provide the Replacement Term DIP Facility or permit the use of Cash Collateral after the occurrence of an Event of Default (as defined in the Replacement Term DIP Facility) or beyond the Termination Date (as defined below), regardless of whether the aggregate funds described in the Closing Budgets have been expended.

4.    Interest, Fees, Costs and Expenses for Replacement Term DIP Indebtedness. All Replacement Term DIP Indebtedness shall bear interest (including, without limitation, at the Default Rate under the Replacement Term DIP Facility upon the occurrence and continuation of an Event of Default) and be payable as set forth in the Replacement Term DIP Facility. The Debtors are hereby authorized and directed, without further motion, fee application, or order of this Court, to pay or reimburse the Agent and the Replacement Term DIP

Lenders for all present and future fees, commissions, costs and expenses (including, without limitation, all reasonable attorneys', accountants', and financial advisors' fees and expenses, paid or incurred by the Agent or the Replacement Term DIP Lenders at any time in connection with the financing transactions as authorized by and provided for in this Final Order and the Replacement Term DIP Credit Documents), all of which unpaid fees, commissions, costs and expenses shall be and are included as part of the Obligations under the Replacement Term DIP Credit Documents, shall be deemed a Superpriority Claim, and shall be secured by the Replacement Term DIP Collateral (as defined below) and afforded all of the rights, priorities and protections afforded to Replacement Term DIP Lenders in respect of the Replacement Term DIP Indebtedness under this Final Order and the Replacement Term DIP Credit Documents.

5. Replacement Term DIP Loan Payments. In addition to those payments described in paragraph 4 above, the Debtors are authorized and directed to pay on a calendar monthly basis all reasonable costs and expenses of the Replacement Term DIP Lenders (including all reasonable fees and expenses of professionals as provided in the Replacement Term DIP Facility) engaged by the Replacement Term DIP Lenders) relating to the negotiation, documentation and administration of the Replacement Term DIP Facility (whether or not the Replacement Term DIP Facility is put into place) in each case solely to the extent set forth in the Replacement Term DIP Credit Documents, regardless of whether any of the interest, fees, expenses, costs, charges, and payments described in this paragraph and paragraph 4 above accrued, arose or were incurred prior to, on or as of the on the date the Loan was made under the Replacement Term DIP Facility.

6. Security for Replacement Term DIP Lenders.

(a)    <u>Replacement Term DIP Liens</u>.  The Collateral Agent is hereby granted for the benefit of the Replacement Term DIP Lenders, as security for the repayment of all Replacement Term DIP Indebtedness, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, and perfected security interests and liens (the "<u>Replacement Term DIP Liens</u>") in and on substantially all now owned or hereafter acquired domestic assets and property of the estate (as defined in the Bankruptcy Code), real and personal, of the Debtors, including all proceeds of avoidance actions, but excluding such avoidance actions and such other assets as the Agents, in their sole discretion, determine to be immaterial (the "<u>Collateral</u>").  Subject to the terms of the Replacement Intercreditor Agreement, the security interests and liens granted the Replacement Term DIP Lenders in and on the Collateral shall be first priority in all of the Fixed Asset Collateral (including, without limitation, 100% of the capital stock of all first-tier foreign subsidiaries) and second priority security in all Current Asset Collateral pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code (collectively, all of the foregoing shall be referred to herein as the "<u>Replacement Term DIP Collateral</u>"), <u>provided</u> that the Replacement Term DIP Liens shall be subject only (i) to the Carve-Out and (ii) subject to the terms of the Replacement Intercreditor Agreement, the Existing Revolver DIP Liens.  Without limiting the generality of the foregoing, and notwithstanding anything to the contrary contained in this Final Order, pursuant to section 364(d)(1) of the Bankruptcy Code, the Replacement Term DIP Liens shall be senior and superior to (i) the Prepetition Second Priority Lender Liens and solely with respect to the Fixed Asset Collateral the Existing Revolver DIP Liens, (ii) the rights of the Debtors and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, (iii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any

RLF1-3248501-3
RLF1-3255412-1

Debtor, (iv) any security interest or lien of any creditor or other party in interest in these Chapter 11 Cases that is or was subordinate to the Existing Term DIP Liens, (v) any security interest in or lien which is avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, and (vi) any liens granted on or after the Petition Date to provide adequate protection to any party.

