## THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| DURA AUTOMOTIVE SYSTEMS, INC., *et al.,*[1] | Case No. 06-11202 (KJC) |
| | Jointly Administered |
| Debtors. | |

## OBJECTION TO CONFIRMATION OF DEBTORS' REVISED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, OR ALTERNATIVELY, MOTION FOR ORDER DIRECTING PAYMENT OF CURE CLAIM OF JOHNSON ELECTRIC NORTH AMERICA, INC.

Johnson Electric North America, Inc. ("Johnson"), by and through its undersigned counsel, objects, pursuant to sections 365(b), 1123(b), 1123(d) and 1129(a) of Title 11 of the United States Code (the "Bankruptcy Code"), to the Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as amended and filed in the Bankruptcy Court on March 31, 2008 (the "Plan") because the Plan impermissibly attempts to assume a requirements contract to which Johnson is a party (the "Contract"), without curing the existing default. Alternatively, if this Court finds that confirmation of the Plan is appropriate, thereby permitting the Debtors to assume the Contract, in accordance with the mandate of section 365(b), Johnson moves for the allowance and payment of its cure claim. In connection therewith, Johnson respectfully represents as follows:

---

[1]    The Debtors in these proceedings are: Adwest Electronics Inc., Atwood Automotive, Inc., Atwood Mobile Products, Inc., Automotive Aviation Partners, L.L.C., Creation Group Holdings, Inc., Creation Group Transportation, Inc., Creation Group, Inc., Creation Windows, Inc., Creation Windows, LLC, Dura Aircraft Operating Company, L.L.C., Dura Automotive Canada ULC, Dura Automotive Systems (Canada), Ltd., Dura Automotive Systems Cable Operations, Inc., Dura Automotive Systems of Indiana, Inc., Dura Automotive Systems, Inc., Dura Brake Systems, L.L.C., Dura Cables North L.L.C., Dura Cables South L.L.C., Dura Canada LP, Dura Fremont L.L.C., Dura Gladwin L.L.C., Dura Global Technologies, Inc., Dura G.P., Dura Holdings Canada LP, Dura Holdings ULC, Dura Mancelona L.L.C., Dura Ontario, Inc., Dura Operating Canada LP, Dura Operating Corp., Dura Services L.L.C., Dura Shifter L.L.C., Dura Spicebright, Inc., Kemberly, Inc., Kemberly, LLC, Mark I Molded Plastics of Tennessee, Inc., Patent Licensing Clearinghouse L.L.C., Spec-Temp, Inc., Trident Automotive Canada Co., Trident Automotive, L.L.C., Trident Automotive, L.P., Trident Automotive Limited, and Universal Tool & Stamping Company, Inc.

{00867272;v1}

## Introduction

1.     The Plan (along with the Revised Plan Supplement) (as defined below) provided, *inter alia*, that the Debtors intend to assume a requirements contract with Johnson (the "Contract"). The Plan, however, does not provide for the cure of the existing default. Such failure to cure violates sections 365(b), 1123(b) and 1123(d) of the Bankruptcy Code, rendering the Plan unconfirmable under section 1129(a) of the Bankruptcy Code.

2.     Dura's reasoning for refusing to acknowledge its obligation to pay Johnson the cure amount is because it believes it has a right of set-off for Johnson's alleged breaches of contract and warranty. Dura, however, has no basis for withholding payment of the cure amount on such grounds. Accordingly, Johnson files this objection (the "Objection") to confirmation of the Plan.

## Jurisdiction, Venue and Statutory Basis

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 365(b), 1123(b), 1123(d) and 1129(a) of the Bankruptcy Code.

## Background

4.     Pursuant to the Contract, Johnson supplies electric motors to Dura which Dura uses in manufacturing autoparts. (Affidavit of Doug Eberle, sworn to on January 28, 2008 ("Eberle Aff.") at ¶ 2). On August 30, 3006, Dura and Autopartes Excel De Mexico, S.A. De C.V. ("Autopartes") commenced an action against Johnson entitled *Dura Automotive Systems, Inc., and Autopartes Excel De Mexico, S.A. De C.V. v. Johnson Electric North America, Inc.* (the "Lawsuit") in Oakland County Circuit Court, State of Michigan (the "Michigan State Court").

2

The complaint alleged, *inter alia*, certain state law breach of contract and warranty claims. (A copy of the complaint is attached to the Affidavit of Stephen N. Weiss, sworn to on February 13, 2008 ("Weiss Aff.") as Exhibit A).

