# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, INC., et al.,[1] | ) | Case No. 06-11202 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objection Deadline: September 15, 2008 at 4:00 p.m.** |
| | | **Hearing Date: November 25, 2008 at 1:30 p.m.** |

## FINAL APPLICATION OF ALIXPARTNERS, LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO THE DEBTORS AND DEBTORS-IN-POSSESSION FOR THE PERIOD FROM NOVEMBER 7, 2006 THROUGH MAY 12, 2008 AND FOR PAYMENT OF A RESTRUCTURING FEE

Name of Applicant:      <u>AlixPartners, LLP .</u>

Authorized to Provide Professional Services to:      <u>the above-captioned debtors and debtors-in-possession</u>

Date of Retention:      <u>December 21, 2006, *nunc pro tunc* to November 7, 2006</u>

Final period for which compensation
and reimbursement are sought:      <u>November 7, 2006 through May 12, 2008</u>

Amount of Final Compensation sought
as actual, reasonable, and necessary      <u>$29,757,826.86</u>

Amount of Final Expense Reimbursement
sought as actual, reasonable, and necessary      <u>$1,370,003.04</u>

This is a(n): _____ Monthly _____ Interim   \_X\_ Final Application

The fees set forth are 100% of the fees actually billed to the Debtors for which AlixPartners, LLP ("AlixPartners") seeks court approval. AlixPartners monthly fee applications and interim fee applications were paid pursuant to the Administrative Order entered in this case.

---

[1] The "Debtors" comprise the entities set forth in the Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of the Debtors' Chapter 11 Cases, entered on October 30, 2006 [Docket No. 68].

AlixPartners respectfully requests that this Court enter an order awarding AlixPartners a final allowance of compensation and expenses in the amount of $31,127,829.90 as set forth below. AlixPartners further respectfully requests the Debtors pay AlixPartners the net unpaid amount of $2,920,719.35 from the assets of their estates and that the Court provide such other and further relief as may be just and equitable. In addition, AlixPartners requests payment of the Success Fee agreed to by the Debtors and AlixPartners on November 6, 2006.

| | |
|---|---|
| Professional Fees Requested[2] | $27,657,826.86 |
| Success Fee | 2,100,000.00 |
| Out of Pocket Expenses[2] | 1,370,003.04 |
| Total Fees and Expenses Requested | $31,127,829.90 |
| Less Amounts Received | 28,207,110.55 |
| Net Unpaid | $ 2,920,719.35 |

Prior Monthly Applications Filed:

| Dated Filed and Docket No. | Period Covered | Total Amount Requested | | Total Amount Approved to Date via Certification of No Objection | | Holdback Fees Requested |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees (@ 80%) | Expenses (@ 100%) | Fees (@20%) |
| 12/22/06 [Docket No. 437] | 11/07/06 through 11/30/06 | $1,260,260.25 | $35,899.67 | $1,008,208.20 | $35,899.67 | $252,052.05 |
| 01/29/07 [Docket No. 620] | 12/01/06 through 12/31/06 | $2,137,173.50 | $149,773.90 | $1,709,738.80 | $149,773.90 | $427,434.70 |
| 02/27/07 [Docket No. 771] | 01/01/07 through 01/31/07 | $3,086,488.74 | $119,780.82 | $2,469,190.99 | $119,780.82 | $617,297.75 |
| 03/28/07 [Docket No. 898] | 02/01/07 through 02/28/07 | $3,028,236.75 | $175,784.96 | $2,422,589.40 | $175,784.96 | $605,647.35 |
| 4/23/07 [Docket No. 1019] | 03/01/07 through 03/31/07 | $3,104,726.37 | $202,713.05 | $2,483,781.10 | $202,713.05 | $620,945.27 |
| 05/15/07 [Docket No. 1135] | 04/01/07 through 04/30/07 | $2,208,302.00 | $150,306.13 | $1,766,641.60 | $150,306.13 | $441,660.40 |

2 Professional fees and out of pocket expenses are net of reductions identified by the Fee Auditor and voluntary reductions in excess of $200,000 by AlixPartners.

RLF1-3294827-1

| Dated Filed and Docket No. | Period Covered | Total Amount Requested | | Total Amount Approved to Date via Certification of No Objection | | Holdback Fees Requested |
| | | Fees | Expenses | Fees (@ 80%) | Expenses (@ 100%) | Fees (@20%) |
| --- | --- | --- | --- | --- | --- | --- |
| 06/25/07 [Docket No. 1327] | 05/01/07 through 05/31/07 | $2,107,440.25 | $127,080.47 | $1,685,952.20 | $127,080.47 | $421,488.05 |
| 07/27/07 [Docket No. 1512] | 06/01/07 through 06/30/07 | $1,665,647.25 | $108,735.94 | $1,332,517.80 | $108,735.94 | $333,129.45 |
| 09/04/07 [Docket No. 1752] | 07/01/07 through 07/31/07 | $1,442,167.00 | $47,508.31 | $1,153,733.60 | $47,508.31 | $288,433.40 |
| 09/26/07 [Docket No. 1895] | 08/01/07 through 08/31/07 | $1,380,630.25 | $67,736.40 | $1,104,504.20 | $67,736.40 | $276,126.05 |
| 11/02/07 [Docket No. 2161] | 09/01/07 through 09/30/07 | $962,135.25 | $43,335.11 | $769,708.20 | $43,335.11 | $192,427.05 |
| 11/21/07 [Docket No. 2311] | 10/01/07 through 10/31/07 | $1,123,608.75 | $34,644.28 | $898,887.00 | $34,644.28 | $224,721.75 |
| 12/12/07 [Docket No. 2454] | 11/01/07 through 11/30/07 | $686,867.25 | $24,162.23 | $549,493.80 | $24,162.23 | $137,373.45 |
| 01/29/08 [Docket No. 2688] | 12/01/07 through 12/31/07 | $469,620.25 | $21,427.41 | $375,696.20 | $21,427.41 | $93,924.05 |
| 2/11/08 [Docket No. 2752] | 01/01/08 through 01/31/08 | $784,941.75 | $2,836.27 | $627,953.40 | $2,836.27 | $156,988.35 |
| 03/04/08 [Docket No. 2904] | 02/01/08 through 02/29/08 | $548,469.50 | $17,755.55 | $438,775.60 | $17,755.55 | $109,693.90 |
| 04/04/08 [Docket No. 3076] | 03/01/08 through 03/31/08 | $495,621.75 | $14,018.89 | $396,497.40 | $14,018.89 | $99,124.35 |

RLF1-3294827-1

| Dated Filed and Docket No. | Period Covered | Total Amount Requested | | Total Amount Approved to Date via Certification of No Objection | | Holdback Fees Requested |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees (@ 80%) | Expenses (@ 100%) | Fees (@20%) |
| 05/16/08 [Docket No. 3355] | 04/01/08 through 04/30/08 | $1,015,316.00 | $29,131.28 | $812,252.80 | $29,131.28 | $203,063.20 |
| 07/01/08 [Docket No. 3510] | 05/01/08 through 05/12/08 | $361,587.75 | $27,294.93 | $289,270.20 | $27,294.93 | $72,317.55 |
| Total Monthly Fee Applications | | **$27,869,240.61** | **$1,399,925.60** | **$22,295,392.49** | **$1,399,925.60** | **$5,573,848.12** |
| Success Fee | | $ 2,100,000.00 | -$0- | | | |
| Fee Auditor Adjustments | | ($ 159,648.25) | ($ 29,922.56) | | | |
| Voluntary Adjustment | | ($51,765.50) | -$0- | | | |
| **Total Amount Requested** | | **$29,757,826.86** | **$1,370,003.04** | | | |

