```
                UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF DELAWARE


IN RE:                              . Case No.  06-11202 (KJC)
                                    .
                                    .
DURA AUTOMOTIVE SYSTEMS, INC.,      .
et al.,                             . 824 North Market Street
                                    . Wilmington, Delaware  19801
                                    .
                    Debtors.        . August 20, 2008
. . . . . . . . . . . . . . . . . . . 1:33 p.m.


                  TRANSCRIPT OF MOTION HEARING
                 BEFORE HONORABLE KEVIN J. CAREY
               UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:              Richards, Layton & Finger, P.A.
                              By:  JASON M. MADRON, ESQ.
                              One Rodney Square
                              920 North King Street
                              Wilmington, DE  19801

                              Kirkland & Ellis LLP
                              By:  ROGER J. HIGGINS, ESQ.
                              200 Eat Randolph Drive
                              Chicago, IL  60601

                              Baker & McKenzie, LLP
                              By:  LAURA BABICH, ESQ.
                              Dallas, TX

For Allied Motion-Motor
Products, Inc.:               Stevens & Lee PC
                              By:  JOSEPH H. HUSTON, JR. ESQ.
                              1105 North Market Street
                              Wilmington, DE 19801


Audio Operator:               Al Lugano


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```
_____

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311   Fax No.  (609) 587-3599

**APPEARANCES (Cont'd):**

For Official Committee of
Unsecured Creditors:                Young Conaway Stargatt &
                                    Taylor, LLP
                                    By:   ERIN EDWARDS, ESQ.
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    P.O. Box 391
                                    Wilmington, DE  19899

For Deloitte:                       Deloitte LLP
                                    By: IRENE CANNON-GEARY, ESQ.
                                    New York, NY

1        THE COURT:  Good afternoon.

2        MR. MADRON:  Good afternoon, Your Honor, for the
3   record, Jason Madron of Richards, Layton & Finger on behalf of
4   the reorganized debtors.  Your Honor, we're appearing before
5   the Court today for our regularly scheduled monthly omnibus
6   hearing date as well as the date and time that has been noticed
7   for the consideration of the fourth interim fee applications of
8   various retained professionals in the cases.

9        Your Honor, in accordance with procedures, we did
10  file and serve notice of todays hearing through our agenda
11  letter back on the 18th, and we would respectfully submit to
12  proceed directly from that agenda letter today.

13       THE COURT:  Very well.

14       MR. MADRON:  Your Honor, as noted on the agenda,
15  items numbers 1 through 14 are all carried over to future
16  hearing dates.  Items 15 and 16, which were two omnibus
17  objections to claims, we had submitted yesterday afternoon, the
18  certifications of counsel on that, attaching revised forms of
19  order.  Those revised forms of order reflected the continuance
20  or resolution of certain claims as well as granting the relief
21  with respect to the balance of the claims.  I saw that Your
22  Honor did have an opportunity to review those and those were
23  docketed yesterday, so we thank the Court for that.

24       Leaving us then with just the remaining matters,
25  agenda item 17 through 20, with me on the telephone today, Your

1  Honor, is my co-counsel, Roger Higgins with the firm Kirkland &
2  Ellis and I will cede to Mr. Higgins with respect to the
3  primary presentation on these couple of matters at the end of
4  agenda.
5      THE COURT: Very well.
6      MR. MADRON: Thank you, Your Honor.
7      MR. HIGGINS: Good morning, Your Honor, Roger Higgins
8  for the debtors. Item number 17 is Mr. Michael Tamm's request
9  for recovery of notes. The Court filed or scheduled that for
10 hearing for this hearing and the debtors have filed an
11 objection to that. It is our understanding that Mr. Tamm is
12 not appearing today and we would request that the Court sustain
13 the objection and disallow Mr. Tamm's request for recovery of
14 notes.