(b)    The Replacement Term DIP Liens shall be and hereby are legal, valid, binding, enforceable, and fully perfected liens and security interests, not subject to subordination or avoidance for all purposes in the Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceedings if any of the Chapter 11 Cases is converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "Successor Case"). Other than the Existing Revolver DIP Liens, the Carve-Out, and Permitted Priority Liens (as defined in the Replacement Term DIP Credit Agreement) as provided for in Section 6.2 of the Replacement Term DIP Credit Agreement no other liens or security interests shall be senior to or pari passu with the Replacement Term DIP Liens in these Chapter 11 Cases or any Successor Case without the express written consent of the Replacement Term DIP Lenders (which consent may be withheld in their sole discretion).

(c)    Superpriority Claim. In addition to the Replacement Term DIP Liens, for all Replacement Term DIP Indebtedness now existing or hereafter arising pursuant to Replacement Term DIP Facility, the Replacement Term DIP Credit Documents and/or this Final Order, the Replacement Term DIP Lenders are hereby granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim"), and, (x) except for the payment of the Carve-Out and (y) subject to the

Replacement Intercreditor Agreement, the Existing Revolver DIP Superpriority Claims and the Superpriority Claim shall be pari passu and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or any Successor Case), and shall at all times be senior to the rights of the Debtors or any domestic or foreign subsidiary or affiliate of any Debtor, any successor trustee or estate representative, or any other creditor or party in interest in the Chapter 11 Cases or any Successor Case. Except for (i) the Carve-Out and subject to (ii) the Replacement Intercreditor Agreement and (iii) the Existing Revolver DIP Superpriority Claims, no cost or expense of administration under any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or any Successor Case), shall be senior to, or pari passu with, the Superpriority Claim. The Replacement Term DIP Liens and Superpriority Claim granted to the Replacement Term DIP Lenders under this Final Order shall continue in these Chapter 11 Cases and in any Successor Case, and such liens and security interests shall maintain their priority as provided in this Final Order until all of the Obligations under the Replacement Term DIP Credit Documents have been indefeasibly paid in full in cash (other than contingent obligations not then due and owing) and the Replacement Term DIP Lenders' obligations under the Replacement Term DIP Facility are terminated.

(d)    Adequate Protection to Prepetition Second Priority Lenders. Until the indefeasible repayment in full in cash of the Prepetition Second Priority Indebtedness, the

Prepetition Second Priority Lenders are entitled to, and shall continue to be afforded on a final basis, all the adequate protection provided in the Existing DIP Order.

       7.     Perfection of New Liens.

       (a)     The liens on and security interests in the Replacement Term DIP Collateral granted to the Collateral Agent for the benefit of Replacement Term DIP Lenders by this Final Order or the Replacement Term DIP Credit Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, which is hereby lifted and vacated for such purpose, the Collateral Agent or the Replacement Term DIP Lenders may, (i) subject to the Replacement Intercreditor Agreement, at their sole option, file or record or cause the Debtors to obtain any such waivers or other consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the Collateral Agent or the Replacement Term DIP Lenders may require, and (ii) subject to the Replacement Intercreditor Agreement, require the Debtors to deliver any chattel paper, instruments or securities evidencing or constituting any Replacement Term DIP Collateral, and the Debtors are directed to cooperate and comply therewith in each case in accordance with the Replacement Term DIP Credit Documents.

       (b)     Subject to the Replacement Intercreditor Agreement, if the Collateral Agent or the Replacement Term DIP Lenders, in their sole discretion, shall elect for any reason to obtain or cause the Debtors to obtain any such waivers or consents or cause to be

filed or recorded any such notices, financing statements, mortgages or other documents with respect to such postpetition security interests and liens, all such waivers or consents, financing statements or similar documents shall be deemed to have been filed or recorded as of the date and time of this Final Order, with the priorities as set forth herein, and no defect in any such act shall affect or impair the validity, perfection, and enforceability of the Replacement Term DIP Liens granted under this Final Order.

(c)     The Collateral Agent or the Replacement Term DIP Lenders may (in their sole discretion), but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of such applicable parties' interests in the Replacement Term DIP Collateral.

(d)     Subject to the Replacement Intercreditor Agreement, upon the request of the Collateral Agent or the Replacement Term DIP Lenders, the Prepetition Second Priority Agent is authorized to make, execute and deliver such instruments and any possessory collateral to enable the Replacement Term DIP Lenders to further perfect, preserve and enforce the security interests and liens granted them by this Final Order and the Replacement Term DIP Facility.

(e)     To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and

10609623 3                                          - 21 -

the judicial power of the United States Bankruptcy Court (provided that the Replacement Term DIP Lenders may, subject to the terms of the Replacement Intercreditor Agreement, still take such steps as they deem necessary to perfect their security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Final Order).