5.    In light of the claims alleged in the Lawsuit, Dura advised Johnson that it would withhold, as a set-off, payment for goods previously shipped and delivered. Johnson informed Dura that Dura did not have any such right of set-off, and that if Dura did not cure the default Johnson would stop future deliveries.

6.    On September 6, 2006, Dura and Autopartes filed Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO Motion") before the Michigan State Court. In the TRO Motion, Dura and Autopartes sought, *inter alia,* an order to compel Johnson to perform under the Contract despite the existing default, and further, to allow Dura to continue to withhold payment as a set-off for the amount it claimed it was due for the alleged breach of contract and warranty claims. (Weiss Aff., Ex. B)

7.    On September 11, 2006, Johnson removed the Lawsuit to the United States District Court for the Eastern District of Michigan (the "Michigan District Court").

8.    On September 12, 2006, at the hearing on the TRO Motion, the Michigan District Court denied Dura's TRO Motion, holding unequivocally that the Contract did not give Dura the right to set-off for a disputed claim. The District Court therefore refused to order Johnson to continue to ship and deliver to Dura if Dura did not cure its default. (Weiss Aff., Ex. C). Specifically, the Michigan District Court, in construing the contract between Dura and Johnson, concluded that Dura did not have the contractual right to set-off of a disputed claim: "That [right to set-off a disputed claim] is a very far reaching and significant provision that is absent from this contract." September 12, 2006 Transcript, at p. 34. *Id.* On September 15, 2006, the Michigan District Court entered an Order confirming its decision. *Id.* Thus, unless Dura cured

3

the default, Johnson was not obligated to honor any future sale and delivery obligations under the Contract. *Id.* Since it needed the continued supply of Johnson motors, Dura agreed to forgo set-off and make full payment of the arrears.

9.      The Michigan District Court further added that if Dura and Autopartes wanted a hearing on a preliminary injunction, it should schedule a hearing date with the Court's clerk. September 12, 2006 Transcript, at p. 36. *Id.* Dura and Autopartes never scheduled such a hearing.

10.      On October 30, 2006 (the "Petition Date"), Dura filed its petition for relief in this Court under Chapter 11 of the Bankruptcy Code. As of the Petition Date, Dura is in arrears in the amount of $2,078,859.86 (the "Cure Amount") for goods previously shipped and delivered pursuant to the Contract. (Eberle Aff., ¶ 3). Since the Petition Date, Dura has continued to place orders for the motors and continues to demand Johnson's performance under the Agreement. Johnson continues to fulfill all its obligations under the Contract. (Eberle Aff., ¶ 4).

11.      The Lawsuit was referred to the United States Bankruptcy Court for the State of Michigan (Eastern Division) (the "Michigan Bankruptcy Court") pursuant to the Michigan District Court's standing order of referral. On April 23, 2007, the Michigan District Court denied Johnson's motion to withdraw the reference and ordered that the Lawsuit be referred to the Michigan Bankruptcy Court. The Lawsuit is in its early discovery stages.

12.      The Debtors are debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code and no trustee has been appointed in these cases.

13.      On August 22, 2007, the Debtors filed their Joint Plan of Reorganization (the "Original Plan"). On September 28, 2007, the Debtors filed the Original Plan, as amended. (Weiss Aff., Ex. D).

4

14.    On October 12, 2007, the Debtors filed their original plan supplement (the "Original Plan Supplement"). Exhibit 5 of the Original Plan Supplement listed all the executory contracts and unexpired leases the Debtors intended to assume, as well as the respective estimated cure costs. The Contract was not listed on Exhibit 5 of the Original Plan Supplement. (Weiss Aff., Ex. E).

15.    On November 30, 2007, the Debtors filed their Amended Plan Supplement. Exhibit 6 of the Amended Plan Supplement listed all of the executory contracts and unexpired leases the Debtors intended to assume as well as the estimated respective cure costs. The Contract was listed on Exhibit 6 of the Amended Plan Supplement as a contract to be assumed, however, the Debtors did not provide for payment of the Cure Amount. (Weiss Aff., Ex. F).

16.    On December 7, 2007, the Debtors filed their Second Amended Plan Supplement. Exhibit 6 of the Second Amended Plan Supplement listed all of the executory contracts and unexpired leases the Debtors intended to assume as well as the estimated respective cure costs. The Contract was again listed on Exhibit 6 of the Second Amended Plan Supplement as a contract to be assumed, however, the Debtors still did not provide for payment of the Cure Amount. (Weiss Aff., Ex. G).

17.    On March 7, 2008, the Debtors filed the first Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

18.    On March 13, 2008, the Debtors filed a second Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

19.    On March 31, 2008, the Debtors filed the Plan which was the third Debtors' Revised Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. (A copy of the Plan is attached to the Affidavit of Mark N. Parry, sworn to on May 1, 2008 ("Parry Aff.") as Exhibit A.)