RLF1-3294827-1

# COMPENSATION BY PROFESSIONAL
## OCTOBER 30, 2006 THROUGH MAY 12, 2008

| Name of Professional | Description of Function | Hourly Billing Rate 2006 | 2007 | 2008 | Total Hours | Total Compensation |
|---|---|---|---|---|---|---|
| **North America** | | | | | | |
| Anthony C. Flanagan | Managing Director. | $ 610.00 | $ 640.00 | $ 695.00 | 3,343.40 | $ 2,175,453.50 |
| Gordon A. Schreur | Director | $ 495.00 | $ 525.00 | $ 565.00 | 3,825.00 | $ 2,033,209.00 |
| Adam Sanderson | Director | $ 440.00 | $ 495.00 | $ 530.00 | 3,200.90 | $ 1,596,140.00 |
| Rick Abbey | Director | $ 550.00 | $ 575.00 | $ 620.00 | 2,465.00 | $ 1,411,031.00 |
| Henry C. Caffrey | Director | $ 495.00 | $ 525.00 | $ 565.00 | 2,462.00 | $ 1,283,762.00 |
| Christopher Capers | Director | $ 440.00 | $ 495.00 | $ - | 2,595.70 | $ 1,262,761.50 |
| Adam Hollerbach | Associate | $ 300.00 | $ 315.00 | $ 375.00 | 3,468.30 | $ 1,135,080.00 |
| Kurt Beckman | Director | $ - | $ 525.00 | $ 565.00 | 2,029.60 | $ 1,103,652.00 |
| David R Arpili | Director | $ 495.00 | $ 525.00 | $ - | 1,845.70 | $ 961,900.50 |
| Stephen Cargo | Ind Contractor | $ 430.00 | $ 430.00 | $ - | 2,180.40 | $ 937,572.00 |
| Scott Haeger | Vice President | $ 430.00 | $ 450.00 | $ - | 2,008.40 | $ 898,816.00 |
| Thomas A, Morrow | Director | $ 550.00 | $ 575.00 | $ - | 1,519.80 | $ 869,727.50 |
| Daniel Bodine | Director | $ 495.00 | $ 440.00 | $ - | 1,931.50 | $ 866,701.00 |
| Kevin M. Carmody | Director | $ 495.00 | $ 525.00 | $ 565.00 | 1,585.70 | $ 824,794.50 |
| Yusra Alsayyad | Analyst | $ 200.00 | $ 230.00 | $ 280.00 | 3,200.40 | $ 765,187.00 |
| Shannon Outland | Analyst | $ 200.00 | $ 260.00 | $ 280.00 | 2,640.00 | $ 676,562.00 |
| Anthony Graziano | Director | $ - | $ 495.00 | $ - | 1,321.60 | $ 654,192.00 |
| Anthony M. Horvat | Director | $ 525.00 | $ 575.00 | $ - | 1,107.40 | $ 617,940.00 |
| Jeffrey W. Kopa | Associate | $ 300.00 | $ 315.00 | $ - | 1,925.00 | $ 602,550.00 |
| Timothy Sambrano | Associate | $ 300.00 | $ 315.00 | $ - | 1,589.90 | $ 496,669.50 |
| Michael G Tinsely | Director | $ 495.00 | $ 525.00 | $ - | 841.90 | $ 435,499.50 |
| Kathleen Birney | Ind Contractor | $ - | $ 400.00 | $ - | 945.60 | $ 378,240.00 |
| Randolph Johnson | Director | $ - | $ 495.00 | $ - | 565.60 | $ 279,972.00 |
| Liz Edwards | Vice President | $ 430.00 | $ 450.00 | $ - | 594.00 | $ 262,228.00 |
| Matthew Grimes | Associate | $ - | $ - | $ 335.00 | 773.90 | $ 259,256.50 |
| Carrianne J M Basler | Director | $ 495.00 | $ 520.00 | $ 565.00 | 487.90 | $ 251,388.50 |
| Ryan Dalton | Vice President | $ 330.00 | $ 350.00 | $ - | 715.10 | $ 245,341.00 |
| Richard Robbins | Vice President | $ 380.00 | $ 400.00 | $ - | 466.90 | $ 186,592.00 |
| Brian Stein | Director | $ - | $ 525.00 | $ - | 298.00 | $ 156,450.00 |
| Meade Monger | Managing Director. | $ 660.00 | $ 695.00 | $ - | 188.30 | $ 127,081.50 |
| Andrew Wagner | Vice President | $ - | $ 400.00 | $ - | 214.80 | $ 85,920.00 |
| Charles A. Cipione | Director | $ 495.00 | $ - | $ - | 123.00 | $ 60,885.00 |
| Peter Fitzsimmons | Managing Director. | $ - | $ 725.00 | $ - | 33.70 | $ 24,432.50 |
| Tim Gallagher | Director | $ - | $ 525.00 | $ - | 37.00 | $ 19,425.00 |
| Aisha Phillips | Ind Contractor | $ 165.00 | $ 175.00 | $ - | 93.50 | $ 15,717.50 |
| Arnd Baur | Director | $ - | $ 525.00 | $ - | 29.00 | $ 15,225.00 |
| Bobbie Phillips | Ind Contractor | $ 90.00 | $ 100.00 | $ - | 148.90 | $ 14,188.00 |
| Sherronda Abbs | Ind Contractor | $ 100.00 | $ 100.00 | $ - | 120.50 | $ 12,050.00 |
| Timothy Neis | Ind Contractor | $ - | $ 400.00 | $ - | 20.00 | $ 8,000.00 |
| Edward J Stenger | Managing Director. | $ 695.00 | $ - | $ - | 7.80 | $ 5,421.00 |
| Latonya Jones-Callaway | Paraprofessional | $ 160.00 | $ - | $ - | 15.80 | $ 2,528.00 |
| Justin Cooper | Vice President | $ - | $ 450.00 | $ - | 5.00 | $ 2,250.00 |
| Larry E. Ramaekers | Director | $ 440.00 | $ - | $ - | 4.70 | $ 2,068.00 |
| Gabriel Koch | Administrative | $ - | $ 150.00 | $ - | 4.00 | $ 600.00 |
| **Total North America** | | | | | 52,980.60 | $ 24,024,460.00 |

5

## Europe

| Name | Title | Rate 1 | Rate 2 | Rate 3 | Hours | Amount |
|------|-------|--------|--------|--------|-------|--------|
| Markus Holzl | Director | $ 550.00 | $ 575.00 | $ 650.00 | 1,688.20 | $ 979,472.50 |
| Thomas Sedran | Managing Dir. | $ 750.00 | $ 750.00 | $ - | 1,099.30 | $ 824,475.00 |
| Johannes Steinel | Vice President | $ 550.00 | $ 575.00 | $ 650.00 | 1,207.10 | $ 698,512.50 |
| Frank Hock | Ind Contractor | $ - | $ 575.00 | $ 650.00 | 1,174.10 | $ 695,365.00 |
| Michael J. Tyroller | Vice President | $ 550.00 | $ 575.00 | $ - | 880.40 | $ 505,017.50 |
| Bernd Jung | Director | $ 550.00 | $ 575.00 | $ - | 859.25 | $ 491,373.75 |
| Andreas Koutsouris | Vice President | $ 430.00 | $ 450.00 | $ - | 1,062.00 | $ 474,740.00 |
| Axel Schulte | Director | $ - | $ 575.00 | $ 750.00 | 398.90 | $ 240,602.50 |
| Andrew Thomas | Associate | $ 300.00 | $ 315.00 | $ - | 656.10 | $ 204,264.00 |
| Arnd Baur | Director | $ - | $ 550.00 | $ - | 214.90 | $ 118,195.00 |
| Stephen Taylor | Managing Dir. | $ 750.00 | $ 750.00 | $ - | 137.50 | $ 103,125.00 |
| Richard Milnes-James | Director | $ 550.00 | $ - | $ - | 111.15 | $ 61,132.50 |
| Johannes Steinel | Vice President | $ 430.00 | $ - | $ - | 72.00 | $ 30,960.00 |
| Michael J. Tyroller | Vice President | $ 430.00 | $ - | $ - | 72.00 | $ 30,960.00 |
| Claudia Ascherl | Ind Contractor | $ - | $ 150.00 | $ - | 19.00 | $ 2,850.00 |
| Craig Cavin | Vice President | $ - | $ 450.00 | $ - | 4.00 | $ 1,800.00 |
| **Total Europe** | | | | | **9,655.90** | **$ 5,462,845.25** |

| Less Adjustments: | | |
|---|---|---|
| 50% of Travel Time | | (1,569,830.14) |
| Voluntary Fee Reduction | | (100,000.00) |
| **Total Adjustments** | | (1,669,830.14) |

| | | |
|---|---|---|
| **Total of Monthly Fee Application Requests** | 62,636.50 | $ 27,817,475.11 |
| Add: Completion Fee | | 2,100,000 |
| Less: Fee Auditor Adjustments | | (159,648.25) |
| **Total Fees Requested** | | $ 29,757,826.86 |

| | |
|---|---|
| Total Hours | 62,636.50 |
| Total Fees (excl. Success Fee) | $27,657,826.86 |
| Blended Hourly Rate | $442.00 |