15     THE COURT: All right. Let me ask for the record,
16 whether Mr. Tamm, or anyone appearing on his behalf, is
17 present, either on the telephone connection or in the
18 courtroom? I can say for the record, I recognize those in the
19 courtroom, and Mr. Tamm is not among them. But let me ask
20 again, anyone here on his behalf, or on the phone? I hear no
21 response.
22     I listed this for hearing, well, let me take a step
23 back. I receive from time to time pro se communications from
24 various parties involved in bankruptcy proceedings. Some of
25 the time they are items which should be docketed and acted

1  upon, other times they're not things based upon which I can
2  take any action.  I will tell you, I was uncertain about what
3  to do with this one, so I had it listed for hearing in the
4  hopes that Mr. Tamm would appear and explain his position and
5  any entitlement to relief.  I have reviewed the debtors'
6  objection.  The debtor is, of course, in its position right on
7  target here.  There is no basis for whatever relief request can
8  be gleaned from what's on the agenda as a request and,
9  therefore, to the extent there is a request for relief, I will
10 deny it.  Is there a form of order with the debtors' objection?
11          MR. HIGGINS:  There is not, Your Honor, but we would
12 be happy to submit a form of order denying the request.
13          THE COURT:  All right.  Thank you very much.
14          MR. HIGGINS:  All right, thank you, Your Honor.  That
15 brings us to item number 18, on the agenda, which is the
16 reorganized debtors' 17th omnibus objection to claims on a
17 variety of non-substantive grounds.
18          We had a few responses which I thought I could deal
19 with in turn, Your Honor, the first of which was from the State
20 of Tennessee and they had three claims that were listed in the
21 omnibus claims objection.  They did not respond regarding two
22 of those claims and those claims are listed on the order to be
23 reduced and allowed.  There was one response to a claim
24 objection citing an apparent clerical error.  We investigated
25 it and did determine that the debtors had made a clerical error

1  and we withdrew that particular objection so the State of
2  Tennessee is satisfied.
3         We received a total of four response of some sort
4  regarding pension claims, the first of which was an informal
5  response of Patricia Tollett, T-o-l-l-e-t-t.  This is not on
6  the docket.  We are continuing the objection as to Ms.
7  Tollett's claim because we want to make sure that the specific
8  pension plan that Ms. Tollett refers to was not affected by the
9  Chapter 11 plan's confirmation and consummation.  We,
10 obviously, believe that no pension plan were affected, but we
11 wanted to do a little bit further investigation.
12        With respect to -- there are four other responses.
13 One from a Laurie A. Herman, which we received on Monday, the
14 16th of July.  This apparently is not on the agenda.  There are
15 three others that are on the agenda from Dale Sloniker, Fred G.
16 Sheneman and Michael G. Kane and we have spoke to each of these
17 parties.  We've explained of each of these parties that their
18 pension benefits were not affected by the Chapter 11 plan's
19 confirmation and consummation.  And they agreed on the
20 telephone that they were not going to go forward with their
21 responses to the objection and it is my understanding that none
22 of them are appearing in court, either in court or
23 telephonically today.
24         THE COURT:  All right.  Let me ask for the record,
25 are any of the objectors present on the telephone connection or

1 in the courtroom?  I hear no response.

2       MR. HIGGINS:  Your Honor, we would, therefore, ask
3 that the order be entered as to each of those objections, as
4 well as regarding the objections to which the debtors did not
5 receive any responses.

6       THE COURT:  Very well.

7       MR. HIGGINS:  Thank you, Your Honor.  I believe that
8 Mr. Madron does have the form of order.

9       MR. MADRON:  Yes, Your Honor, with me in court I do
10 have a proposed form of order that reflects the various
11 resolutions that Mr. Higgins has described.  If I may approach
12 with that for Your Honor's review.

13       THE COURT:  You may.

14       MR. MADRON:  Thank you.

15       THE COURT:  That order has been signed.

16       MR. HIGGINS:  Thank you, Your Honor.  This is Roger
17 Higgins again for the debtors.  That brings us to item number
18 19, which is the motion of Allied Motor Products and Allied has
19 requested a status conference and I understand that counsel for
20 Allied is in the courtroom and I would yield the
21 podium/microphone to counsel for Allied.