8.    Default Under Other Documents.    The Collateral Agent and the Replacement Term DIP Lenders shall have all rights and remedies with respect to the Debtors, Replacement Term DIP Liens, and Superpriority Claim as are set forth in this Final Order and the Replacement Term DIP Credit Documents. Notwithstanding anything to the contrary contained in any prepetition or postpetition agreement, contract, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, and except as otherwise provided herein, in the Existing DIP Order, and in the Replacement Intercreditor Agreement, any provision that restricts, limits or impairs in any way any Debtor from granting the Replacement Term DIP Liens on any of its assets or properties to the Collateral Agent for the benefit of the Replacement Term DIP Lenders or otherwise entering into the Replacement Term DIP Credit Documents and complying with all of the terms, conditions and provisions of this Final Order shall be unenforceable against such Debtors(s), and therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Collateral Agent and/or the Replacement Term DIP Lenders pursuant to this Final Order.

9.    Debtors' Waiver of Rights. The Debtors and their estates (and any party in interest acting on behalf of any Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without prior written consent of the Replacement Term DIP Lenders (which may be withheld in their sole discretion), or (b) without prior indefeasible payment and

10609623 3                                                                 - 22 -

satisfaction in full in cash of the Replacement Term DIP Indebtedness, other than contingent indemnity obligations not then due and owing: (i) except for the Existing Revolver DIP Liens and subject to the Replacement Intercreditor Agreement, to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, any liens on or security interests in any Replacement Term DIP Collateral that are pari passu with, equal to or superior to Replacement Term DIP Liens in the Replacement Term DIP Collateral granted under this Final Order; (ii) except for the Existing Revolver Superpriority Claims and subject to the Replacement Intercreditor Agreement to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, claims or expenses against the Debtors that are pari passu with, equal to or superior to the Superpriority Claim granted under this Final Order; (iii) to request that the Court authorize the use of Cash Collateral or the sale, lease, or other disposition of property of Debtors' estates in which the Collateral Agent or the Replacement Term DIP Lenders have a lien or security interest, except as expressly permitted hereunder or under the Replacement Term DIP Credit Documents; or (iv) to modify or affect any of the rights of the Collateral Agent, the Replacement Term DIP Lenders or the Existing Revolver DIP Lenders under this Final Order or any Replacement Term DIP Credit Documents by any order entered in any of the Chapter 11 Cases or any Successor Case.

10.    Waiver of Section 506(c) Claims. No costs or expenses of administration or other surcharge, lien, assessment or claim incurred on or after the Petition Date of any person or entity shall be imposed against Replacement Term DIP Lenders, their claims or the Replacement Term DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby waive any and all such rights under section 506(c) of the Bankruptcy Code.

RLF1-3248501-1
RLF1-3255412-1

11.     Termination of Replacement Term DIP Facility and Use of Cash Collateral. Except as otherwise agreed in writing by the Replacement Term DIP Lenders, if an Event of Default under the Replacement Term DIP Facility shall have occurred and be continuing, the Debtors' authorization to incur Replacement Term DIP Indebtedness and use Cash Collateral shall immediately and automatically terminate upon delivery of written notice to the Debtors of such termination as provided under the Replacement Term DIP Facility, or delivery of written notice to the Debtors of a default of the terms and conditions of this Final Order (the "Termination Date"). Upon the occurrence and continuation of an Event of Default all Replacement Term DIP Indebtedness shall be due and payable on demand in cash in accordance with the Replacement Term DIP Facility.

12.     Modification of Automatic Stay.

(a)     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Collateral Agent and the Replacement Term DIP Lenders to permit them, subject to the terms of the Replacement Intercreditor Agreement, to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to, this Final Order and the other Replacement Term DIP Credit Documents without further application or motion to, or order from, the Court, other than those remedies that require five (5) business days notice as described in subparagraph (b) of this paragraph 12. Regardless of any change in circumstances (whether or not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit any Collateral Agent's or Replacement Term DIP Lenders' exercise, enjoyment and enforcement, subject to the terms of the Replacement Intercreditor Agreement, of any of such rights, benefits, privileges and remedies as described herein or under the