{00867272;v1}

20.    On April 28, 2008, the Debtors filed the Plan Supplement In Support Of [The Plan] (the "Revised Plan Supplement").   Exhibit 5 of the Revised Plan Supplement listed all of the executory contracts and unexpired leases the Debtors intended to assume as well as the estimated respective cure costs.   The Contract was listed on Exhibit 5 of the Revised Plan Supplement as a contract to be assumed, however, the Debtors again did not provide for payment of the Cure Amount. (Parry Aff., Exh. B).

### Discussion

I.     THE PLAN CANNOT BE CONFIRMED BECAUSE IT DOES NOT COMPLY WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE

21.    The Plan sets forth the treatment of executory contracts.   Article V of the Plan states that all executory contracts that have not expired by their own terms, which the Debtors have not assumed or rejected during the pendency of the Chapter 11 cases, which are not listed in the Revised Plan Supplement as to be assumed, and are not the subject of a pending motion to be assumed, are deemed rejected as of immediately prior to the Petition Date[2].   In Exhibit 5 of the Revised Plan Supplement, Dura indicates that it intends to assume the Contract. (Parry Aff., Ex. B).  Dura further states that no cure amount is payable as of the Effective Date of the Plan. *Id.*  It is undisputed, however, that the unpaid prepetition amount due and owing under the Contract is $2,078,859.86. (Eberle Aff., ¶ 3).

22.    Section 1129(a)(1) of the Bankruptcy Code provides: "The court shall confirm a plan *only if* . . . [t]he plan complies with the applicable provisions of this title.  11 U.S.C. § 1129(a)(1) (emphasis added).  Section 365(b)(1) of the Bankruptcy Code provides, in pertinent part:

---

[2]    Capitalized terms not defined herein (including each exhibit hereto) shall have the meanings assigned to them in the Plan.

{00867272;v1}

> "If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee  . . .  cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ."

11 U.S.C. § 365(b)(1).  Despite the unambiguous language of the Bankruptcy Code, the Debtors simply refuse to provide for the payment of the Cure Amount.  Accordingly, absent payment of the Cure Amount, the Debtors may not assume the Contract.  *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3rd Cir. 2000) ("If there has been a default in an executory contract or unexpired lease, the trustee may not assume it until the trustee . . . cures or provides adequate assurance that it will promptly cure the default").  Thus, since the Debtors have failed to comply with section 365(b), the Plan cannot be confirmed.  11 U.S.C. § 1129(a)(1).

23.     Section 1123(b) of the Bankruptcy Code confirms that assumption of an executory contract pursuant to a plan of reorganization is subject to requirements of Section 365(b).  Section 1123(b)(2) provides in pertinent part: ". . . a plan may . . . *subject to section 365 of this title*, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."   11 U.S.C. § 1123(b)(2) (emphasis added).  Therefore, by attempting to assume the Contract without paying the Cure Amount, the Debtors not only violate section 365 of the Bankruptcy Code but also section 1123(b).  Accordingly, the Plan cannot be confirmed.  11 U.S.C. § 1129(a)(1).

24.     The Plan is also not confirmable under section 1129(a)(1) of the Bankruptcy Code because it does not comply with section 1123(d) of the Bankruptcy Code.  Section 1123(d) provides in pertinent part: " . . . if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  11 U.S.C. § 1123(d).  Again, it is undisputed that the unpaid prepetition amount due and owing under the Contract is $2,078,859.86.  (Eberle Aff., ¶ 3).

7

Neither the Contract nor any applicable nonbankruptcy law excuses payment of the Cure Amount. Accordingly, the Plan does not comply with section 1123(d) of the Bankruptcy Code, and thus again, fails to comply with section 1129(a)(1).

25.     While the Plan provides that cure amounts for assumed executory contracts such as the Contract will be paid on the Effective Date or as soon as practicable thereafter, the Revised Plan Supplement attempts to create a procedure for addressing instances where there is a dispute regarding the Cure Amount. Such procedure, however, has no application here because there is no dispute regarding the Cure Amount. The Debtors are simply trying to bootstrap a non-existent dispute over the Cure Amount into a right of set-off, which was denied by the Michigan District Court.

II.     DURA HAS NO BASIS TO WITHHOLD PAYMENT OF THE CURE AMOUNT

26.     Dura has no basis to withhold payment of the Cure Amount on the Effective Date. Dura cannot argue that it is entitled to set-off against the Cure Amount based on its alleged claims against Johnson for breach of warranty and breach of contract. To hold otherwise would allow Dura to re-litigate its alleged right of set-off which the Michigan District Court already denied, both as a matter of law and a matter contractual construction.    (Weiss Aff., Ex. C). Thus, Dura is collaterally estopped from re-asserting it.