Dated: August 26, 2008
Wilmington, Delaware

# COMPENSATION BY PROJECT CATEGORY
## OCTOBER 30, 2006 THROUGH MAY 12, 2008

| Project Category Name<br>North America | Total<br>Hours | Total Fees |
|---|---|---|
| Dura USA – Financial Planning & Analysis | 11,994.90 | $6,275,403.50 |
| Dura USA – Cash Management | 10,587.70 | $4,273,200.75 |
| Dura USA – Foreign Affiliate Matters | 154.80 | $97,436.50 |
| Dura USA – Vendor Management | 589.90 | $335,764.50 |
| Dura USA – Creditor Communications | 1,492.20 | $ 787,266.00 |
| Dura USA – Case Management Activities | 3,056.50 | $1,126,555.50 |
| Dura USA – Plan and Disclosure Statement | 338.90 | $156,324.50 |
| Dura USA – Chapter 11 Reporting | 377.10 | $205,607.00 |
| Dura USA – Atwood Financial Management | 479.10 | $251,527.50 |
| Dura USA – Chapter 11 Matters | 3,253.90 | $1,666,608.50 |
| Dura USA – Travel Time | 5,409.80 | $1,183,762.87 |
| Dura USA – Time/Invoice Preparation | 348.60 | $200,201.00 |
| Dura USA – Operational Cost Reductions | 1,661.80 | $824,616.00 |
| Dura USA – Customer Communications & Negotiations | 873.70 | $516,605.50 |
| Dura USA- -Product Profitability Analysis | 7,708.10 | $3,659,488.50 |
| Dura USA – Transition and Engagement Planning | 153.30 | $78,542.50 |
| Dura USA – Claims Resolution Activities | 3,828.60 | $1,027,136.00 |
| Dura USA – Executory Contracts | <u>671.70</u> | <u>$ 226,416.00</u> |
| **North America Sub Total** | **52,980.60** | **$  22,892,462.62** |

RLF1-3294827-1

| Project Category Name | Total Hours | Total Fees |
|---|---|---|
| **Europe** | | |
| Dura Europe – Cash Management | 4,232.50 | $2,325,746.00 |
| Dura Europe – Business Planning & Analysis | 3,513.60 | $2,038,066.00 |
| Dura Europe – Operational Post Productions | 82.60 | $61,950.00 |
| Dura Europe – Supply Chain Management | 294.90 | $163,382.50 |
| Dura Europe – Customer Communications | 159.40 | $101,045.00 |
| Dura Europe – Travel and Expenses | 1,371.90 | $386,038.49 |
| Dura Europe – Transition and Engagement Planning | 1.00 | 550.00 |
| **Europe Sub-Total** | **9,655.90** | **$ 5,076,777.99** |
| **Net Total** | **62,636.50** | **$ 27,969,240.61** |
| Less: Fee Reduction May'07 Europe Invoice | | (100,000.00) |
| **Total Monthly Fee Applications** | **62,636.50** | **$ 27,869,240.61** |
| Add: Success Fee | | 2,100,000.00 |
| Less: Fee Auditor Adjustments | | (159,648.25) |
| Less: Voluntary Adjustment | | (51,765.50) |
| **Total Fees Requested** | | **$ 29,757,826.86** |

RLF1-3294827-1

## EXPENSE SUMMARY
## OCTOBER 30, 2006 THROUGH MAY 12, 2008

| Expense Categories | TOTAL | |
|---|---|---|
| **North America** | | |
| Airfare | $ | 361,043.97 |
| Cab Fare / Ground Transportation | | 56,961.43 |
| Conversion | | - |
| Gas for Company Car | | 50.91 |
| Computer Supplies/Support | | 506.82 |
| Computerized Research | | 201.44 |
| Legal Fees | | 3,535.00 |
| Lodging | | 355,379.84 |
| Meals & Tips | | 74,160.31 |
| Copy Costs (Outside Source) | | 2,330.18 |
| Mileage | | 10,530.16 |
| Other | | 10,800.27 |
| Overnight Mail Charges | | 2,130.53 |
| Parking & Tolls | | 8,377.02 |
| Long Distance Calls | | - |
| Voluntary Expense Reduction | | (3,535.00) |
| Rental Car | | 146,909.04 |
| Supplies | | 2,986.31 |
| **Sub-Total – North America** | $ | 1,032,368.23 |
| | | |
| **Europe** | | |
| Airfare | $ | 179,169.85 |
| Cab Fare / Ground Transportation | | 28,668.16 |
| Conversion | | 38.55 |
| Gas for Company Car | | 1,622.51 |
| Computer Supplies/Support | | 1,239.27 |
| Computerized Research | | - |
| Lodging | | 78,692.84 |
| Meals & Tips | | 12,253.56 |
| Copy Costs (Outside Source) | | - |
| Mileage | | 1,375.07 |
| Other | | 28,536.13 |
| Overnight Mail Charges | | - |
| Parking & Tolls | | 5,023.43 |
| Long Distance Calls | | 4,352.39 |
| Voluntary Expense Reduction | | - |
| Rental Car | | 26,585.61 |
| Supplies | | - |
| **Sub-Total – Europe** | $ | 367,557.37 |
| | | |
| **Grand Totals** | $ | 1,399,925.60 |
| Less: Fee Auditor Adjustments | | (29,922.56) |
| **Total Expenses Requested** | $ | 1,370,003.04 |

9

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, INC., | ) | Case No. 06-11202 (KJC) |
| et al.,[3] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objection Deadline: September 15, 2008 at 4:00 p.m.** |
| | | **Hearing Date: November 25, 2008 at 1:30 p.m.** |

**FINAL APPLICATION OF ALIXPARTNERS, LLP FOR ALLOWANCE
OF COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISORS TO
THE DEBTORS AND DEBTORS-IN-POSSESSION
FOR THE PERIOD FROM NOVEMBER 7, 2006 THROUGH MAY 12, 2008
AND FOR PAYMENT OF SUCCESS FEE**

Pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court's *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members*, dated November 21, 2006 [Docket No. 278] (the "Administrative Order") and the Court's *Order Appointing Fee Auditor and Establishing Related Procedures Concerning the Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and Consideration of Fee Applications* [Docket No. 439] (the "Fee Auditor Order"), AlixPartners, LLP ("AlixPartners") hereby files this Final Application of AlixPartners, LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Financial Advisor to the Debtors and Debtors-in-Possession for the Period from November 7, 2006 through May 12, 2008 and for payment of Success Fee (the

---

[3] The "Debtors" comprise the entities set forth in the Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of the Debtors' Chapter 11 Cases, entered on October 30, 2006 [Docket No. 68].

RLF1-3294827-1

"Final Fee Application"). By this Final Fee Application, AlixPartners seeks a final allowance of compensation of $29,809,592.36 (including a Success Fee in the amount of $2,100,000) and reimbursement of actual and necessary expenses of $1,370,003.04, for a total of $31,179,595.40 for the period from November 7, 2006 through May 12, 2008 (the "Compensation Period"). In support of this Final Fee Application, AlixPartners respectfully represents as follows:

**Background**

1.  On October 30, 2006 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing in the management and possession of their properties as debtors-in-possession. No trustee or examiner has been appointed in these chapter 11 cases. On November 8, 2006, the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Committee") to serve in these cases.

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.  On December 21, 2006, the Court entered an Order Authorizing Retention of AlixPartners, LLP Nunc Pro Tunc to November 7, 2006 as Financial Advisors to the Debtors and Debtors-in-Possession (the "Retention Order").

4.  On November 20, 2006, the Court signed the Administrative Order authorizing certain professionals to submit applications for interim compensation and reimbursement of expenses on a monthly basis pursuant to the procedures specified therein (the "Monthly Fee Applications").