22       THE COURT:  All right.

23       MR. HOUSTON:  Good afternoon, Your Honor.  May it
24 please the Court, Joseph Houston on behalf of -- from Stevens
25 and Lee on behalf of Allied Motion-Motor Products.

1            We have been pushing the debtors and Atwood --
2   forgive me.  Because of the situation in which Allied found
3   itself, we filed a motion for the allowance of an
4   administrative claim, in part, to try to join the issue to see
5   whether we were fish or fowl in that case and we have agreed on
6   several occasions to just roll that to see how other
7   developments in this case proceeded.  But we're at the point
8   where Allied is holding onto basically a pile of unused
9   inventory and it needs to know what to do with that, so we've
10  been pushing -- there is a little bit of discovery that we
11  could and should do, we should retain an expert if there is an
12  issue about the valuation of the inventory, or something like
13  that.  And we've been pressing the debtor if they would agree
14  to enter into a scheduling order and their response,
15  understandably has been, well, there's no reason to do that
16  because we don't think you have an administrative claim, et
17  cetera, et cetera.
18           So, I am here, gingerly, at the express direction of
19  Allied, to get the Court's guidance and whether you think it
20  would be productive for us to enter into a scheduling order or
21  whether there is something else I should be doing, aside from
22  sitting down.
23           THE COURT:  Well Mr. Houston, I will say that's about
24  as elegant a way as counsel have ever asked me why the heck
25  haven't I issued a decision yet on something that's under

1  advisement.  Couched either way, however, it's a pertinent
2  question and I understand that clients press lawyers for
3  answers, so I'll give you one.  I have a draft of the decision
4  on my desk, it needs a little more work yet.  I'm hopeful that
5  I will issue it shortly and that's about the best I can tell
6  you.
7        MR. HOUSTON:  Well, I have explained that you, in
8  particular, have been crushed by the recent wave of cases that
9  have filed, including that little World Communities matter.
10 And so, I appreciate that.
11       THE COURT:  And, you can tell your client the delay,
12 as it's perceived, is not a result of my thinking that the
13 matter in which he is involved is unimportant, that's not the
14 case at all.
15       MR. HOUSTON:  And I have made that -- I have had that
16 explanation and I've actually, because there are several other
17 cases in which I'm involved before Your Honor where you have
18 issued in very short order very comprehensive opinions on
19 matters, you know, that I have simply explained, look, this is
20 -- it's a great time to be a bankruptcy lawyer, but a terrible
21 time to be a bankruptcy judge in Delaware.
22       THE COURT:  Oh, I don't know.  I'm not complaining.
23       MR. HOUSTON:   Okay.  Thank you very much, Your
24 Honor.
25       THE COURT:  All right, you're welcome.

1          MR. HOUSTON:  And we will roll this again to the next
2  hearing and then proceed from there.  Thank you, Your Honor.
3          THE COURT:  All right, thank you.
4          MR. HIGGINS:  Thank you, Your Honor.  That brings us
5  to the last matter on the agenda, which is item number 20,
6  which is the request for approval of the fourth interim fee
7  application for the retained professionals.
8          Your Honor, we did have a form of order that we were
9  prepared to hand up.  I've learned just before the hearing
10 started that there is a discrepancy with respect to the
11 Bifferato application of approximately $4,000, and so, we will
12 need to, once the hearing is over, revise the order in that
13 regard for that $4,000 amount and submit the form of order
14 under certificate of counsel.
15         As to all of the other items, I do not believe there
16 are any outstanding objections and would request entry of the
17 order as submitted.
18         THE COURT:  All right.  Let me, before I get to that,
19 let me go back to a matter that we covered earlier and that is
20 the item concerning Mr. Tamm, which is at number 17 of the
21 agenda.  I've just been handed a copy of an email that was
22 apparently sent by Mr. Tamm to the Court, indicating among
23 other things, that he didn't receive appropriate notice of, it
24 looks like various things, but containing a request to cancel
25 the hearing today, because he needs more time to send a

1  "revised letter" to the Court.