10609623 3                                    - 24 -

Replacement Term DIP Credit Documents. Subject to the Replacement Intercreditor Agreement, the Collateral Agent and/or the Replacement Term DIP Lenders are hereby authorized and granted leave, among other things, to (i) receive and apply collections on and proceeds of the Replacement Term DIP Collateral to the Replacement Term DIP Indebtedness in the manner specified in this Final Order (including, without limitation, paragraph 15 below) and the Replacement Term DIP Credit Documents, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the Replacement Term DIP Collateral, (iii) to give any Debtor any notice provided for in any of the Replacement Term DIP Credit Documents or this Final Order (including without limitation the notice described in paragraph (b) below), (iv) upon the occurrence of and during the continuation of an Event of Default, cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Replacement Term DIP Lenders to make loans or other extensions of credit under the Replacement Term DIP Credit Documents or this Final Order, and (v) upon the occurrence and during the continuation of an Event of Default and otherwise in accordance with the Replacement Term DIP Facility, or upon the Termination Date, and without application or motion to, or order from the Court, (1) terminate the Replacement Term DIP Facility and the Replacement Term DIP Credit Documents, (2) declare all Replacement Term DIP Indebtedness immediately due and payable, and require that all contingent Obligations, if any, be cash collateralized or terminated without liability to the Replacement Term DIP Lenders, (3) revoke the Debtors' right, if any, to use Cash Collateral under this Final Order and/or the other Replacement Term DIP Credit Documents, (4) require that all obligation on account of Synthetic Letters of Credit be cash collateralized and (5) charge

RLF1-3248501-1
RLF1-3255412-1

the Default Rate on the Replacement Term DIP Indebtedness as set forth in the Replacement Term DIP Facility.

(b)     Upon the occurrence of any Event of Default, or upon the Termination Date, and after providing five (5) business days' prior notice to counsel for the Debtors, counsel for the Second Lien Committee, counsel to the Creditors' Committee, counsel to the Existing Revolver DIP Agent and the U.S. Trustee, the Collateral Agent and the Replacement Term DIP Lenders, subject to the Replacement Intercreditor Agreement, shall be entitled to foreclose or otherwise enforce their Replacement Term DIP Liens on any or all of the Replacement Term DIP Collateral and/or to exercise any other lien enforcement remedies under the Replacement Term DIP Credit Documents, this Final Order or applicable law as against the Replacement Term DIP Collateral (including the right to set off funds in accounts maintained by the Debtors with the Replacement Term DIP Lenders to repay the Obligations under the Replacement Term DIP Credit Documents, as to which no prior notice shall be required), all without further notice, motion or application to, hearing before, or order from the Court, as the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Collateral Agent  and the Replacement Term DIP Lenders; provided, however, that (i) the Debtors, the Second Lien Committee, the Creditors' Committee, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362 of the Bankruptcy Code or to obtain any other injunctive relief, and (ii) this Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final Order and relating to the application, re-imposition or continuance of the automatic stay of section 362 of the Bankruptcy Code or other injunctive relief requested.

RLF1-3248501-1
RLF1-3255412-1

(c)     Unless the Replacement Term DIP Lenders otherwise agree in writing pursuant to the terms of the Replacement Intercreditor Agreement, or as otherwise ordered by the Court, so long as (i) there are any borrowings outstanding, (ii) the Replacement Term DIP Lenders have any Replacement Term DIP Indebtedness outstanding under the Replacement Term DIP Credit Documents, or (iii) the Debtors have any outstanding Obligations under the Replacement Term DIP Facility, the Prepetition Second Priority Lenders are prohibited from exercising any remedies with respect to the Prepetition Second Priority Collateral or Replacement Term DIP Collateral.

13.     Carve-Out.   The Replacement Term DIP Liens and the Superpriority Claim shall be subject to (i) (x) professional fees and expenses of attorneys, investment banking and other turnaround professionals of the Debtors and the official committee of unsecured creditors in the Chapter 11 Cases, and (y) expenses of the members of the official committee of unsecured creditors in the Chapter 11 Cases, in each case, paid (irrespective of when incurred or accrued) by Borrower, as and when allowed by the Bankruptcy Court on a final basis pursuant to Section 330 of the Bankruptcy Code, in an aggregate amount not to exceed $25,000,000 outstanding in the aggregate at any time (inclusive of any holdbacks required by the Bankruptcy Court), provided not more than $5,000,000 of the $25,000,000 may be incurred during any Carve-Out Expense Reduction Period (the "Professional Expense Cap"); provided, however, that (A) during any Carve-Out Expenses Reduction Period, any payments actually made in respect of the Carve-Out shall reduce the Professional Expense Cap on a dollar-for-dollar basis, and provided further, that to the extent the Professional Expense Cap is reduced by any such payments during a Carve-Out Expense Reduction Period, but the applicable Event of Default or default under the Interim Order or this Final Order is cured (to the extent such cure is permitted