27.     To preclude the relitigation of an issue under collateral estoppel, four elements must typically be satisfied: "(1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Docteroff*, 133 F.3d 210, 214 (3rd Cir. 1997). See also *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992) (listing the four elements of collateral estoppel);

{00867272;v1}

*In re Ross*, 602 F.2d 604, 608 (3d Cir. 1979) (quoting *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir. 1976)); *In re McMillan*, 579 F.2d at 291-92 (quoting *Haize*, 536 F.2d at 579).

28.    Applying those factors to the instant case supports the conclusion that the Debtors are collaterally estopped from asserting a right of set-off as a basis for not paying the Cure Amount.  Regarding the first element that the issues be the same because the Cure Amount is undisputed, Dura's attempt to assert a right of set-off is the only basis it has for failing to cure the existing default.  As described above, however, that exact issue was decided by the Michigan District Court which unequivocally held that no such right existed in the Contract.

29.    Second, the issue of Dura's purported right of set-off was clearly litigated.  It was briefed and argued, and the Court explained on record why a temporary restraining order was inappropriate and how she arrived at the conclusion that there was no contractual right of set-off. September 12, 2006 Transcript, at pp. 32-36 (Weiss Aff. Ex. D).

30.    Third, after the District Court denied the TRO, Dura abandoned its preliminary judgment application, thereby finalizing, among other things, the fully litigated conclusions of law embodied in that Court's decision.  *See, e.g., Hawksbill Sea Turtle v. Federal Emergency Management Agency*, 126 F.3d 461, 474 n. 11 (3rd Cir. 1997) (holding that while generally findings made in the course of a preliminary injunction cannot support application of issue preclusion "findings, made in granting or denying preliminary injunctions can have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again") (citations omitted).  This is particularly true when the party seeking to avoid the preclusive effect of a preliminary injunction ruling, as is Dura, "was the party which chose the original litigation forum, instituted the preliminary relief application, and ... had a full and fair opportunity to

9

make its case." See *In re Franklin Indus. Complex, Inc.*, 377 B.R. 32, 45 (Bankr. N.D.N.Y. 2007).

31.    The Third Circuit in *Hawksbill* further held that whether the findings are "sufficiently firm" depends on "whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed." *Hawksbill*, 126 F.3d at 474 n. 11 (citation omitted).  In this case, as explained above, the parties were fully heard on the issue of set-off, the Michigan District Court entered an Order and provided a reasoned opinion on the record supporting its determination that there is no contractual right of set-off, and Dura and Autopartes had the opportunity to be heard on the preliminary injunction portion of the TRO Motion and chose to abandon that request. Accordingly, the Michigan District Court's decision that there was no contractual right of set-off has preclusive effect.  See also *First Jersey National Bank v. Brown (In re Brown)*, 951 F.2d 564, 569-70 (3rd Cir. 1991) (determining that a state court summary judgment order has preclusive effect in bankruptcy court, the Third Circuit held, "Finality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again") (citations omitted).

32.    While the determination made by the Third Circuit in *Hawksbill* may have been *in dictum*, it is clearly the law of the Third Circuit.  *Pennsylvania Public Interest Research Group, Inc. v. P.H. Glatfeller Co.*, 128 F.Supp.2d 747, 756-57 (M.D. Pa. 2001).  Moreover, other courts share the rationale.  For example in *A.J. Canfield Co. v. Vess Beverages, Inc.*, 859 F.2d 36, 38 (7th Cir. 1998), the Seventh Circuit held "that a decision granting or denying a  preliminary injunction 'will be given preclusive effect if it is necessarily based upon a determination that constitutes an insuperable obstacle to the plaintiff's success on the merits'" (citation omitted). See also *Heinz v. Frank Lloyd Wright Foundation*, 1992 U.S. Dist. LEXIS 10688, *39-41 (N.D.

Ill. 1992) (prior court's decision that one party had no likelihood of success on the merits of its right of publicity claim was "grounded in the legal conclusion that Wisconsin law recognizes a right of publicity in only living persons", and accordingly constituted an "insuperable obstacle to the [party's] right of publicity claim, which is still barred by Wisconsin law."); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995 (7th Cir. 1979) (appellate court's reversal of a preliminary injunction on the ground that the subject trademark was generic was an insuperable obstacle to subsequent enforcement of that trademark). The Michigan District Court's decision that Dura and Autopartes did not have a contractual right of set-off presents an insuperable obstacle to the Debtors' anticipated claim that a right of set-off of a disputed claim allows it to assume the Contract without paying the Cure Amount.