11

5. The Administrative Order also required that, beginning with the four-month period ending February 28, 2007 and at four-month intervals thereafter, or at such intervals convenient to the Court, each of the professionals must file with the Court and serve on the Notice Parties a request (an "Interim Fee Application Request") for interim Court approval and allowance, pursuant to section 331 of the Bankruptcy Code, of the compensation and reimbursement of expenses sought in the Interim Fee Application Request filed during such period (the "Interim Fee Period"). The Interim Fee Application Request must include a summary of the Fee Applications that are the subject of the request and any other information requested by the Court or required by local rules. Each professional must file its Interim Fee Application Request within 45 days after the end of the Interim Fee Period for which the request seeks allowance of fees and reimbursement of expenses. AlixPartners has filed Interim Fee Applications with the court for fees and expenses incurred during the periods November 7, 2006 through February 29, 2008. In addition, AlixPartners has filed Monthly Fee Applications for the periods March 1, 2008 through March 31, 2008, April 1, 2008 through April 30, 2008 and May 1, 2008 through May 12, 2008  The period from March 1, 2008 through May 12, 2008 will be referred to as the "Interim Fee Period".

**Additional Monthly Fee Applications Covered by the Final Fee Application**

| Period | Requested Fees | Request Expenses | Allowed Fees (80%) | Allowed Expenses (100%) | Hold Back (20%) |
|---|---|---|---|---|---|
| 3/01/08-3/31/08 | $ 495,621.75 | $14,018.89 | $396,497.40 | $14,018.89 | $99,124.35 |
| 4/01/08-4/30/08 | $1,015,316.00 | $29,131.28 | $812,252.80 | $29,131.28 | $203,063.20 |
| 5/01/08-5/12/08 | $ 361,587.75 | $ 27,294.93 | $ 289,270.20 | $ 27,294.93 | $ 72,317.55 |
| TOTAL | $ 1,872,525.50 | $ 70,445.10 | $1,498,020.40 | $ 70,445.10 | $ 374,505.10 |

The  Monthly Fee Applications for the Interim Fee Period covered by this Final Fee Application, and not yet covered by any Interim Fee Application Requests, contain detailed daily time logs

12

describing the actual and necessary services provided by AlixPartners during the Interim Fee Period as well as other detailed information required to be included in Monthly Fee Applications. The Monthly Fee Application detailed daily time logs were attached to each of the previously filed monthly fee applications. The additional Monthly Fee Applications have been filed with the Court and no objections have been received with respect to any of the additional Monthly Fee Applications.

### Compensation Paid and Its Source

6.      All services for which compensation is requested by AlixPartners were performed for or on behalf of the Debtors and not on the behalf of any committee, creditor, or other person.

7.      At all relevant times, AlixPartners has been a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code and has not represented or held any interest adverse to the interest of the Debtors.

8.      AlixPartners has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Final Fee Application. There is no agreement or understanding between AlixPartners and any other person other than the Managing Directors of AlixPartners for the sharing of compensation to be received for services rendered in these cases.

### Fee Statements

9.      A detailed fee and expense statement was attached to each of the previously filed Monthly Fee Applications. This Final Fee Application statement contains detailed fee and expense statements  describing the time spent by each professional for the Interim Fee Period. Detailed fee statements for prior periods is attached to the respective Interim Fee Applications. To the best of AlixPartners' knowledge, this Final Fee Application complies with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure,

the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2, and the Administrative Order.

## Actual and Necessary Expenses

10.     A summary of actual and necessary expenses and daily logs of expenses incurred by AlixPartners during the Compensation Period was attached to each of the previously filed monthly fee applications.

## Summary of Services Rendered

11.     The following numbered paragraphs provide a description of the categories of services rendered by AlixPartners during the Compensation Period and the related benefits to the Debtors' bankruptcy estate.

1.     Matter 4628-1 - Financial Planning and Analysis

(Fees: $6,275,403.50; Hours: 11,994.90)

AlixPartners worked with senior management of the Debtors to analyze strategic alternatives for the plant consolidation and the movement of production to low-cost countries. AlixPartners reviewed planning documents developed by the Debtors' business unit management and led the identification and evaluation of one-time implementation costs and operational cost savings of each alternative considered. The initiatives developed through this effort have produced a significant incremental benefit to the Debtors as summarized in the Debtors' business plan.

AlixPartners constructed a detailed forecast model used by each plant in North America to develop their business plans for 2007 and 2008 (called the Annual Operating Plan "AOP"). The model provided a common and consistent methodology for using sales volume data by part number from internal databases to develop a detailed sales, material and direct labor forecast by part number.

AlixPartners developed a methodology to match sales data to standard cost data by part number. AlixPartners developed and implemented a standard template for budgeting plant overhead costs, including providing training at individual plants to ensure standardized data. AlixPartners then worked closely with plant management to validate sales, pricing and overhead cost assumptions. These plant forecasts were consolidated by AlixPartners into a second model that generated integrated income statement, balance sheet and cash flow projections. The financial model designed by AlixPartners provided flexibility to analyze individual restructuring initiatives and provided summary analyses for management and for Committee review.

This model was heavily scrutinized by various parties and their advisors, including the Committee, the ad hoc Second Lien Group, customers, DIP lenders and potential exit financing sources. All parties concluded that the plan was thorough, had identifiable action steps, was credible and achievable. It is worth noting that the Debtors exceeded their business plan in 2007, despite significant turbulence in the North American automotive industry. The Debtors were also ahead of plan in 2008 at the time they emerged from Chapter 11.

AlixPartners also constructed a detailed forecast model to develop a quarterly business plan for each plant for 2009, 2010 and 2011. The model provided a common and consistent methodology for using sales volume data by part number from internal databases to develop a detailed sales, material and direct labor forecast by part number. AlixPartners developed a methodology to determine quarterly sales volumes and match sales data to standard cost data by part number. AlixPartners developed and implemented a methodology for budgeting plant overhead costs for 2009 through 2011 based on changes in volumes and incorporated the impacts of plant consolidation initiatives into the quarterly model. AlixPartners then worked closely with management to validate sales, pricing and overhead cost assumptions. These plant forecasts

15

were consolidated by AlixPartners into a consolidation model used to develop the final business plan, which provided an integrated income statement, balance sheet and cash flow projections. The financial model designed by AlixPartners provided flexibility to analyze individual restructuring initiatives and provided summary analyses for management and for Committee review.

AlixPartners worked with senior management to refine cost estimates and timing for implementation of strategic alternatives for the plant consolidation and the movement of production to low-cost countries. AlixPartners reviewed initiative planning and implementation documents prepared by plant management and participated in implementation team calls to monitor progress and provide input to senior management. The continued involvement in this process provided management with independent assessments of progress and conformance of implementation activities with business plan cost and timing.

AlixPartners assisted management in its efforts to sell the assets of the Butler Plant, including having direct communication with identified buyers, preparing data for inclusion in a virtual due diligence room, preparing financial plans, and reviewing term sheets and asset purchase agreements and presentation of prospective buyers to significant customers. This effort resulted in a negotiation of price increases with a major customer that eliminated cash losses to the Debtors during the sale of the Butler facility. Ultimately, these efforts resulted in the sale of the Butler plant for a price that was in excess of the Debtors' plan.

AlixPartners assisted the management in extending its initial DIP revolver, obtaining a new DIP term loan and securing exit financing as the Debtors' initial timeline to exit chapter 11 during the fall of 2007 was extended to June 2008 due to the financing markets turmoil. AlixPartners was responsible for the due diligence process including updating the Debtors'

16

financial projections for management's latest assumptions, completing various financial analyses as requested by the various lenders and assisting the Debtors in the negotiation of the various loan agreements.