2  So, let me belay the request I made earlier that
3  counsel submit a form of order denying the "request". I will
4  enter my own order and it's going to provide that we'll have a
5  hearing on his "request" at the next omnibus hearing. It will
6  also require that if Mr. Tamm wishes to press forward, that he
7  must engage local counsel to represent him in connection with
8  this matter. This way of trying to get to him or him to get to
9  us is just not working properly and I will insist that he
10 engage local counsel to represent him in this matter. Failing
11 that, I fear the result will be the same.

12 All right, let's -- any questions about that?

13 MR. HIGGINS:  No, Your Honor.

14 THE COURT:  Okay. Let's turn to the fees and let me
15 go to the index and run down them one at a time in the order in
16 which they're listed.

17 Beginning with the second interim application of
18 Assessment Technologies, there is no fee auditor report on this
19 application and I'm assuming it's because of the contingency
20 arrangement nature of the arrangement. I've reviewed the
21 application and do not have any questions. Does anyone else
22 care to be heard in connection with that application? All
23 right, I hear no response.

24 Next is, and we'll address all the orders at the end,
25 is the fourth interim fee application for Baker & McKenzie and

1 let me first ask whether anyone is on the phone?  I see, Ms.
2 Babich --
3            MS. BABICH:  Yes, Your Honor.
4            THE COURT:   -- and others, perhaps.  Does Baker &
5 McKenzie agree with the recommendations that were made by the
6 fee auditor?
7            MR. BABICH:  Yes, we do, Your Honor.
8            THE COURT:  Okay.  I have reviewed the report and
9 conclude that the adjustments are appropriate and that the
10 request should be granted.  There's only one thing about it
11 that I would like to mention.  The fee auditor expressly points
12 out that a number of individuals, but exclusively located in
13 the U.K. if I read it correctly, charged hourly fees in excess
14 of $1,000.
15           MS. BABICH:  Yes, Your Honor.
16           THE COURT:  Okay.  Let me repeat what I've said in
17 the past, on some occasions, and that is, and I haven't had
18 outside of U.S., this issue with outside of U.S. applicants,
19 but I've told professionals inside the U.S. that I'm not yet at
20 the point where I'm willing to approve thousand dollar an hour
21 fees and to the extent anybody wants that kind of relief,
22 they're going to have to make an evidentiary record in support
23 of the reasonableness and the market status of such a fee.
24           It's my experience, however, that particularly with
25 the U.K. prices and fees and compensation are significantly

**J&J COURT TRANSCRIBERS, INC.**

1  higher in the U.S. and that's not just, as far as I can tell, a
2  result of the issues with the value of the dollar these days
3  but also results from market forces apart from that.  So, I'm
4  not now asking for a justification of those particular fees,
5  but I wanted to put on the record that while I was approving
6  them in this case, it was only on that limited basis and for
7  that specific reason.
8           But with the agreement to the adjustments suggested
9  by the fee auditor, I'm prepared to grant the relief that's
10 been requested by Baker & McKenzie.
11          MS. BABICH:  Thank you, Your Honor.
12          THE COURT:  All right.  I have no questions with
13 respect to Togut, Segal and am prepared to grant that relief.
14 Turning to Kirkland & Ellis, let me ask whether there is
15 agreement with the recommendations that have been made by the
16 fee auditor.
17          MR. HIGGINS:  This is Roger Higgins, Your Honor.
18 That is correct, we are in agreement with the fee auditor's
19 recommended reduction.
20          THE COURT:  Okay, all right.  I note there was
21 extensive back and forth on that application and I'm satisfied
22 that the adjustments are appropriate and am prepared to grant
23 the relief that's been recommended by the fee auditor.
24          All right, next is the fourth interim fee application
25 of Richards, Layton.  Let me ask whether Richards Layton agrees

1  to the adjustments that have been made by -- suggested by the
2  fee auditor.