under the Replacement Term DIP Credit Agreement) or waived, then effective as of the effectiveness of such cure or waiver, the amount of the Professional Expense Cap shall be increased by an amount equal to the amount by which had it had been reduced by such payments during the applicable Carve-Out Expense Reduction Period, and (B) for avoidance of doubt, so long as no Carve-Out Expense Reduction Period shall be continuing, the payment of the Carve-Out shall not reduce the Professional Expense Cap, and (ii) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or the Clerk of the Bankruptcy Court (the "Trustee Fees" collectively with the "Professional Expense Cap", the "Carve-Out"); provided that such fees and disbursements shall not include any fees or expenses arising after the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code.    Within ten days of professional fees coming due under the Professional Expense Cap, the Debtors shall pay the professional fees permitted pursuant to the Interim Compensation Order.[4]   Nothing contained herein shall (i) be construed to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any Bankruptcy Court approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, when applicable, any subsequent order of the Bankruptcy Court requiring that such payments be disgorged, and/or (ii) be construed as consent to the allowance of any fees and expenses referred to above and shall not affect any right of the Replacement Term DIP Lenders to object to the reasonableness of such amounts; provided further that the professional expenses referred to in clause (a) above shall not include, and proceeds of the Replacement Term DIP

---

[4]    "Interim Compensation Order" means that Order dated November 21, 2006, Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members [Docket No. 278].

RLF1-3248501-1
RLF1-3255412-1

Facility shall not be used for the payment or reimbursement of, any fees or disbursements of the Debtors or any committees (including, without limitation, the Creditors' Committee) or trustee appointed in the Chapter 11 Cases incurred in connection with the assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (1) commencing or prosecuting any action asserting claims pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against the Replacement Term DIP Lenders with respect to the validity and extent of the Obligations of the Debtors; (2) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Replacement Term DIP Liens in the Replacement Term DIP Collateral securing the Replacement Term DIP Indebtedness; or (3) preventing, hindering or delaying (whether, directly or indirectly) the Collateral Agent and/or the Replacement Term DIP Lenders in respect of the Replacement Term DIP Liens in the Replacement Term DIP Collateral.

14.    Books and Records.  Without limiting the rights of access afforded the Replacement Term DIP Lenders under the Replacement Term DIP Credit Documents, the Debtors shall permit the Replacement Term DIP Lenders and any authorized representatives designated by the Replacement Term DIP Lenders (including, without limitation, their auditors, appraisers and financial advisors) to visit and inspect any of the properties of any Debtor, including the Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss any Debtor's affairs, finances and business with such Debtor's officers and independent public accountants, at such times set forth in the Replacement Term DIP Credit Documents.  Without limiting the generality of the foregoing, the Debtors shall

promptly provide to the Replacement Term DIP Lenders or their respective designated representatives any information or data reasonably requested to monitor the Debtors' compliance with the provisions of the Replacement Term DIP Credit Documents and this Final Order and to perform appraisals or other valuation analyses of any property of any Debtor.

15.    Access to Collateral. Subject to the Replacement Intercreditor Agreement and the terms of the Replacement Term DIP Facility, and without limiting any other rights or remedies of the Collateral Agent and Replacement Term DIP Lenders contained in this Final Order or the Replacement Term DIP Credit Documents, or otherwise available at law or in equity, upon three (3) business days' written notice to the landlord of any leased premises that an Event of Default or a default by the Debtors of any of their obligations under the Replacement Term DIP Credit Documents or this Final Order has occurred and is continuing, the Collateral Agent or the Replacement Term DIP Lenders may, subject to any separate agreement by and between such landlord and the Replacement Term DIP Lenders, enter upon any leased premises of any of the Debtors for the purpose of exercising any remedy with respect to Replacement Term DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided, however, that the Collateral Agent or the Replacement Term DIP Lenders shall only pay rent and additional rent obligations of the Debtors that first arise after the Collateral Agent or Replacement Term DIP Lenders' written notice referenced above and that are payable during the period of such occupancy by the Collateral Agent or the Replacement Term DIP Lenders, calculated on a per diem basis. Nothing herein shall require the Debtors, the Collateral Agent, or Replacement Term DIP Lenders to assume any lease under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the Collateral Agent or the Replacement Term

DIP Lenders in this paragraph.