33.    Furthermore, collateral estoppel is further justified where a prior decision denying a preliminary injunction is based on a court's contract interpretation, a question of law. For example, in *AM General Corp. v. DaimlerChrysler Corp.*, 246 F. Supp. 2d 1030, 1033-36 (N.D. Ind. 2003), a district court accorded preclusive effect, albeit under the law of the case doctrine, to a contract interpretation forming the basis for a court's decision to deny a motion for a preliminary injunction.    There, General Motors ("GM") sought summary judgment on DaimlerChrysler's ("DC") trademark infringement counterclaims based on GM's use of a type of grille in its H2 vehicle. *Id*. at 1031-32. Earlier in the litigation, the court denied DC's motion for a preliminary injunction, based on its determination that DC contractually transferred all relevant rights to GM. *Id*. at 1032. The court initially noted that it was appropriate to grant summary judgment to GM on the basis of a contract interpretation made as part of a preliminary injunction decision, because it "applies the same interpretive standard at the summary judgment stage as it does at the preliminary injunction stage." *Id*. at 1033. The Court further held that granting the earlier finding preclusive effect was appropriate, in part because the court's "*contract*

11

*interpretation would not benefit from the introduction of any more evidence [because] the language of the contract is clear and unambiguous, [rendering] extrinsic evidence ... irrelevant.*" *Id.* Similarly, the Michigan District Court's conclusion that Dura clearly has no contractual right of set-off required the same standard of contract interpretation that would be applied if this Court were to entertain Dura's set off argument in the context of plan confirmation. As much as Dura would like a different result in this Court, the language of the contract in issue did not and will not change.

34.    Finally, regarding the fourth element of collateral estoppel, the Michigan District Court's contract interpretation was essential to its judgment. The TRO Motion sought enforcement of a purported set-off right. The Michigan District Court held, after a thorough analysis, that no such right existed. Such analysis had to be conducted in order for the Michigan District Court to arrive at its decision on the TRO Motion.

35.    Accordingly (i) because the Debtors seek to assert the same contractual right of set-off that the Michigan District Court denied; (ii) because the issue of Dura's purported contractual right of set-off was actually litigated; (iii) because the Michigan District Court's findings were "sufficiently firm" such that there is no compelling reason to relitigate them; and (iv) because the Michigan District Court's holding was essential to the prior judgment, the Debtors are collaterally estopped from arguing that they do not have to pay the Cure Amount because of a contractual right of set-off.

III.    ALTERNATIVELY, JOHNSON'S CURE CLAIM SHOULD BE ALLOWED AND THE DEBTORS SHOULD BE ORDERED TO PAY THE CURE AMOUNT ON THE EFFECTIVE DATE OF THE PLAN

36.    As stated, there is no dispute that the unpaid pre-petition amount due and owing under the Contract is $2,078,859.86 (Eberle Aff., ¶ 3). There can also be no dispute that an executory contract cannot be assumed, whether pursuant to a plan of reorganization or otherwise,

{00867272;v1}

unless the Debtor cures any existing defaults or provides adequate assurance that it will be able to promptly cure such defaults. 11 U.S.C. § 365(b)(1). Accordingly, if this Court confirms the Plan, it should allow Johnson's cure claim of $2,078,859.86, and direct the Debtors to pay the Cure Amount by the Effective Date of the Plan or provide adequate assurance of prompt payment of the Cure Amount.

<strong><u>Conclusion</u></strong>

For the foregoing reasons and pursuant to sections 365(b)(1), 1123(b), 1123(d) and 1129(a) of the Bankruptcy Code, Johnson respectfully requests that the Court enter an order denying confirmation of the Plan unless and until Dura agrees to pay the Cure Amount of $2,078,859.86 on the Effective Date, or alternatively allow Johnson's cure claim of $2,078,859.86 and direct either payment by the Effective Date of the Plan or the provision of adequate assurance of prompt payment, and grant Johnson such other and further relief as is just and proper.

Dated: May 2, 2008

BAYARD, P.A.

By: _____
Charlene D. Davis (No. 2336)
Mary E. Augustine (No. 4477)
222 Delaware Avenue
Wilmington, Delaware 19899
Tel: (302) 655-5000

and

{00867272;v1}

MOSES & SINGER LLP
Stephen N. Weiss (SW 3662)
Mark N. Parry (MP 0827)
Declan M. Butvick (DB 8289)
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Tel:  (212) 554-7800

{00867272;v1}