2.      Matter 4628-17 - Product Profitability analysis

        (Fees: $3,658,488.50; Hours: 7,708.10)

This activity includes assisting the Debtors in analyzing the profitability of their various operations, customer contracts and products, and in developing strategies to address issues noted from this analysis. This task involved preparing detailed analysis of financial information generated from the Debtors' standard cost systems and developing and applying methodologies to allocate costs outside of the standard costing systems. Specific steps involved in this activity were as follows:

**1. Identified under-performing product lines**

- Based on 2006 performance, AlixPartners completed a margin analysis for each product line (approximately 18 different product line categories) based on build up of standard costs (material, labor, burden, SG&A) from the Debtors' accounting system and plant level budgets
  - Worked with plant controllers and business unit general managers to develop a detailed analysis of earnings before interest and taxes ("EBIT") margins by customer
  - Worked with sales directors to identify current selling prices and reconcile pricing reflected in the sales database, purchase orders, and at plant level
  - Identified total divisional and corporate overhead costs and developed a methodology for allocation of all overhead costs as a percentage of cost of goods sold
- Prioritized under-performing product lines and major customers with significantly unprofitable programs for immediate focus and further analysis

**2. Developed detailed cost-build-up by part number**

17

- Conducted plant visits to understand and quantify cost drivers and root causes of manufacturing variances to plant budgets (e.g., unabsorbed burden). Assessed manufacturing performance by plant (e.g., utilization, throughput, yield, scrap).

- Validated material costs by verifying actual purchase order prices for steel and resin components. Factored in newly-negotiated raw material rates into cost build up.

- Worked with plant controllers to update 2007 standards based on 2006 performance and associated variances. Standards were then rolled into the 2007 AOP to determine areas of immediate focus.

- Consolidated existing sales data maintained by sales group and matched at the part level to costs contained in individual plants to create the first actual part profitability database (consistent throughout North American auto business, across plants on separate costing systems and across all product lines).

- For all programs, determined fully-loaded costs based on standard costs for material, labor, dividends and SG&A and allocation of associated divisional and corporate overhead costs. All costs were obtained from the AOP described in the Financial Planning and Analysis section above.

- For select under-performing programs, developed part-by-part detailed bill of material cost build up. Factored the effects of raw material increases, engineering changes, and volume fall off, capital equipment investments, and excess capacity into overall costs.

- Adjusted costs of product lines for expected changes where applicable for 2007 and beyond.

3. **Determined internally driven cost savings by product line**

- Investigated manufacturing variances to highlight excess cost.

- Developed scenarios to optimize plant utilization and reduce unabsorbed costs for each business unit. Highlighted key areas of plant performance for potential improvement.

- Based on restructuring initiatives, worked with Debtors senior management and the AlixPartners Financial Planning & Analysis Team to develop a restructured business plan for Dura. Rolled benefits of restructured business plan into the business plan forecasts to further streamline margins.

- Developed a detailed analysis of the restructured costs by product line and by customer based on 2007 forecasted sales and a post-restructuring cost base.

4. **Determined required price adjustments by product line**

18

- Based on the restructured business plan, recalculated costs and profitability margins of all products in anticipation of pricing discussions. Modified fully-loaded costs for selected parts affected by restructuring activities. Eliminated exited businesses from product portfolio.

- Conducted workshop with sales, engineering, plant controllers, and business unit general managers to review analysis performed and train staff on the "ask" price calculation methodology.

- Worked with sales directors and business unit general managers to develop negotiation strategies and pricing increases by product line

  - Documented cost changes at a part number bill of material level for both directed and non-directed components, including prior responses to price requests.
  - Validated latest selling prices for current programs and anticipated selling prices for new programs.
  - Determined appropriate profit margins based on market dynamics (e.g., competitive pricing) and Debtors' EBITDA targets/objectives.
  - Set "Ask" prices for each part / program

- Applied projected 2007 volume by part.

- Determined expected impact of pricing improvements by program and by customer. Integrated EBITDA improvements from pricing discussions into the consolidated business plan for 2007 and 2008.

- Performed detailed historical analysis for selected parts to evaluate profitability at initial award, start of production and recent engineering change request level for the current year in order to establish burden of proof as to recent cost increases. Worked with individual product cost estimators to ensure the Debtors' internal methodology was consistently applied and suggested modifications to cost estimating approach for negotiations.

- Conducted in-house workshop with plant general managers, sales, engineering, and finance to 1) develop overall product line strategies, and 2) define pricing increases necessary for viable product portfolios going forward.

## 5. Conducted multi-round negotiations with major customers

- Met with top eight customers to discuss the Debtors' revitalization strategy, current financial situation / liquidity, and internal restructuring activities.
  - Ford, DCX, General Motors, Johnson Controls, Intier, Honda, Toyota, and Nissan.
  - Explained current costs and the benefit to the customer of the Debtors' plan to restructure its current operations and improve its overall cost structure.
  - Informed customers of target "ask" prices for each part / program – emphasis placed on cost increases the Debtors believe can reasonably be passed through to the customer (e.g., steel, volume, capital, part changes, etc.).

19

- Provided supporting documentation and additional data for price increases as appropriate.
  - Detailed cost breakdowns and bill of materials with revised costs.
  - Development and submission of costs on customer forms with supporting documentation.
  - Supporting data for material increases.
  - History of engineering changes.
  - Supported plant visits and audits as requested by customers.
- Evaluated financial impact of customer counter offers, and developed negotiating strategies, including the Debtors' counter positions for subsequent rounds of discussions.
- Prepared the Debtors' responses and conducted follow on negotiation sessions with customers

## 6. Results

- The end result of the negotiations was a great result for the Debtors that exceeded their internal expectations and the AOP.
- Through consistent and forthright communication with the customers, all of them better understood the Debtors' current situation, restructuring being done internally ("self help"), benefits of the restructuring and the Debtors' long-term prospects.
- Relationships with the eight OEMs identified above improved dramatically during this period, in spite of the pricing request from the Debtors.
- Customers understood rationalization for price increases being sought by the Debtors and the work the Debtors were undertaking to minimize these increases.
- The price concessions were obtained with a minimal amount of unprofitable programs being resourced during this period. The programs identified to be resourced were done with both the Debtors and the OEMs agreeing that they should be resourced.
- Projected price increases obtained by the Debtors from their customers were in excess of $20 million per year.

3.  Matter 4628-2 - Cash Management

(Fees: $4,273,200.75; Hours: 10,587.70)

AlixPartners provided leadership to the treasury and shared services (accounts receivable, accounts payable and general ledger) functions. This role included monitoring of the Debtors' liquidity situation, preparation and review of the 13-week cash forecast, communication with the DIP financing

RLF1-3294827-1

lenders, sales of non-core businesses and idle real estate, and assistance in reconciling cash, receivables and payables accounts.

Tasks related to the monitoring of the Debtors' liquidity position, including the preparation and review of the 13-week cash forecast, include:

- Daily monitoring of cash collections, clearings, bank activity, bank liquidity covenants and of daily borrowing level.
- Constant communication of borrowing levels and liquidity situation with upper management and other advisors.
- Reviewing the individual plants' 13-week cash flow forecast data. Comparison of forecasted data to operating plan assumptions.
- Weekly follow-up calls to the plants to discuss the cash flow data.
- Forecasting of weekly accounts payable disbursements based on plants' forecasts of costs to be incurred and analysis of payment terms and trends.
- Worked with Debtor personnel to determine method of meeting cash needs at specific entities in Europe by transferring cash between entities.
- Preparation of weekly 30-page reporting package including 13-week forecasts for guarantors and non-guarantors by entity and in total, detail of payment projections, detail of cash balances by country and actual weekly results. Weekly meeting with the Debtors' Chief Financial Officer to review and discuss package, trends and observations.
- Distribution of a five- to eight-page weekly executive Summary for management and advisors.
- Due diligence calls and meetings with outside advisors (the Committee, ad hoc second lien holders and customers) to review 13-week cash flow forecasts, as well as comparisons of weekly forecasts to annual operating plans.
- Preparation and review of material to be distributed to the DIP lenders related to monthly covenant compliance and amendments.
- Obtained and prepared information to be provided for a collateral review by the DIP revolver lender. Numerous discussions with collateral review agents to discuss information requested and information available.

Tasks related to the sale of non-core businesses and idle real estate include:

- Review of Atwood sale agreements and participation in discussions related to Atwood sale.

21

- Preparation and review of Atwood working capital history and projections.
- Discussions with Colliers, the real estate agent, and the Debtors' management regarding listing prices and market conditions related to the following owned real estate:
  - Bracebridge, ON
  - Brantford, ON
  - Brookfield, MO
  - Brownstown, IN
  - Fulton, KY
  - Hannibal, MO
  - Jacksonville, FL
  - LaGrange, IN
  - Llanelli, UK
  - Pikeville, TN
  - Selinsgrove, PA
  - Stratford, ON
- Analysis of various offers and discussions with management on counter offers related to numerous properties.