3        MR. MADRON:  Your Honor, again, for the record, Jason
4  Madron of Richards, Layton & Finger, yes we are in agreement
5  with the fee auditor's recommendations in their report.
6        THE COURT:  All right.  I have no additional
7  questions, I'm prepared to grant that relief.
8        MR. MADRON:  Thank you, Your Honor.
9        THE COURT:  Okay.  I turn now to the fourth interim
10 fee application of Ernst & Young.  Let me ask if anyone is on
11 the line with respect to this application.  Does the firm agree
12 with the recommendations that are made by the fee auditor?
13        UNIDENTIFIED FEMALE SPEAKER:  Your Honor --
14        MR. PAGAC:  Your Honor, this Matt Pagac on line with
15 Ernst & Young and we agree to the reduction by the fee auditor
16 and the recommendation thereof.
17        THE COURT:  Okay.  I'll note, again, that there was
18 significant back and forth with the fee auditor.  I've reviewed
19 the report and I'm satisfied that the adjustments that are
20 recommended are appropriate and will grant that relief.
21        MR. PAGAC:  Thank you, Your Honor.
22        THE COURT:  All right.  I turn next to number seven
23 on the index, first interim fee application of Assessment
24 Technologies.  Now, unlike the other one, this is based on an
25 hourly rate.  Let me ask if Assessment Technologies is in

 1  accord with the recommendations of the fee auditor?
 2          MR. LAMMERT:  Your Honor, this is John Lammert of
 3  Assessment Technologies.  We are in agreement with the
 4  adjustments of the fee auditor.
 5          THE COURT:  All right.  In light of that, I'm
 6  prepared to grant the relief that's been requested.
 7          MR. LAMMERT:  Thank you, Your Honor.
 8          THE COURT:  Number eight, Alix Partners request, let
 9  me ask is the firm in agreement with the recommendations that
10  have been made by the fee auditor?
11          MR. EISELE:  Good afternoon, Your Honor, Laura Eisele
12  from Alix Partners and yes, we are in agreement with the
13  recommendations from the fee auditor.
14          THE COURT:  Okay.  I've reviewed the auditor's final
15  report.  It's again, pretty detailed back and forth on various
16  issues.  I'm prepared to grant the relief based upon the fee
17  auditor's recommendation.
18          Let me turn now to the fourth interim fee application
19  of Deloitte Tax.
20          MS. GEARY:  Your Honor, Irene Cannon-Geary on behalf
21  of Deloitte Tax LLP.  We agree with the recommendations made by
22  the fee auditor.
23          THE COURT:  All right.  I've reviewed the report, I'm
24  prepared to grant the relief that's been requested.
25          MS. GEARY:  Thank you, Your Honor.

 1       THE COURT:  Let me turn, then, to number 11, fourth
 2  interim fee application of Miller Buckfire and ask whether the
 3  firm is in accord with the recommendations made by the fee
 4  auditor.
 5       MR. GREGORIO:  Your Honor, this is Brandon Gregorio
 6  with Miller Buckfire.  We are in agreement with the fee
 7  auditor's recommended expense reduction.
 8       THE COURT:  All right.  Based upon that, I am
 9  prepared to grant the relief that's been requested.  I turn now
10  to the application of Bifferato, Gentilotti.  I have no
11  questions with respect to that application and am prepared to
12  grant that relief.  And the same with respect to the fourth
13  interim fee application of Young Conaway.
14       Next let me turn to the Kramer Levin application and
15  ask whether the firm is in accord with the recommendations that
16  have been made by the fee auditor?
17       MS. CHERETT:  This is Jennifer Cherett (phonetic) of
18  Kramer Levin and we agree with the fee auditor's
19  recommendations, Your Honor.