16.    No Waiver of Rights.    Neither the Collateral Agent nor the Replacement Term DIP Lenders waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has pursuant to any or all of the Replacement Term DIP Credit Documents, the Bankruptcy Code and/or other applicable law against any Debtor, any officer, director, employee, agent or other representative of any Debtor, and any other third party.  In addition, subject to the Replacement Intercreditor Agreement, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of the Collateral Agent and the Replacement Term DIP Lenders arising under this Final Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors under the Replacement Term DIP Credit Documents. Without limiting the generality of the foregoing, the Collateral Agent and/or the Replacement Term DIP Lenders may petition this Court for any such additional protection they may reasonably require with respect to the Replacement Term DIP Indebtedness or otherwise.  Except as set forth herein, entry of this Final Order shall not in any way constitute agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Final Order.

17.    Restriction on Use of Lenders' Funds.    Notwithstanding anything herein to the contrary, no Replacement Term DIP Collateral, proceeds thereof, Cash Collateral, or any portion of the Carve-Out may be used by any of the Debtors, the Creditors' Committee or any other person or entity to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the Replacement Term DIP Lenders, Existing Revolver DIP Lenders, or use Cash

10609623 3                                                      - 31 -

Collateral pursuant to section 363(c) without the Replacement Term DIP Lenders' prior written consent unless such loans or financial accommodations shall be used to indefeasibly pay in full in cash all Replacement Term DIP Indebtedness, other than contingent indemnity obligations not yet due, and/or (b) assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, the Replacement Term DIP Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or any so-called "lender liability" claims and causes of action (all actions described in this paragraph are collectively, the "Claims and Defenses").

18.     Sale/Conversion/Dismissal.  Notwithstanding anything to the contrary in the Final Revolver DIP Amendment Order:

(a)     Except as otherwise permitted by the Replacement Term DIP Facility, no sale, lease or other disposition of Replacement Term DIP Collateral (including Cash Collateral) outside the ordinary course of business (including any auction or other similar sales) or inconsistent with past practice may be done by the Debtors without the Collateral Agent's or Replacement Term DIP Lenders' written consent, and no such consent shall be implied, from any other action, inaction or acquiescence by the Replacement Term DIP Lenders.

(b)     No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to indefeasibly pay in full

10609623 3                                  - 32 -

in cash all Replacement Term DIP Indebtedness (other than contingent indemnity obligations not yet due and owing) and such Replacement Term DIP Indebtedness (other than contingent indemnity obligations not yet due and owing) shall have been indefeasibly paid in full in cash and completely satisfied and the Replacement Term DIP Lenders' obligations under the Replacement Term DIP Facility are terminated in accordance with the Replacement Term DIP Credit Documents as part of such action, or the Replacement Term DIP Lenders expressly consent in writing to any such transaction or the entry of such an order by the Court or such transaction is expressly permitted in the Replacement Term DIP Credit Documents.

(c)     No motion shall be filed by the Debtors for an order dismissing or converting these Chapter 11 Cases under section 1112 of the Bankruptcy Code, or appointing a Chapter 11 trustee or an examiner with expanded powers, unless and until the Replacement Term DIP Indebtedness, other than contingent indemnity obligations not yet due and owing, shall have been paid indefeasibly in full in cash and completely satisfied and the Replacement Term DIP Lenders' obligations under the Replacement Term DIP Facility are terminated in accordance with the Replacement Term DIP Credit Documents, or until the Collateral Agent and or the Replacement Term DIP Lenders shall have had a reasonable period of time to perfect all of their liens under applicable law prior to the entry thereof.  If an order dismissing, converting or superseding any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is entered at any time (i) the Replacement Term DIP Liens and Superpriority Claim granted hereunder and in the Replacement Term DIP Credit Documents shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Final Order, until all Replacement Term DIP Indebtedness shall have been indefeasibly paid in full in cash (other than contingent indemnity obligations not yet due and

RLF1-3248501-1
RLF1-3255412-1

owing) and the Replacement Term DIP Lenders' obligations under the Replacement Term DIP Facility shall have been terminated in accordance with the Replacement Term DIP Credit Documents, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, to the fullest extent provided by law, for purposes of enforcing this Final Order, the Existing DIP Order, the Replacement Term DIP Liens, the Superpriority Claims and the Replacement Intercreditor Agreement. Notwithstanding any such dismissal, conversion, or supercission, all of the terms and conditions of this Final Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