Tasks related to assisting shared services in reconciling accounts receivable, accounts payable and cash accounts include:

- Review of accounts receivable ("A/R") agings and discussions with various customers to collect delinquent A/R.
- Supervised Debtor personnel, temporary workers and other outside professionals to review A/R as of December 31, 2006 for collection and audit purposes.
- Follow up to ensure that necessary steps were taken to collect and properly account for certain open invoices as of December 31, 2006.
- Worked with Debtor personnel to obtain letters acknowledging receipt by vendor of payment for tooling costs to facilitate payment by customer for tooling invoices.
- Assisted the Debtors in determining wire transfers not properly recorded in the general ledger or the accounts payable records. Follow up to determine that corrections were properly made.
- Reviewed the Debtors' check runs to attempt to protect from inadvertent duplicate payments to vendors.
- Assisted Debtor personnel in reconciliation of corporate cash accounts.
- Improved processes for reconciling cash accounts, recording cash receipts and tracking unapplied cash.
- Supervised Debtor personnel in analyzing and researching invoices with zero prices and thereby reducing the accrual for zero price invoices.

- Worked with Debtor personnel to significantly improve the process of applying cash receipts so that A/R agings could be used to identify delinquent invoices on a timely basis.
- Created various analyses, schedules and reconciliations to aid in the completion of the year-end closing and support the annual audit by Deloitte & Touche.

Tasks related to assisting Debtors in obtaining exit financing include:

- Reviewed and negotiated terms of exit revolver, European term debt and the second lien term debt in North America.
- Coordinated credit facilities closing process.
- Developed and managed closing funds flow and distribution of funds to creditors.

4.      Matter 4629-2 - Europe Business Planning & Analysis

        (Fees: $2,041,066.00; Hours: 3,513.60)

The work performed in this area for Europe was similar to the work performed in the Financial Planning and Analysis section (Matter 4628-1) for North America. In fact, there were numerous calls and emails to ensure that the work was well coordinated and the work product was consistent.

5.      Matter 4629-1 - Europe Cash Management

        (Fees: $2,322,746.00; Hours: 4,232.50)

This matter generally consisted of assisting the Debtors with their cash management and forecasting at European subsidiaries. AlixPartners developed integrated cash forecasts across two business groups and multiple countries and, at Debtors' management request, maintained the 13-week cash forecast that integrates with the guarantor cash forecast. Each week extensive effort went into assembling operational forecasts from each of the businesses, converting them

into cash requirements, analyzing against business plan commitments and analyzing variances against actual performance and the DIP budget.

AlixPartners also assisted in obtaining additional liquidity through credit insurance and factoring, including representing the Debtors in meetings with factors and credit insurers. We also developed alternatives to provide funding for the restructuring of the control systems business. Other initiatives include detailed analysis of intercompany accounts to support legally-mandated solvency analysis, development of proposal to settle intercompany accounts through netting, analysis of leasing options for capital spending, review of supplier accounts payable, review Plettenberg tax issues and other tax optimization strategies and review UK lease alternatives. In addition, we responded to various advisor requests for additional information.

An important part of the exit plan was to obtain additional financing in Europe and repatriate the excess cash to the U.S. Without this, it was unlikely the U.S. could obtain sufficient exit financing on its own. AlixPartners was instrumental in obtaining receivable factoring proceeds in excess of $70 million from two independent sources. AlixPartners was responsible for negotiation of the terms and conditions of the credit agreement and coordination of the due diligence process. In addition, AlixPartners, through the development of the weekly cash model, identified over $20 million in excess cash in Europe, which was repatriated to the U.S. to fund the exit.

6.    Matter 4628-6 - Case Management Activities
      (Fees: $1,126,555.50; Hours: 3,056.50)

This matter involves statutory matters that the Debtors needed to comply with while in bankruptcy. Examples of this type of work include: claims bar date, Claims analysis, and

24

preference analysis. Debtor employees had little experience with these matters and relied upon AlixPartners to provide expertise and experience on how to manage these requirements. AlixPartners' involvement had several benefits to the estate: 1) minimized the amount of time Debtor personnel had to divert from operating the Debtor, 2) improved the accuracy of the reporting, 3) ensured that important deadlines were met. Below are additional details of the specific tasks we were asked to perform for the Debtors:

- Provide support for Claims bar date including: analyzing mailing matrix to ensure full coverage of potential claims; developing process to analyze variances between scheduled amounts and filed amounts; developing communications tools for claimants' and Debtors' questions process; developing database for matching scheduled to filed claims.

- Provided assistance to the financial reporting process to support the increased reporting requirements of the chapter 11 cases, including providing data to support the preparation by the Debtors of the monthly operating reports. Worked closely with the Debtors' personnel to continue to provide such reporting on a timely basis. Prepared certain schedules for inclusion in such reporting.

- Prepared intercompany reconciliation for 42 Debtors to Debtor and non-Debtor entities for period of one year prior to bankruptcy date filing, in order to fulfill U.S. Trustee request.

- Assembled a database and coordinated a process to review 2,500 contracts for use in chapter 11 reporting and by the Debtors in their ongoing business operations. Additionally, formulated a process for resolving decisions related to such contracts.

- Worked with the Debtors' outside counsel and noticing agent to prepare notices and service lists for the various motions and orders in connection with motions filed and hearings conducted in the Debtors' chapter 11 cases.

- Developed customized proof of claims form and other information including detailed customized supporting analyses to provide to creditors related to the Debtors' May 1, 2007 deadline for certain creditors to file proofs of claim and their calculation of claims of record.

- Developed database of prepetition transactions to support analysis of potential preference claims

- Responded to open questions arising from 341 meeting

- Provided supporting analysis to Debtors' auditors regarding pre-petition claim amounts.

- Performed analysis to identify and support data for initial claims objections

25

- Developed claims analysis to support potential recoveries in Plan of Reorganization.
- Prepared reconciliation of claims filed by creditors to Debtors' accounts payable balances in order to facilitate audit function for filing of the 10-K.

7.   Matter 4628-5 - Creditor Communications

(Fees: $787,266.00; Hours: 1,492.20)

This activity involves managing the needs of several different creditor constituents: the Committee and their financial advisors; and the second lien committee and their financial advisors. We coordinated management responses to creditor information requests, and prepared analysis responsive to creditor constituents' requests. We prepared for and met with creditor constituencies and their advisors. We enabled the financial advisors' due diligence of the Debtors' forecasts and other analyses.

8.   Matter 4628-9 - Atwood Financial Management

(Fees: $251,527.50; Hours: 479.10)

This matter comprises tasks related to assisting Atwood while they were searching for a replacement for the Director of Finance. At the Debtors' senior management request, we performed the role of the Director of Finance for Atwood while they searched for a replacement and assisted orientation of a new Director. Financial assistance provided to the Atwood division included:

- Assisted new Director of Finance in integration and orientation into operations.
- Developed and maintained division financial metrics and projections as required for business planning process.
- Developed and integrated Atwood data into the integrated Debtor business plan.
- Identified additional opportunities for performance improvement, including implementing cost reduction, measurement and change management.

RLF1-3294827-1

- Maintained high level of management attention to cash projections as they relate specifically to inventory purchases and receivables management, including development of feedback loop and performance metrics for management and staff.

- Identified, quantified and presented to Atwood's president and other Atwood management various cost reduction opportunities and improvements in cash management, including development of and maintenance of measurement systems and methods.

- Provided management support for chapter 11 process as it relates to Atwood vendor communications and relations (due to unique nature of Atwood vendor base).

- Assisted in due diligence reviews of business plan.

- Assisted in preparation of offering memorandum for the sale of the Atwood division.

- Participated in periodic staff and employee meetings as requested by management.

- Provided periodic reporting and analysis as requested.

9.      Matter 4628-10 - Chapter 11 Matters

        (Fees:  $1,666,608.50; Hours: 3,253.90)

This activity includes various tasks required in a bankruptcy that are generally outside of the ordinary operations of the Debtor. Some examples of the tasks we have been involved with are as follows:

- Activities related to the bar date, including data analysis.
- Meetings to plan bankruptcy strategy and coordination with management and other professionals.
- Analysis of intercompany accounting.
- Work to perform individual vendor preference analyses.