20       THE COURT:  Very well.  I'm prepared to grant the
21  relief that's been recommended.  And I turn now to Chanin and
22  ask whether the firm is in accord with the recommendations made
23  by the fee auditor.  Anyone present on behalf of Chanin
24  Partners?
25       MR. SMITH:  Your Honor, ths is Warren Smith, the fee

1  auditor.  For what it is worth, Your Honor, we have not
2  received any communication from Chanin that they object, but
3  that's for what it's worth.
4          THE COURT:  All right.
5          MS. EDWARDS:  Hi, Your Honor.  Erin Edwards from
6  Young, Conaway, Stargatt & Taylor.  We are counsel to the
7  Official Committee of Unsecured Creditors, but on behalf of
8  Chanin, they have no issues with the fee auditor's
9  recommendation.
10         THE COURT:  All right, thank you.
11         MS. EDWARDS:  Thank you.
12         THE COURT:  I'm prepared to grant the relief based
13 upon that recommendation.  Mr. Smith, I have also reviewed
14 your own fee application and have no questions.  But if you
15 have something to add, I'm happy to hear it now.
16         MR. SMITH:  If you have no questions, Your Honor, I'd
17 rather let it lie.
18         THE COURT:  Always the wiser.  Okay. I think that
19 concludes the applications that are before me today.
20         MS. GEARY:  Your Honor, respectfully, this is Irene
21 Cannon-Geary on behalf of Deloitte & Touche, LLP, the
22 independent auditors for the debtors.
23         THE COURT:  Yes.
24         MS. GEARY:  It was my understanding that that was
25 also -- our fourth interim application of Deloitte & Touche,

1  LLP, was up, Judge, as well.
2              THE COURT:  If I skipped one, I did it inadvertently.
3              MS. GEARY:  You addressed Deloitte Tax, LLP, the tax
4  service providers, Your Honor, but Deloitte & Touche, LLP has a
5  separate application, fourth interim application.
6              THE COURT:  Yes, that's number 10 on the index, I
7  must have skipped over that, forgive me.
8              MS. GEARY:  Respectfully, Your Honor, we don't -- we
9  agree with the recommendations made by the fee auditor.
10             THE COURT:  All right.  I have reviewed that report
11  and agree that the adjustments are appropriate.
12             MS. GEARY:  Thank you, Your Honor.
13             THE COURT:  Okay.  Forms of order.
14             MR. MADRON:  Yes, Your Honor.  As Mr. Higgins had
15  mentioned, we do have an omnibus form of order in court today
16  that because of the minor discrepancy on the Bifferato fee
17  issue, we will need to submit under certification of counsel,
18  following today's hearing.  I should note, though, Your Honor,
19  that this form of order was circulated to the various
20  professionals, it was sent to Mr. Smith's office, and I also
21  sent it to Mr. McMahon of the Office of the United States
22  Trustee who I understand is covering this matter for Mr.
23  Herrington, who is out this week, and I have no received any
24  type of objectionable comments with respect to the form of
25  order from any of those parties.  So if it's amenable to Your

1  Honor, once we're able to resolve the issue with the Bifferato
2  firm, I'll share a copy of the order with Mr. Bifferato and
3  then I will submit it to Your Honor under certification of
4  counsel at that time.
5          THE COURT:  That's fine with me.  Is there any
6  objection to that?   I hear none.
7          MR. MADRON:  Thank you, Your Honor.
8          THE COURT:  All right.  Is there anything further for
9  today?
10         MR. MADRON:  That's all the matters that the debtors
11 have today, Your Honor.
12         THE COURT:  All right, thank you.  That concludes
13 this hearing, court will stand in recess.
14         MR. MADRON:  Thank you, Your Honor.
15         UNIDENTIFIED FEMALE SPEAKER:  Thank you, Your Honor.
16                        * * * * *
17                       **CERTIFICATION**
18   I, ELAINE HOWELL, court approved transcriber, certify that
19 the foregoing is a correct transcript from the official
20 electronic sound recording of the proceedings in the
21 above-entitled matter and to the best of my ability.
22
23 _____           Date:  August 27, 2008
24 ELAINE HOWELL
25 J&J COURT TRANSCRIBERS, INC.