19.     Injunction. Unless otherwise ordered by the Court, and except as provided in the Replacement Term DIP Credit Documents and/or this Final Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases, (a) granting liens in the Replacement Term DIP Collateral or any portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, pari passu with, or junior to the liens granted to the Collateral Agent for the benefit of the Replacement Term DIP Lenders; provided, however, that the foregoing limitation shall not apply to the Adequate Protection Liens previously granted to the Prepetition Second Priority Lenders, and/or (b) applying to the Bankruptcy Court for an order authorizing the use of any Cash Collateral or other cash comprising Replacement Term DIP Collateral, except in each case in accordance with the Replacement Term DIP Credit Documents, this Final Order and in accordance with the Existing DIP Order; provided, however, that if the Replacement Term DIP Lenders provide five (5) days' written notice of their intent to terminate the Replacement Term DIP Facility, the Debtors may seek to impose liens and gain the nonconsensual use of Cash Collateral in connection with replacement financing, but solely if the Replacement Term DIP Indebtedness will be

RLF1-3248501-1
RLF1-3255112-1

indefeasibly paid in full in cash with the proceeds of such replacement financing, excluding contingent indemnity obligations not yet due and owing.

20.    No Liability to Third Parties.   In making decisions to advance any Loans or other extensions of credit to any Debtor, permitting the use of Cash Collateral or Replacement Term DIP Collateral, administering any Loans or other extensions of credit, or in taking any other actions reasonably related to this Final Order or the Replacement Term DIP Credit Documents (including, without limitation, the exercise of their approval rights with respect to any Closing Budget), the Agents and the Replacement Term DIP Lenders (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to the Debtors, their creditors or their estates.   The Agents' and Replacement Term DIP Lenders' relationships with any Debtor shall not constitute or be deemed to constitute a joint venture or partnership with any Debtor.

21.    No Marshaling.   Neither the Collateral Agent nor any of the Replacement Term DIP Lenders shall not be subject to the doctrine of "marshaling" and shall not be under any obligation to marshal any assets in favor of the Debtor or any other party or against or in payment of any or all of the Replacement Term DIP Indebtedness.

22.    No Subrogation.   In no event shall any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the Replacement Term DIP Indebtedness be subrogated, in whole or in part, to any rights, remedies, claims, privileges,

RLF1-3248501-1
RLF1-3255412-1

liens or security interests granted in favor of, or conferred upon, the Collateral Agent and the Replacement Term DIP Lenders, by the terms of the Replacement Term DIP Credit Documents or this Final Order, until such time as all of the Replacement Term DIP Indebtedness is indefeasibly paid in full in cash, other than contingent obligations not then due and owing.

23.    No Requirement to Accept Title to Collateral.    Neither the Collateral Agent nor any of the Replacement Term DIP Lenders shall be obligated to accept title to any portion of the Replacement Term DIP Collateral in payment of any of the Replacement Term DIP Indebtedness, in lieu of payment in cash or cash equivalents, nor shall the Replacement Term DIP Lenders be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the Replacement Term DIP Lenders.

24.    Successors and Assigns.    The Replacement Term DIP Credit Documents and the provisions of this Final Order shall be binding upon the Collateral Agent, the Replacement Term DIP Lenders, the Debtors, and their respective successors and assigns, and shall inure to the benefit of the Collateral Agent, the Replacement Term DIP Lenders, the Debtors, and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.

25.    No Third Party Beneficiary.    Except as provided with respect to any of the Prepetition Second Priority Agents, the Prepetition Second Priority Lenders, Existing Revolver DIP Agents, Existing Revolver DIP Lenders, other Released Parties, and their respective delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

26.    Binding Nature of Agreement.    Each of the Replacement Term DIP Credit

RLF1-3248501-1
RLF1-3255412-1

Documents to which (a) the Debtors are and will become a party shall constitute legal, valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms and (b) any present or future Replacement Term DIP Lender is or becomes a party shall constitute legal, valid and binding obligations of such Replacement Term DIP Lenders, enforceable against such Replacement Term DIP Lenders in accordance with their terms, including, without limitation, Replacement Term DIP Facility.    The Replacement Term DIP Credit Documents have been or will be properly executed and delivered to the Replacement Term DIP Lenders by the Debtors. The rights, remedies, powers, privileges, liens and priorities of the Replacement Term DIP Lenders provided for in this Final Order and in any other Replacement Term DIP Credit Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in these cases or in any subsequent case under the Bankruptcy Code, unless and until the Replacement Term DIP Indebtedness has first been indefeasibly paid in full in cash and completely satisfied and the Replacement Term DIP Lenders' obligations under the Replacement Term DIP Facility terminated in accordance with the Replacement Term DIP Facility.