10.     Matter 4628-7 – Plan and Disclosure Statement

        (Fees:  $156,324.50; Hours: 338.90)

This activity includes assisting the Debtors with the preparation of materials for the Disclosure Statement and Plan of Reorganization, including the preparation of the liquidation analysis, the financial forecast exhibit and other portions of the Disclosure Statement as

27

requested by counsel. In addition, AlixPartners prepared for and testified at the confirmation hearing regarding the best interest test, plan feasibility and other financial issues.

11. Matter 4628-20 - Claims Resolution Activities
(Fees: $1,027,136.00; Hours: 3,828.60)

This matter is related to analyzing data supporting pre-petition claims. Tasks include: a) analyzing vendor claims information to support negotiation of critical vendor settlements; b) developing a database to identify 503(b)9 claims; c) reviewing vendor-supplied claims records; d) providing supporting information for supply contract assumption motions; e) communicating with plant controllers to resolve variances between Debtor and supplier claims assertions; and f) resolving misapplied pre-petition wire transfers.

12. Matter 4628-4 - Vendor Management
(Fees: $335,764.50; Hours: 589.90)

This task primarily involved working closely with the Debtors' purchasing group to manage their vendor relationships to mitigate the impact of the chapter 11 filings. Specific tasks included:

- Maintain metrics to measure trade credit recovery.
- Prepare forecast of critical vendor payments for 13-week cash forecast. Monitor agreed upon critical vendor payments.
- Review preparation of weekly critical vendor reports.
- Develop factoring tools to accelerate trade credit recovery.
- Provide leadership and guidance to PCC (payment of critical Creditor) approval process.
- Develop process for gaining court approval for set-offs.
- Manage process for obtaining tooling lien releases from tooling suppliers.

28

- Work with management and Kirkland &Ellis to negotiate assumption and cure of key supply agreements.
- Respond to vendor requests for critical vendor treatment.
- Review sources of trade credit insurance.
- Develop procedures for preparing information for vendor negotiations.
- Assist management with responses to vendors that threaten to stop shipping.

13.    Matter 4628-16 - Customer Communications and Negotiation

(Fees: $516,605.50; Hours: 873.70)

This activity involves managing the needs of several different OEM customers and their financial advisors. We coordinated management responses to customer information requests (including various requests related to the Debtors' actual performance, 2007-08 forecast, and the Debtors' five-year strategic operating plan) and prepared analyses responsive to the customers requests. We prepared for and met with the customers and their advisors, including the facilitation of several on-site due diligence visits by various financial advisors. We enabled the customers' financial advisors' due diligence of the Debtors' forecasts and other analyses.

14.    Matter 4629-5 - Europe Customer Communications

(Fees: $101,045.00; Hours: 159.40)

This task involved assisting the Debtors with customer communications to stabilize business after the U.S. bankruptcy filing and involved many of the same activities as those described in the Customer Communications and Negotiation section.

15.    Matter 4628-18 - Transition and Engagement Planning

(Fees: $78,542.50; Hours: 153.30)

This matter included tasks related to planning the engagement. Tasks included meeting with Debtor personnel to respond to information requests from other professionals in the case to understand various roles and prioritization of work. Tasks also included initial review of business documents and developing an understanding of Debtor databases.

16.   Matter 4628-3 - Foreign Affiliate Matters

(Fees: $97,436.50; Hours: 154.80)

We coordinated financial planning and cash forecasting in Europe with the business needs of the parent company in the U.S. We integrated the results of the work in Europe into the consolidated planning for the Debtor and non-Debtor enterprise.

17.   Matter 4629-4 - Europe Supply Chain Management

(Fees: $163,382.50; Hours: 294.90)

This task involved meeting with commodity leaders to develop the following:

- Commodity cost profiles.
- Commodity spend by plant.
- Commodity spend savings initiatives.
- Logistics control procedures.
- Programs to reduce indirect spending.

18.   Matter 4629-3 - Europe Operational Cost Reductions

(Fees: $61,950.00; Hours: 82.60)

This task included the presentation of the overall European restructuring program to management and outside constituents.

RLF1-3294827-1

19.     Matter 4628-14 - Operational Cost Reductions

    (Fees: $824,616.00; Hours: 1,661.80)

This task involved assisting the Debtors' information technology ("IT") department with a number of tactical and strategic IT initiatives intended to produce sustainable improvements in the IT cost structure. In North America, this included the restructuring of software agreements along with the replacement of a significant outsourcing service provider contract. In the case of the outsourcing replacement; the effort included identification of an appropriate vendor pool, selection of a new provider, negotiation of an appropriate scope of work and fee structure, rebuilding the IT infrastructure at the new location and application transition to the new provider, which was successfully completed. The European effort also included a number of initiatives across all of the IT spending categories. The focus in Europe was the identification, selection and transition to a third-party provider to host new infrastructure needs and to serve as the foundation for future outsourcing efforts. The estimated savings from these projects was in excess of $3.0 million in 2007 and $4.0 million in 2008.

20.     Matter 4628-21 - Executory Contracts

    (Fees: $226,416.00; Hours: 671.70)

This matter represents the development of the contracts database and analysis of cure and rejection damages. Detailed analysis was performed to identify the specific contracts and coordinate the decision to assume or reject specific contracts for both the Atwood transaction and the Plan of Reorganization.

21.     Matter 4628-11 - Travel & Expenses

31

(Fees: $1,183,762.87; Hours: 5,409.80)

Matter 4629-6 - Europe Travel and Expenses

(Fees: $386,038.49; Hours: 1,371.90)

For cases of this size and complexity, it is simply not feasible to expect that all of the professional skills would be resident in Detroit. Many of the professionals on the AlixPartners team reside in other offices including Dallas, Chicago and New York, and Europe. Our focus was to assemble the right mix of professional skills to maximize value for the estate, not to simply minimize travel expenses. However, we did attempt to keep travel expenses down by utilizing a substantial number of personnel from the Detroit area on this engagement.

The nature of the work we are asked to do frequently requires on-site presence. Unlike legal and investment banking work that can frequently be done in the professionals' main office, the work AlixPartners does is dependent on data obtained from frequent discussions and meetings with the client organization. In order to maximize the efficiency of our work, we require frequent in-person interaction with the client and other team members. Therefore, it is necessary that the majority of the work team be assembled at the client location each week. This is the case in virtually every restructuring engagement in which AlixPartners is retained.

22.     Matter 4628-12 - Time/Invoice Preparation

(Fees: $200,201.00; Hours: 348.60)

This activity included the preparation of the monthly invoice and the monthly fee applications. It also included responding to questions from third parties about the fee filings.

RLF1-3294827-1

C.      Staffing of the Cases

In its Reservation of Rights, the U. S. Trustee has expressed the belief that "AlixPartners has significantly overstaffed this engagement." AlixPartners respectfully submits that the U. S. Trustee's belief is incorrect. At the start of the case, the Debtors established a very tight timeline for emergence from chapter 11, with an October 2007 emergence date. This tight timeline (i) required many work areas to be performed simultaneously; and (ii) necessitated increased staffing levels by AlixPartners. The timeline dictated work simultaneously on almost all projects, rather than sequentially, as might be the scenario in other cases. Naturally, doing the work sequentially would reduce staffing levels. However, the Debtors were more interested in creating value, believing that the value created would materially exceed the cost. Our staffing levels reflect the work the client requested us to do and the timeline within which the Debtors were trying to manage the case. As the significant projects were completed, AlixPartners reduced its staffing to a small core group of professionals.

It is also worth noting that AlixPartners is a full-service firm that is able to perform work in numerous areas during a bankruptcy. Our depth of services is significantly greater than most, if not all, of our competitors. Thus, we were able to handle the Debtors' requirements in almost every aspect of the bankruptcy. While this increased the number of personnel on the engagement, the benefit to the estate far exceeded the cost through increased coordination, communication and teamwork in all aspects of the bankruptcy. This enabled the Debtors to meet their accelerated timeline without sacrificing quality.