27.    Sections 363(m) and 364(e): Effect of Modification or Appeal. Based on the findings set forth in this Final Order, in consideration for the Replacement Term DIP Facility and the use of the Cash Collateral, the Replacement Term DIP Lenders are entitled to, and hereby are granted, the full rights, privileges and protections of sections 363(m) and 364(e) of the Bankruptcy Code with respect to the Replacement Term DIP Liens and Superpriority Claim authorized by this Final Order in the event that this Final Order or any authorization contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.    Any

10609623 3

- 37 -

subsequent stay, modification, reversal, amendment or vacation of this Final Order shall not affect the validity, priority, perfection and enforceability of (a) any Obligation of the Debtors to the Replacement Term DIP Lenders incurred pursuant to this Final Order or the Replacement Term DIP Facility prior to the date of receipt by the Replacement Term DIP Lenders of written notice of the effective date of action to stay, modify, reverse amend or vacate this Final Order or (b) any Replacement Term DIP Liens or Superpriority Claim granted to the Collateral Agent for the benefit of Replacement Term DIP Lenders pursuant to this Final Order. Notwithstanding any such stay, modification, reversal, amendment or vacation, (x) all Obligations and other financial accommodations made pursuant to this Final Order, all Replacement Term DIP Indebtedness, and all use of Cash Collateral by the Debtors pursuant hereto incurred or occurring prior to the date of receipt of written notice of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions hereof, and (y) subject to the Replacement Intercreditor Agreement, the Collateral Agent and the Replacement Term DIP Lenders shall be entitled to all the rights, privileges, remedies and benefits granted herein, and in the Replacement Term DIP Credit Documents, including without limitation, the Replacement Term DIP Liens and Superpriority Claim with respect to such Obligations, accommodation or indebtedness.

28.    Waiver of Discharge.  The obligations of the Debtors hereunder in respect of the Replacement Term DIP Indebtedness shall not be discharged or effected or modified in any manner or method by the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having hereby waived such discharge.

29.    Survival.  Unless and until the Debtors' Obligations, other than contingent

indemnity obligations not yet due and owing, under the Replacement Term DIP Credit Documents have been indefeasibly paid in full in cash, (a) the protections afforded to the Replacement Term DIP Lenders under this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) confirming a plan of reorganization; (ii) dismissing any of these cases or (iii) converting any of these cases into a case under chapter 7 of the Bankruptcy Code, (b) the Replacement Term DIP Liens on the Replacement Term DIP Collateral and the Superpriority Claim shall continue in these proceedings, in any Successor Case, or after any such dismissal. Subject to the terms of the Replacement Intercreditor Agreement, the Replacement Term DIP Liens and Superpriority Claim shall maintain their validity and priority as provided by this Final Order and not be modified, altered or impaired in any way by (x) any other financing, extension of credit, or incurrence of indebtedness, (y) any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or (z) dismissal of any of these Chapter 11 Cases, by any act or omission until the Debtors' Obligations have been indefeasibly paid in full in cash.

30.    Conflicts. To the extent of any conflict between or among (a) the express terms or provisions of any of the Replacement Term DIP Credit Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Replacement Term DIP Facility or the Replacement Term DIP Credit Documents, the terms and provisions of this Replacement Intercreditor Agreement shall govern.

31.    Fee Invoices. None of the Replacement Term DIP Facility Agents', the Postpetition Revolving Loan Agents' (as defined in the Existing DIP Order), the Replacement

RLF1-3248501-1
RLF1-3255412-1

Term DIP Lenders', or the Postpetition Revolving Loan Lenders' (as defined in the Existing DIP Order) fees and disbursements, including but not limited to their attorneys', financial advisers', accountants' and/or other professionals' fees and disbursements shall be subject to prior approval of the Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee statement or application with this Court with respect thereto.    Notwithstanding the foregoing, the Debtors shall, promptly after payment upon presentation of invoices for fees and disbursements of the Replacement Term DIP Facility Agents' and the Replacement Term DIP Lenders' (each as defined herein) and/or their attorneys', financial advisers', accountants' and/or other professionals' fees and disbursements, provide copies of such invoices to counsel for the U.S. Trustee, Creditors' Committee and Second Lien Group.

32.    <u>Final Order Effective Immediately.</u>    This Final Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Bankruptcy Court is hereby directed to enter this Final Order on the Court's docket in these Chapter 11 Cases.

Dated: Wilmington, Delaware
      February 21, 2008

UNITED STATES BANKRUPTCY JUDGE

RLF1-3248501-1
RLF1-3255412-1