Summary of full-time AlixPartners professionals by period:

| | Measurement Period | | | | | |
|---|---|---|---|---|---|---|
| | Nov 06 - Feb 07 | Mar 07 - May 07 | Jun 07 - Aug 07 | Sept 07 - Nov 07 | Dec 07 - Feb 08 | Mar 08 - May 08 |
| Average # of Professionals (a) | 33 | 27 | 19 | 13 | 8 | 10 |

Note (a) – Professionals with greater than 50 hours of billable time in a month were included

Early in the chapter 11 case, AlixPartners was engaged by the Debtors to develop a detailed business plan and present the plan to the various creditor groups and customers, assist and conduct pricing negotiations with customers, manage the treasury department, analyze claims and their potential resolution, serve as the controller for Atwood, manage vendor relationships and assist with IT cost reductions. The initial business plan was completed in the middle of 2007 and the pricing negotiations were materially completed in late 2007; Atwood in mid-2007, vendor relationships in mid-2007, IT cost reductions in late 2007. The above chart reflects the commensurate reduction in AlixPartners professionals as these projects were completed. After the completion of these major projects, a small core team of AlixPartners professionals remained to complete the claims reconciliation process, extend and restructure the DIP financing, obtain exit financing, support the Debtors through the confirmation process, communicate with creditors and customers and manage the Debtors' treasury function.

**The Requested Success Fee**

The Engagement letter dated November 6, 2006, and approved by the Court in the Retention Order dated December 21, 2006, provides that, in addition to hourly fees, AlixPartners shall be entitled to an additional Success Fee of $2,100,000 if the Debtors are successfully reorganized and a chapter 11 plan of reorganization is confirmed. AlixPartners' activities were instrumental in driving an extremely successful outcome in this case despite a very difficult

34

credit market and a challenging business environment for the automotive parts sector. As described previously, AlixPartners led the customer negotiations, managed the Debtors' treasury function, developed a detailed business plan, assisted in obtaining an extension of the DIP financing and was a critical part of the Debtors' ability to obtain sufficient exit financing.

The services of AlixPartners were important to the effective administration and progress of the Debtors' restructuring. AlixPartners' services removed a significant burden from the Debtors' management so that those resources could be expended managing and restructuring the Debtors' operations. Activities such as customer pricing negotiations, cash management and forecasting, business plan development, claims and distribution management, and managing and addressing constituency information requirements, to name a few, were essential in achieving the outcome for the Debtors. In addition AlixPartners' activities were critical to securing exit financing from multiple sources, which enabled the Debtors to exit from Chapter 11.

As the Bankruptcy Court for the Southern District of Ohio held in *In re Cardinal Indus., Inc.*, 151 B.R. 843 (Bankr. S.D. Ohio 1993) (chapter 11 operating trustee awarded AlixPartners a fee of $2.1 million plus a success fee of 50,000 shares of stock):

> Performance-based or success-factor bonuses are a normal part of compensation arrangements for management restructure consultants and … such bonuses generally far exceed the time value of the consultant's services on a lodestar basis. Indeed, the time value component is referred to as the base salary, apparently payable to the consultant even if success is not achieved.

*In re Cardinal Indus., Inc.*, 151 B.R. at 847

12.     When Congress passed the Bankruptcy Reform Act of 1978, it decided to remove the "spirit of frugality" as a factor in bankruptcy fees. The standard is now the cost of comparable services in a non-bankruptcy setting. Inasmuch as success fees are a normal part of

35

AlixPartners' fee structure, both within and outside of bankruptcy, approval of the Success Fee is appropriate to assure comparable compensation for comparable services.

13. Recent bankruptcy success fees, proposed or awarded to other persons or firms include the following:

- Enron Corp., a Chapter 11 case in the Southern District of New York. Stephen F. Cooper, of the turnaround firm Kroll Zolfo Cooper LLC, applied to the Bankruptcy court for a $25 million success fee for his services as Debtor's interim chairman. Cooper later agreed to reduce his request to $12.5 million, and this reduced fee was approved. In re Enron Corp., 2006 WL 1030421 (Bankr. S.D.N.Y. 2006).

- Northwestern Corp., a Chapter 11 case in the District of Delaware. Lazard Freres & Co. LLC, financial advisor to the Debtor, was awarded a transaction (or success) fee of $2.75 million, "which brings it in line with the transaction fee of the financial advisors employed by the Official Committee of Unsecured Creditors." In re Northwestern Corp. 324 B.R. 538, 547-48 (Bankr. D. Del. 2005), rev'd, 344 B.R. 40 (D. Del. 2006) (it was error to reduce the success fee; full $5.5 million awarded).

- Warnaco, a Chapter 11 case in the Southern District of New York. Tony Alvarez, of the firm Alvarez & Marsal, who was Debtor's interim CEO, was awarded a success fee of $2.25 million. Warnaco Proxy Statement, filed April 2003.

- Farmland Industries, a Chapter 11 case in the Western District of Missouri. Houlihan Lokey Howard & Zukin Financial Advisors, Inc., financial advisors for the Unsecured Creditors Committee, was awarded a success fee of 1% of the amount distributed to unsecured creditors, with a minimum guaranty of $1 million and a cap of $3 million. In re Farmland Industries, Inc., 286 B.R. 895, 897, n.1 (Bankr. W. D. Mo. 2002).

- Calpine Corporation, a Chapter 11 case in the Southern District of New York. AlixPartners was crisis managers to the Debtors and was awarded a success fee of $6.0 million.

- Dana Corporation, a Chapter 11 case in the Southern District of New York. AlixPartners was crisis managers to the Debtors and was awarded a success fee of $4.0 million.

14. In short, success or performance fees are a normal part of compensation for firms such as AlixPartners, which provide crisis management and turnaround services to

36

debtors, and may be approved on that basis alone. In addition, however, approval of the Success Fee in these cases is particularly warranted because the services provided by AlixPartners resulted in real, demonstrable and significant incremental value to the Debtors and their estates. These efforts and contributions were a key enabler of the successful outcome of these proceedings.

## Valuation of Services

15.     Professionals of AlixPartners have expended a total of 62,636.50 hours in relation to this chapter 11 case. The nature of the work performed by these professionals was fully set forth in previous monthly fee applications. These are AlixPartners' normal hourly rates for work of this character. The reasonable value of the services rendered by AlixPartners to the Debtors during the Compensation Period is $29,757,826.86 at an average hourly rate of $442.00 excluding the success fee.

16.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by AlixPartners is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title. Moreover, AlixPartners has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Final Fee Application complies with that Rule.

WHEREFORE, AlixPartners respectfully requests that the Court authorize that for the period November 7, 2006 through May 12, 2008, a final allowance be made to AlixPartners pursuant to the terms of the Administrative Order and the Fee Auditor Order, with

respect to the sum of $29,757,826.86 as compensation for necessary professional services rendered, and the sum of $1,370,003.04 as 100% reimbursement of actual necessary costs and expenses, for a total of $ 31,127,829.90 and that such sums be authorized for payment and for such other and further relief as this Court may deem just and proper.

RLF1-3294827-1

Dated: August 25, 2008  
       Wilmington, Delaware

Respectfully submitted,

*Anthony C. Flanagan*

ALIXPARTNERS, LLP  
2000 Town Center, Suite 2400  
Southfield, Michigan 48075  
Telephone: (248) 204-0675  
Facsimile: (248) 358-1969

RLF1-3294827-1

## VERIFICATION

STATE OF DELAWARE )
                                    ) SS:
COUNTY OF NEW CASTLE )

Anthony Flanagan, after being duly sworn according to law, deposes and says:

a)    I am a Managing Director with the applicant firm, AlixPartners, LLP, and have been admitted to appear before this Court.

b)    I am familiar with the work performed on behalf of the Debtors by the consultants in the firm.

c)    I have reviewed the foregoing Final Fee Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I have reviewed Del. Bankr. L.R. 2016-2, and submit that the Application substantially complies with such order.

PATRICIA ELLEN LUCHIN
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jul 5, 2014
ACTING IN COUNTY OF OAKLAND

_Anthony Flanagan_
Anthony Flanagan

SWORN AND SUBSCRIBED before me
this 25th day of August 2008
_Patricia Ela Luchin_
Notary Public
My Commission Expires: _7-5-2014_

RLF1-3294827-1